## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| HANON SYSTEMS ALABAMA CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and ITS INDIVIDUAL MEMBERS, <br><br> *Defendant-Intervenors.* | Court No. 24-00013 |

## PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of this Court, Plaintiff Hanon Systems Alabama Corp. ("Hanon"),

hereby moves for judgment on the agency record.  Plaintiff challenges the U.S. Department of

Commerce's (the "Department" or "Commerce") final affirmative determination concerning the

anticircumvention inquiry of the antidumping and countervailing orders on certain aluminum foil

from the People's Republic of China, conducted pursuant to Section 781(b) of the Tariff Act of

1930, as amended, and 19 C.F.R. § 351.225(g).  *See Antidumping and Countervailing Duty*

*Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative*

*Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of*

*Thailand*, 88 Fed. Reg. 82,824 (Dep't of Commerce Nov. 27, 2023) ("*Final Determination*"); *see*

*also* Memorandum from James Maeder, Deputy Assistant Secretary for Enforcement and

Compliance, to Abdelali Elouaradia, Deputy Assistant Secretary for Enforcement and

Compliance, *Subject: Issues and Decision Memorandum for the Final Affirmative Circumvention*

*Determination of the Antidumping Duty Order on Certain Aluminum Foil from the People's*

*Republic of China with Respect to the Republic of Korea* (Dep't of Commerce Nov. 17, 2023)

("Final I&D Memorandum").

Support for this motion is set forth in the brief annexed hereto and is hereby incorporated

by reference.  A proposed order is also attached.

WHEREFORE, Plaintiff respectfully requests that this Court grant this motion, hold that

Commerce's *Final Determination* is unsupported by substantial evidence and is not otherwise in

accordance with the law, and remand the *Final Determination* to Commerce for disposition

consistent with the Court's final decision.

Respectfully Submitted,

/s/ Kristen Smith
Kristen Smith
Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Hanon Systems Alabama Corp.*

Dated: July 24, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| HANON SYSTEMS ALABAMA CORP., | |
| *Plaintiff,* | |
| v. | |
| UNITED STATES, | |
| *Defendant,* | |
| and | |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and ITS INDIVIDUAL MEMBERS, | Court No. 24-00013 **NONCONFIDENTIAL VERSION** |
| *Defendant-Intervenors.* | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965

Dated: July 24, 2024

# <u>TABLE OF CONTENTS</u>

I.     RULE 56.2 STATEMENT ................................................................................ 1

  A.  THE ADMINISTRATIVE DETERMINATION UNDER REVIEW ................................ 1

  B.  ISSUES OF LAW PRESENTED AND SUMMARY OF ARGUMENT .......................... 2

II.    STATEMENT OF FACTS ................................................................................ 3

III.   STANDARD OF REVIEW .............................................................................. 12

IV.   ARGUMENT ................................................................................................ 13

  A.  COMMERCE'S APPLICATION OF "MINOR OR INSIGNIFICANT" IS LEGALLY
FLAWED .................................................................................................... 13

  B.  COMMERCE'S FINAL DETERMINATION THAT THE NATURE OF THE
PRODUCTION PROCESS IN KOREA IS MINOR AND INSIGNIFICANT IS NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH
LAW ......................................................................................................... 17

  C.  COMMERCE'S FINAL DETERMINATION CONCERNING THE VALUE OF THE
PROCESSING PERFORMED IN KOREA IS NOT SUPPORTED BY SUBSTANTIAL
EVIDENCE AND NOT IN ACCORDANCE WITH LAW .................................... 20

    1.  The Value of Processing is Significant .......................................... 21

    2.  Commerce Failed to Properly Conduct the Required Qualitative Value-Added Analysis
22

  D.  COMMERCE PLACED UNREASONABLE AND UNLAWFUL WEIGHT ON TWO
OF THE FIVE FACTORS USED TO DETERMINE "MINOR AND INSIGNIFICANT" .... 25

  E.  COMMERCE'S PATTERNS OF TRADE ANALYSIS IS NOT SUPPORTED BY
SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW ....................... 26

V.    CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Anhydrides & Chemicals, Inc. v. United States*, 130 F.3d 1481 (Fed. Cir. 1997) ........................ 13

*Best Power Tech. Sales Corp. v. Austin*, 984 F.2d 1172 (Fed.Cir.1993) ..................................... 15

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ............................................ 13

*Canadian Wheat Bd. v. United States*, 641 F. 3d 1344 (Fed. Cir. 2011) ..................................... 13

*Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197 (1938) ................................................ 12

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010) ....................... 12

*Inmax SDN v. United States*, 277 F.Supp.3d 1367 (Ct. Int'l Trade 2017) ................................... 29

*Int'l Bus. Machs. Corp. v. United States*, 201 F.3d 1367 (Fed. Cir. 2000) .................................. 15

*Loper Bright Enterprises et al. v. Raimondo*, 144 S.Ct. 2244 (2024) .......................................... 13

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ............................. 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983) ................ 13

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006).......................................... 12

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ............................................... 12

*Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372 (Fed. Cir. 2001) .................... 13

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) .................................................................... 15

*Timex V.I., Inc. v. United States*, 157 F.3d 879 (Fed. Cir. 1998) ................................................ 13

*United States v. James*, 478 U.S. 597 (1986) ............................................................................... 15

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ............................................................. 12

## Statutes and Regulations

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................................... 12

19 U.S.C. § 1677j(b) .................................................................................................................. 9, 14

19 U.S.C. § 1677j(b)(1) ................................................................................................................. 14

19 U.S.C. § 1677j(b)(2) ............................................................................................................ 15, 25

19 U.S.C. § 1677j(b)(2)(e) ............................................................................................................. 22

19 U.S.C. § 1677j(b)(2)(E) ............................................................................................................ 20

19 U.S.C. § 1677j(b)(3) ............................................................................................ 27

28 U.S.C. § 1581(c) .................................................................................................. 1

## Other Authorities

Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (1987) .......................................................................................................... 28

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, Vol. I (1994) ........................................................... 16, 23, 26, 28

## Administrative Decisions

*Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Pasta from Italy: Affirmative Preliminary Determination of Circumvention of Antidumping and Countervailing Duty Orders*, 68 Fed. Reg. 46,571 (Aug. 6, 2003), unchanged in *Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Pasta from Italy: Affirmative Final Determinations of Circumvention of Antidumping and Countervailing Duty Orders*, 68 Fed. Reg. 54,888 (Sept. 19, 2003) ........................................ 23

*Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*, 88 Fed. Reg. 82,824 (Dep't of Commerce Nov. 27, 2023) .................................................................................................... 1

*Certain Aluminum Foil From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 17,360 (Apr. 19, 2018) ...................................................................................................... 3

*Certain Aluminum Foil From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 83 Fed. Reg. 17,362 (Apr. 19, 2018) .............................................................................................................. 3

*Ferrovanadium and Nitrided Vanadium From the Russian Federation*, 77 Fed. Reg. 6,537, 6,539 (Dep't Commerce Feb. 8, 2012) .................................................................... 21

*Ferrovanadium and Nitrided Vanadium from the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg. 46712 (Aug. 6, 2012), and accompanying Issues and Decision Memorandum (July 30, 2012) ....................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD BY PLAINTIFF

Plaintiff Hanon Systems Alabama Corp. ("Plaintiff" or "Hanon"), by and through its attorneys, hereby submits the following memorandum in accordance with Rule 56.2(c) of the Rules of the United States Court of International Trade.  For the reasons set forth below, Hanon respectfully submits that the U.S. Department of Commerce's ("Commerce") affirmative finding of circumvention is neither supported by substantial evidence nor in accordance with law.  Hanon respectfully requests that the Court reverse this determination and remand with instructions for Commerce to redetermine its circumvention finding with respect to certain aluminum foil from the Republic of Korea ("Korea") consistent with this Memorandum and the Court's findings.

### I.    RULE 56.2 STATEMENT

#### A.  THE ADMINISTRATIVE DETERMINATION UNDER REVIEW

Pursuant to 28 U.S.C. § 1581(c), Plaintiff challenges the U.S. Department of Commerce's (the "Department" or "Commerce") final circumvention determination concerning the antidumping duty ("AD") and countervailing duty ("CVD") orders on certain aluminum foil from the People's Republic of China, conducted pursuant to Section 781(b) of the Tariff Act of 1930, as amended.  *See Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*, 88 Fed. Reg. 82,824 (Dep't of Commerce Nov. 27, 2023) ("*Final Determination*"), P.R. 265[1]; *see also* Memorandum from James Maeder, Deputy Assistant Secretary for Enforcement and Compliance, to Abdelali Elouaradia, Deputy

---

[1] Citations are denoted by reference to the document numbers assigned in the antidumping public administrative record ("P.R.") and antidumping confidential administrative record ("C.R.") as identified in the indices of the Administrative Records filed by Commerce with the Court on April 1, 2024, ECF Doc. Nos. 17-1, 17-2.

Assistant Secretary for Enforcement and Compliance, *Subject: Issues and Decision Memorandum for the Final Affirmative Circumvention Determination of the Antidumping Duty Order on Certain Aluminum Foil from the People's Republic of China with Respect to the Republic of Korea* (Dep't of Commerce Nov. 17, 2023) ("Final I&D Memorandum"), P.R. 263.

### B. ISSUES OF LAW PRESENTED AND SUMMARY OF ARGUMENT

Plaintiff brings this challenge to resolve the following issues of law presented herein:

1. Whether Commerce's determination concerning the nature of the production process in Korea correctly applied the statutory standard for "minor or insignificant."

No. Commerce's application of "minor or insignificant" to the facts of this proceeding was inconsistent with both the statute and the administrative record in this proceeding. Commerce's *Final Determination* concerning the nature of the production process is unsupported by substantial evidence and not in accordance with law.

2. Whether Commerce's value-added analysis supported an affirmative circumvention finding, was supported by substantial evidence and otherwise in accordance with law.

No. Commerce's finding regarding the level of value added is flawed for two reasons. First, Commerce's determination is based on an expansive definition of "minor or insignificant" and is an impermissible interpretation of statute. Second, Commerce failed to conduct a proper qualitative analysis for this factor.

3. Whether Commerce's treatment of the five statutory factors was permissible under the statute.

No. Commerce assigned undue weight in evaluating the factors to be considered for the "minor or insignificant" analysis pursuant to 19 U.S.C. § 1677j(b)(2). Commerce's reliance on only two of the five total factors in rending its determination is unreasonable and contrary to law. Commerce's analysis effectively rendered three out of the five statutory factors meaningless.

4.   Whether Commerce's analysis of trade data was supported by substantial evidence and otherwise in accordance with law.

No.   Commerce's determination concerning patterns of trade is flawed and the analysis fails to address record evidence.   Additionally, it is unreasonable to conclude that such trade patterns are indicative of circumvention rather than a condition of the Korean industry.

## II.    STATEMENT OF FACTS

On April 19, 2018, Commerce issued AD and CVD orders on certain aluminum foil from the People's Republic of China.  *Certain Aluminum Foil From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 83 Fed. Reg. 17,362 (Apr. 19, 2018) ("*Aluminum Foil AD Order*"); *Certain Aluminum Foil From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 17,360 (Apr. 19, 2018) ("*Aluminum Foil CVD Order*") (collectively, "*Aluminum Foil Orders*").   The scope of the *Aluminum Foil Orders* covered "aluminum foil having a thickness of 0.2 mm or less, in reels exceeding 25 pounds, regardless of width."  *Aluminum Foil AD Order*, 83 Fed. Reg. at 17,364; *Aluminum Foil CVD Order*, 83 Fed. Reg. at 17,362.

In July 2022, Commerce self-initiated a country-wide circumvention inquiry to determine whether imports of certain aluminum foil ("aluminum foil") completed in Korea using inputs (*i.e.*, aluminum foil- and sheet-gauge products) from China are circumventing the *Aluminum Foil Orders*.  *Certain Aluminum Foil From the People's Republic of China: Initiation of Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 42,702 (Jul. 18, 2022) ("*Initiation*"), P.R. 22; *see also* Memorandum from Ryan Majerus, Deputy Assistant Secretary for Policy and Negotiations, to Lisa Wang, Assistant Secretary for Enforcement and

Compliance, *SUBJECT: Certain Aluminum Foil from the People's Republic of China: Initiation of Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders* (Jul. 11, 2022) ("Initiation Memo"), P.R. 2.   At the time of initiation, Commerce defined inquiry merchandise for purposes of the circumvention proceeding as

> The circumvention inquiries cover aluminum foil assembled and completed in Korea and Thailand, using Chinese-origin aluminum foil and/or sheet, that is subsequently exported from Korea and Thailand to the United States.   Specifically, Commerce placed information on the administrative record, as attachments to its Initiation Memorandum, that indicates aluminum foil inputs produced in China undergo further processing in Korea and Thailand before being exported to the United States.   Commerce intends to determine as part of this circumvention inquiry whether or not that further processing in Korea and Thailand is minor or insignificant and otherwise meets the circumvention criteria set forth in section 781(b) of the Act.

*Initiation*, 87 Fed. Reg. at 42,702, P.R. 22.

On August 11, 2022, Commerce issued quantity and value ("Q&V") questionnaires to Korean manufacturers and/or exporters of aluminum foil.  *See e.g.,* Letter from Erin Kearney, Program Manager, AD/CVD Operations, Office VI, *Re: Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Quantity and Value Questionnaire for Circumvention Inquiries With Respect to the Republic of Korea and the Kingdom of Thailand* (Aug. 11, 2022), P.R. 39.  Korean producers, including Dong-IL Aluminum Co., Ltd. ("Dong-IL") and Lotte Aluminum Co., Ltd. ("Lotte"), timely filed responses to Commerce's August 11, 2022 Q&V questionnaire.  *See* Letter from Trade Pacific, PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: {Korean Producers' Q&V Responses}* (Aug. 25, 2022), P.R. 64; C.R. 10.

4

Commerce subsequently selected Dong-IL and Lotte as the mandatory respondents in the circumvention inquiry based on reported Q&V data from each exporter.  *See* Memorandum from Michael J. Heaney, Senior International Trade Compliance Analyst, Office VI, Antidumping and Countervailing Duty Operations, through Erin Kearney, Program Manager, Office VI, Antidumping and Countervailing Duty Operations, to Dana S. Mermelstein, Director, Office VI, Antidumping and Countervailing Duty Operations, *RE: Circumvention Inquiry on Aluminum Foil from the People's Republic of China: Republic of Korea Respondent Selection* (Oct. 11, 2022), P.R. 106; C.R. 38.

Dong-IL and Lotte fully cooperated as mandatory respondents throughout the course of the circumvention proceeding.  The mandatory respondents timely and completely responded to Commerce's numerous questionnaires and requests for information.  *See* Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Dong-IL's Circumvention Inquiry Questionnaire Response* (Dec. 6, 2022) ("Dong-IL's IQR"), P.R. 131-133; C.R. 42-47; Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Lotte's Circumvention Inquiry Questionnaire Response* (Dec. 6, 2022) ("Lotte's IQR"), P.R. 134; C.R. 49; Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Dong-IL's Circumvention Inquiry Supplemental Questionnaire Response* (Jan. 20, 2023) ("Dong-IL's SQR"), P.R. 159; C.R. 61; Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Lotte's Circumvention Inquiry Supplemental Questionnaire Response* (Jan. 30, 2023) ("Lotte's SQR"), P.R. 165, C.R. 78.

Questionnaire responses demonstrated that the Korean aluminum foil industry was established decades before the *Aluminum Foil Orders* were imposed in 2018.  For instance,

mandatory respondent Dong-IL was founded in April 1989 and began aluminum foil manufacturing in 1992. *See* Dong-IL's IQR at 1-2 and Exhibit 2, P.R. 131; C.R. 42. Lotte meanwhile was founded in 1966 and had been producing aluminum foil since 1968. *See* Lotte's IQR at 1-2 and 13, P.R. 134; C.R. 49. The administrative record further demonstrated that each of the six Korean Producers participating in the proceeding had been manufacturing aluminum foil for more than 30 years and, in the case of mandatory respondent Lotte, for 55 years. *See* Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Certain Aluminum Foil from the People's Republic of China: Korean Producers' Comment Regarding Preliminary Determination* (Feb. 13, 2023) ("Korean Producers' Pre-Preliminary Comments") at 6, P.R. 172; C.R. 87. Additionally, Korean producers demonstrated that sourcing patterns of the Korean aluminum foil industry had not changed and that the Korean aluminum foil industry is a direct competitor of the Chinese aluminum foil industry after making significant investments in time and resources in the development of the aluminum foil production, sales, and distribution operations. *Id*. at 7.

The administrative record also showed extensive rolling processes in Korea considering: "(1) different methods are applied to reduce the thickness of semi-finished forms of aluminum; (2) the input materials may require different treatment before it is reduced; (3) high levels of processing, investment, operating, and energy costs are consumed; (4) cutting-edge rolling mills as well as production facilities—e.g., separators, slitters, pinhole detectors, etc.—are utilized during the rolling process; and (5) further manufacturing processes may be desired following the rolling process." Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Korean Producers' Comments and New Factual* Information (Sept. 16, 2022) ("Korean Producers' September 16th Letter"), at 10, Exhibits 30-A -30-D, P.R. 81, 86-87; C.R. 18, 23-24. With respect to Dong-IL, the manufacturing of the aluminum foil

consisted of: (1) milling and doubling process; (2) separating and slitting process; (3) annealing process; (4) inspection and quality control; (5) coating process; and (6) heavy gauge and gang slitting process.  Dong-IL's IQR at 16-17, P.R. 131; C.R. 42.  Lotte's manufacturing processing included five major stages of rolling, doubling, separating, slitting and annealing.  Lotte's IQR at 19-20, P.R. 134; C.R. 49.

Commerce issued a preliminary affirmative determination of circumvention on March 15, 2023.  *See* Memorandum from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa, W. Wang, Assistant Secretary for Enforcement and Compliance, *SUBJECT: Aluminum Foil from the People's Republic of China: Preliminary Decision Memorandum for the Circumvention Inquiry with Respect to the Republic of Korea* (Mar. 15, 2023) ("Preliminary I&D Memorandum"), P.R. 181; *see also Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Preliminary Affirmative Determination of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*, 88 Fed. Reg. 17,177 (Mar. 22, 2023) ("*Preliminary Determination*"), P.R. 186.

Commerce's preliminary analysis for Dong-IL determined that the level of Dong-IL's investment in Korea is not minor or insignificant which weighs against a finding that the process of assembly or completion in Korea is minor or insignificant, Dong-IL's research and development ("R&D") activity in Korea weighs against a finding that the process of assembly or completion in Korea is minor or insignificant, and Dong-IL's production facilities in Korea is not minor or insignificant, which weighs against a finding that the process of assembly or completion in Korea is minor or insignificant.  *See* Memorandum to The File, *SUBJECT: Certain Aluminum Foil from the People's Republic from China – Circumvention Inquiry with Respect to Korea: Preliminary*

*Analysis Memorandum for Dong-IL Aluminum Co., Ltd.* (Mar. 15, 2023) ("Preliminary Analysis Memorandum for Dong-IL"), P.R. 182; C.R. 89.  With respect to the nature of the production process in Korea, Commerce preliminarily found that the nature of the production process for products such as Dong-IL's ultra-thin foil is more substantial and involves more production steps than some other types of foil, but that Dong-IL's production process in Korea is less significant than the production process for the aluminum strip input.  *Id.* at 3.  Finally, Commerce preliminarily found that the value of processing performed by Dong-IL in Korea represents a small proportion of the value of inquiry merchandise imported into the United States, weighing in favor of finding that the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 4. Commerce also considered other factors, determining that Dong-IL's pattern of trade and sourcing patterns as well as increased shipments of inputs from China to the third country weighed in favor of finding circumvention.  *Id.* at 5-6.

On May 1, 2023, Hanon timely submitted a case brief addressing issues raised by Commerce's *Preliminary Determination*.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Aluminum Foil from The People's Republic of China: Hanon Systems Alabama Corp's Case Brief* (May 1, 2023) ("Hanon's Case Brief"), P.R. 210; C.R. 94.  Hanon argued that the *Preliminary Determination*, on a country-wide and company-specific basis is not supported by the record evidence and Commerce should issue a negative final circumvention determination concerning Dong-IL.  *Id.* at 1.  Hanon highlighted that three of the five statutory criteria weigh against a finding that Dong-IL's manufacturing operations are minor and insignificant.  Hanon argued, in part, that Commerce's *Preliminary Determination* is inconsistent with the legislative intent of the anticircumvention provision, which focused on the establishment of new operations (*i.e.*, "screwdriver operations") as a result of the imposition of AD/CVD duties

or the initiation of an AD/CVD investigation.  Here, the administrative record demonstrated that the aluminum foil industry in Korea is well-established, existing well before the *Orders* were imposed.  *Id*. at 2.

Hanon also argued that Commerce's *Preliminary Determination*, which determined that the nature of the production process in Korea and whether the value of processing in Korea represents a small portion of the value of the merchandise imported into the United States, is inconsistent with the administrative record.  Hanon noted that the administrative record, when viewed in totality, supports a negative determination.  The 19 U.S.C. § 1677j(b) factors demonstrate that Korean production is not "minor or insignificant" as the record documents: (1) significant investment and R&D in manufacturing and processing in Korea; (2) significant research and development in Korea; (3) the nature of the production process in Korea is sophisticated and robust; (4) Korean production facilities are extensive; and (5) the processing in Korea adds significant value.  *Id*. at 6-15.  Importantly, Hanon pointed to record evidence that demonstrated that the processing that occurs in Korea imparts the physical and mechanical characteristics of aluminum foil.  *Id*. at 9.  Finally, Hanon argued that the patterns of trade data relied upon by Commerce does not support a circumvention determination.  *Id*. at 15.

On May 2, 2023, Korean Producers also submitted a case brief addressing Commerce's *Preliminary Determination*, arguing, in part, that (1) the statutory circumvention provisions were not intended to expand the scope of existing AD/CVD orders to cover established industries in third countries; (2) Korean Producers manufacture aluminum foil from "aluminum strip", which was not included in the definition of inquiry merchandise at the time of initiation and Commerce should therefore issue a negative determination; (3) Korean manufacturing operations are not "minor or insignificant"; (4) the Department erroneously determined that the value of processing

performed in Korea is minor or insignificant; (5) the *Preliminary Determination's* patterns of trade analysis was flawed. *See* Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Certain Aluminum Foil from the People's Republic of China: Korean Producers' Case Brief* (May 2, 2023) ("Korean Producers' Case Brief"), P.R. 213; C.R. 95.

Petitioners in the underlying investigation submitted a case brief requesting Commerce to modify its analysis in the *Preliminary Determination* and find that all factors under 19 U.S.C. § 1677j(b)(2) support a determination that the process of assembly or completion used by Korean aluminum foil producers with respect to inputs from China are minor or insignificant. *See* Petitioners' Case Brief, *Certain Aluminum Foil from the People's Republic of China* (May 1, 2023), P.R. 214; C.R. 96.

On May 25, 2023, Hanon submitted a rebuttal case brief in response to certain issues raised in Petitioners' May 1, 2023 case brief. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Aluminum Foil from The People's Republic of China: Hanon Systems Alabama Corp.'s Rebuttal Case Brief* (May 25, 2023) ("Hanon's Rebuttal Case Brief"), P.R. 228. In rebuttal, Hanon submitted that the administrative record demonstrates that Korean production is not "minor or insignificant." Specifically, Commerce properly determined that Korean Producers' investment in Korea is not minor or insignificant, highlighting the significant investment and manufacturing and processing in South Korea, as well as the R&D activity in Korea. *Id.* at 1, 2-3. Additionally, with respect to R&D, the nature of the production process in Korea, and the extent of production facilities in Korea, Hanon argued that the administrative record supports a negative determination and pointed Commerce to arguments of record submitted in Hanon's affirmative case brief and other interested parties' briefs. *Id.*

Korean Producers also submitted a rebuttal case brief in response to Petitioners' May 1, 2023 case brief.  *See* Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Certain Aluminum Foil from the People's Republic of China: Korean Producers' Rebuttal Brief* (May 26, 2023) ("Korean Producers' Rebuttal Brief"), P.R. 230; C.R. 99.  Korean Producers submitted legal argument addressing the following issues: (1) the Department correctly analyzed the mandatory respondents' levels of investment in Korea; (2) the Department should reject claims that the mandatory respondents' level of R&D in Korea is minor or insignificant; (3) the process to produce aluminum foil is extensive, capital intensive and complex; (4) the mandatory respondents' production facilities as well as other Korean producers and input suppliers are extensive; and (5) using Chinese costs to calculate the value of processing in Korea is incorrect and contrary to the Department's practice.  *Id.*

On November 20, 2023, Commerce issued its affirmative final determination dated November 17, 2023.  *See* Final I&D Memorandum, P.R. 263; *Final Determination*, P.R. 265. Commerce did not modify the conclusions from the *Preliminary Determination*.  Final I&D Memorandum at 3, P.R. 263.  Commerce continued to find that the level of investment in Korea by Dong-IL and Lotte is not minor or insignificant, which weighs against a finding that the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 16.  Commerce also continued to find that Dong-IL and Lotte's R&D activity in Korea and Dong-IL and Lotte's production facilities in Korea are not minor or insignificant, which weighs against a finding that the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 19, 27.  However, Commerce found that the mandatory respondents' overall production processes in Korea are less significant than the production process for the aluminum strip input, which weighs in favor of a finding that the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 25.  Commerce

also found that the value of processing performed by Dong-IL and Lotte in Korea represents a small proportion of the value of the inquiry merchandise imported into the United States, which weighs in favor of a finding that the process of assembly or completion in Korea is minor or insignificant. *Id.* at 31.

## III.  <u>STANDARD OF REVIEW</u>

Commerce must base its determination on "substantial evidence," consistent with 19 U.S.C. § 1516a(b)(1)(B)(i), including "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197, 229 (1938)). Commerce's determinations must not be arbitrary and must be in accordance with law. *Id*. Substantial evidence review requires consideration of "the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and asks, in light of that evidence, whether Commerce's determination was reasonable. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

To support its findings, Commerce must also explain the standards that it applied and demonstrate a rational connection between the facts on the record and the conclusions drawn. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Such explanations "must be reasonably discernible to a reviewing court." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009). A determination is arbitrary and, therefore, not in accordance with law, if "the agency . . . relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, . . . or is so implausible that it could not be ascribed to . . . the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v.*

*State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) (invalidating exercise of agency discretion where agency failed to explain basis of its actions); *Canadian Wheat Bd. v. United States*, 641 F. 3d 1344, 1352 (Fed. Cir. 2011) (declining to accord deference to Commerce's interpretation of the statute for failing to provide reasoned explanation for its action).

Finally, Commerce's determination must be consistent with the governing statute and Commerce's regulations. *Loper Bright Enterprises et al. v. Raimondo*, 144 S.Ct. 2244 (2024) ("{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."). In determining the plain meaning of statutory language, the Court is required to apply the rules of traditional tools of statutory construction. *See e.g.*, *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1382-83 (Fed. Cir. 2001) (relying on the dictionary definition of a key phrase in a statute); *Anhydrides & Chemicals, Inc. v. United States*, 130 F.3d 1481, 1483 (Fed. Cir. 1997) ("The rules of grammar apply in statutory construction"). If appropriate, the Court must also determine congressional intent by considering the legislative history. *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998) ("before we can allow an agency to say what the law is, we must thoroughly investigate whether Congress had an intent on the matter.")

IV.     **ARGUMENT**

**A. COMMERCE'S APPLICATION OF "MINOR OR INSIGNIFICANT" IS LEGALLY FLAWED**

The statute sets out five statutory criteria that Commerce must consider in determining whether aluminum foil completed or assembled in Korea may be included within the AD and CVD orders from China:

(A) Whether the merchandise imported into the United States from Korea is the same class or kind as merchandise that is subject to the *Aluminum Foil Orders*;

(B) Whether before importation into the United States, such merchandise is completed or assembled in Korea from merchandise that is subject to the *Aluminum Foil Orders* or produced with inputs from the country under the *Aluminum Foil Orders*;

(C) Whether the process of assembly or completion in Korea is minor or insignificant;

(D) Whether the value of the merchandise produced in the country subject to the *Aluminum Foil Orders* is a significant portion of the total value of the merchandise exported to the United States; and,

(E) Whether the action is appropriate to prevent evasion of the *Aluminum Foil Orders*.

*See* 19 U.S.C. § 1677j(b)(1).

Hanon does not contest criteria (A) or (B) above. The administrative record demonstrates that Korean aluminum foil is the same "class or kind" of merchandise subject to the *Aluminum Foil Orders* and such imports were produced using some inputs from China. However, Commerce's *Final Determination* is fatally flawed as a result of its misapplication of the statutory standard set forth in criterion (C) of 19 U.S.C. § 1677j(b)(1). Specifically, Commerce erred in its analysis addressing whether the Korean manufacturing process could be considered "minor or insignificant."

The statute requires Commerce to find that the third country manufacturing operations are minor and insignificant, amounting to no more than the assembly or completion of the merchandise subject to an AD/CVD order. 19 U.S.C. § 1677j(b). In assessing whether a process is "minor or insignificant", Commerce is directed to take into account the following:

(A) the level of investment in the foreign country,
(B) the level of research and development in the foreign country,

14

(C) the nature of the production process in the foreign country,
(D) the extent of production facilities in the foreign country, and
(E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).

As discussed in detail below, the administrative record demonstrates that the processing performed in Korea is not minor nor insignificant.  Commerce's application of "minor or insignificant" is contrary to the plain meaning of the statutory language.  An understanding of the plain meaning of the "minor or insignificant" provision is established by consulting the dictionary. *See Best Power Tech. Sales Corp. v. Austin*, 984 F.2d 1172, 1177 (Fed.Cir.1993) (*citing United States v. James*, 478 U.S. 597 (1986)) ("It is a basic principle of statutory interpretation . . . that undefined terms in a statute are deemed to have their ordinarily understood meaning.  For that meaning, we look to the dictionary."); *Int'l Bus. Machs. Corp. v. United States*, 201 F.3d 1367, 1372 (Fed. Cir. 2000) (in statutory interpretation, "we look at 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'") (*citing Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  "Minor" is defined as "inferior in importance, size, or degree: comparatively unimportant."  MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/minor (last accessed Jul. 23, 2024). "Insignificant" is defined as "not significant: such as (a) lacking meaning or import; (b) small in size, quantity, or number."  MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/insignificant (last accessed Jul. 23, 2024).  Based upon the plain language of the statute, "minor or insignificant" processing in a third country is to apply in instances in which the third-country processing is immaterial or unimportant.

The legislative intent supports this plain language meaning of "minor or insignificant." The legislative history reflects Congressional intent to focus on third country manufacturing operations amounting to no more than the assembly or completion of the merchandise subject to an AD/CVD order. The Statement of Administrative Action ("SAA") explained that the role of the circumvention statute was to combat the establishment of "screwdriver" assembly operations. Specifically, the SAA states:

> Section 230 of the bill amends existing sections 781(a) and 781(b) of the Act which address the circumvention of antidumping or countervailing duty orders through the establishment of screwdriver assembly operations in the United States or a third country, respectively. Sections 781(a)(1) and 781(b)(1) (the so-called mandatory factors) focus the inquiry on whether: (1) minor or insignificant assembly or completion is occurring in the United States (or a third country); and (2) the value of the parts imported into the United States (or a third country) from the country subject to the order is a significant proportion of the total value of the finished product.

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, Vol. I (1994) (SAA) ("SAA"), at 893-94. Congress granted Commerce the authority to find circumvention in cases where the third country manufacturing operations were insignificant, unimportant, or immaterial.

Commerce's application of "minor or insignificant" to the facts at hand was far too broad and not consistent with the administrative record in this proceeding. The plain language and the legislative intent support a narrow interpretation of the statute. A narrow application is proper, especially given the extraordinary action of an anticircumvention proceeding, which brings non-subject merchandise under the scope of an order.

B.  **COMMERCE'S FINAL DETERMINATION THAT THE NATURE OF THE PRODUCTION PROCESS IN KOREA IS MINOR AND INSIGNIFICANT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

Commerce's *Final Determination* concerning the nature of the production process is unsupported by substantial evidence and not in accordance with law.  The administrative record in this proceeding does not support Commerce's determination that the nature of processing in Korea is minor and insignificant.  Final I&D Memorandum at 23-25, P.R. 263.  Korean respondents provided detailed documentation and information regarding the significant and sophisticated nature of manufacturing in Korea demonstrating that such manufacturing imparted the necessary mechanical and physical properties of the final product.  *See* Dong-IL's IQR at 16-20, P.R. 131; C.R. 42; *see also* Lotte's IQR at 19, 20, P.R. 134; C.R. 49.  Commerce's nature of production analysis is fundamentally flawed because Commerce failed to accurately weigh and consider the importance of Korean operations and their transformative impact on the final end product.  Final I&D Memorandum at 23-25, P.R. 263.  Korean processing creates the necessary physical and mechanical properties required for the end product and supports a finding of no circumvention.

The administrative record in this proceeding demonstrates that significant and high-level processing occurs in Korea.  The sophisticated and extensive processing, which requires expensive and sophisticated machinery, as well as a trained, skilled workforce is paramount in transforming raw material inputs into a new and different product that meets the specific mechanical and physical properties required for the intended end use.  Dong-IL reported that manufacturing starts at rolling and includes (1) milling and doubling process (separating and slitting process); (3) annealing process; (4) inspection and quality control; (5) coating process and (6) heavy gauge and gang slitting.  Dong-IL IQR at 16-20, P.R. 131; C.R. 42.  Lotte reported similar manufacturing.  Lotte's IQR at 19, 20, P.R. 134; C.R. 49.  Importantly, the manufacturing process varies based

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED

upon the end use which dictates the distinct mechanical and physical characteristics of each product manufactured.  The annealing process, for example, is used to impart mechanical properties such as tensile strength and elongation.  Dong-IL IQR at 19, P.R. 131; C.R. 42.  This process alone takes "[     ] minutes to process a set of [   ] aluminum strip rolls with a width of [     ] mm and a length of [        ] meters in the annealing machine."  *Id.*  Lotte explained that during the annealing process hard foil is "processed by heat treated and annealed to being semi-hard until it is recrystallized."  Lotte's IQR at 20, P.R. 134; C.R. 49.  Soft foil is "produced by undergoing annealing under high temperature (i.e., close to the melting point)."  *Id.*  As a result of the above processing, the metal is physically transformed into a new and distinct product that differs and is substantially transformed from its raw material inputs.

In its *Final Determination*, with no real explanation, Commerce improperly downplayed physical and mechanical properties that were imparted as the result of Korean manufacturing and simply claimed that processing was minor and insignificant because the chemical properties of the product did not change.  Final I&D Memorandum at 24, P.R. 263.  Commerce incorrectly claims that there is no "physical" or substantial transformation as there is no change to the chemical properties.  *Id.*  Yet, the administrative record provides evidence of the physical transformations that occur due to Korean processing rendering a new and distinct product suitable for its intended use.  Moreover, neither the circumvention statute nor Commerce's regulations require a chemical change for a product to be substantially transformed which makes sense as substantial transformation analysis must be based on the specific facts of each case.  Thus, Commerce's *Final Determination* adds a new requirement not contemplated or supported by the statute or the administrative record in the underlying proceeding.

Commerce points to the fact that the finished product maintains the same chemical properties as the raw material input. Yet, this would be true regardless of whether the finished product be aluminum foil or another aluminum product such as a product made with aluminum extrusions. It is nonsensical that a product cannot be substantially transformed simply because the chemical alloy composition in the raw material input is the same as that with the finished product. This would mean that no aluminum, steel or even a wood product for that matter, could be substantially transformed by the manufacturing process absent a change in chemical composition, a proposition that can only be described as farcical at best. The analysis required by the anticircumvention statute differs and requires that Commerce consider all factors on the record related to the nature of production, including those that impart the necessary physical and mechanical properties of the finished product as these are certainly the most important with respect to the manufacturing processes under consideration. Failure to account for these fundamental factors renders Commerce's *Final Determination* unlawful and unsupported by the administrative record. Absent processing to provide the necessary physical and mechanical requirements, the final product could not be used for its intended use. The processing that occurs in Korea is responsible for substantially transforming raw material inputs into a finished product suitable for its intended use. Prior to this substantial transformation these material inputs could be used for a variety of very different end use products that bear no relation to aluminum foil and any related downstream products.

Importantly, Commerce has found that the conversion process was "critical for producing a commercially usable product," also concluding that the nature of the production process was significant under the circumstances. *See Ferrovanadium and Nitrided Vanadium from the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order*, 77

Fed. Reg. 46712 (Aug. 6, 2012), and accompanying Issues and Decision Memorandum (July 30, 2012), at 9. Here, Commerce found that absent the processing under consideration the material input would be "unsuitable for its use as an additive in steel-making." The same is true in this case where the processing was necessary to make the product suitable for its use and resulted in a different and significantly new product.

For the reasons detailed above, Commerce's findings regarding the nature of processing performed in Korea are not supported by the substantial evidence on the administrative record. We ask the Court to remand this matter back to Commerce with instructions to find that the nature of Korean processing is not minor or insignificant.

## C. COMMERCE'S FINAL DETERMINATION CONCERNING THE VALUE OF THE PROCESSING PERFORMED IN KOREA IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

As part of its assessment of whether the processing performed in Korea is "minor or insignificant," Commerce is directed to take into account "whether the value of the processing performed in {Korea} represents a small proposition of the value of the merchandise imported into the United States." 19 U.S.C. § 1677j(b)(2)(E). In the *Final Determination*, Commerce found that the value of the merchandise produced in China that was used by mandatory respondents (*i.e.*, Dong-IL and Lotte) to produce inquiry merchandise is a significant portion of the total value of the merchandise exported to the United States. Final I&D Memorandum at 34, P.R. 263. Commerce determined that the value of processing "weighs toward an affirmative determination of circumvention." *Id.* at 37. Commerce's finding regarding the level of value added is flawed for two reasons. First, Commerce's determination is based on an expansive definition of "minor or insignificant" and is an impermissible interpretation of statute. Second, Commerce failed to conduct a proper qualitative analysis for this factor.

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED

### 1. The Value of Processing is Significant

The administrative record demonstrates that the value of processing in Korea is significant. Commerce's quantitative analysis is inconsistent with the administrative record. Korean Producers provided detailed production costs and information which demonstrates that "processing costs are more than [    ] and as much as [    ] percent of the value of the finished aluminum foil imported into the U.S. market." Korean Producers' Pre-Preliminary Comments at 35, 39, P.R. 172; C.R. 87. Moreover, as the Korean Producers explained, Commerce improperly calculated value because it failed to use a U.S. price net of movement expenses. Korean Producers' Case Brief at 25, P.R. 213; C.R. 95. Based on this information provided by the Korean Producers, the value of the processing cannot be characterized as "minor or insignificant."

Even if Commerce's quantitative analysis is to be utilized, the value of the processing cannot be characterized as "minor or insignificant." Commerce calculated that the value of processing performed by Dong-IL in Korea is [    ] percent of the value of the inquiry merchandise imported into the United States. Preliminary Analysis Memorandum for Dong-IL at 4, P.R. 182; C.R. 89. With respect to Lotte, Commerce calculated that the value of processing performed in Korea is [    ] percent of the value of the inquiry merchandise imported into the United States. Preliminary Analysis Memorandum for Lotte at 4, P.R. 184; C.R. 91. Commerce's determination that these value percentages were "minor or insignificant" is also inconsistent with Commerce's previous circumvention determinations. *See e.g.*, *Ferrovanadium and Nitrided Vanadium From the Russian Federation*, 77 Fed. Reg. 6,537, 6,539 (Dep't Commerce Feb. 8, 2012).

By Commerce's own calculations, it cannot be said that the value of the process for Dong-IL and Lotte performed in Korea is "minor or insignificant." Commerce has misapplied the statutory standard to determine "minor or insignificant." It is unreasonable that Commerce would

find these percentages of value as lacking meaning or importance.  These values do not support an affirmative circumvention finding.

**2.  Commerce Failed to Properly Conduct the Required Qualitative Value-Added Analysis**

In addition, Commerce's value-added analysis is flawed because Commerce failed to evaluate this factor on a qualitative basis as directed by Congress.  The statute directs Commerce to determine whether the value of the processing performed in the third country represents a small proportion of the value of the merchandise imported into the United States.  19 U.S.C. § 1677j(b)(2)(e).  Commerce's consideration of these statutory factors requires it to focus more on the nature of the production process and less on the difference in value between the subject merchandise and the inputs imported in the process country.

In its *Final Determination*, Commerce's analysis of the value added by processing performed in Korea applied the same analysis as the *Preliminary Determination*.  Final I&D Memorandum at 35, P.R. 263.  In its preliminary decision memorandum, Commerce found that the value of processing performed in South Korea "represents a small proportion of the value of the inquiry merchandise imported into the United States and, this weights in favor of finding that the process of assembly or completion in Korea is minor or insignificant."  Preliminary I&D Memorandum at 14-15, P.R. 181.  Commerce's *Preliminary Determination* focused solely on a quantitative analysis, in which it "summed the per-unit costs incurred in Korea by Dong-IL for non-Chinese material inputs used during the Korean processing of inquiry merchandise, labor, fixed and variable overhead, selling, general, and administrative items, and interest, and divided the sum by the per-unit weighted-average value of Dong-IL's U.S. sales of inquiry merchandise during the inquiry period."  Preliminary I&D Memorandum at 14-15, P.R. 181; *see also* Final I&D

22

Memorandum at 35-36, P.R. 263.  With respect to Lotte, Commerce made the same quantitative analysis.  Preliminary I&D Memorandum at 15, P.R. 181.

While Commerce argues that it followed guidance from *Ferrovanadium from Russia* in its analysis, Commerce fails to detail or provide any analysis regarding the qualitative methodology it may have undertaken.  Final I&D Memorandum at 31, P.R. 263.  The analysis of focused solely on the quantitative analysis.

Following the Uruguay Rounds Agreements Act, Congress redirected Commerce's focus away from a rigid numeric calculation of value-added toward a more qualitative focus on the nature of the production process.  Preliminary I&D Memorandum at 11, P.R. 181 (acknowledging Commerce's qualitative and quantitative factors are required to determine whether the process of assembly or completion in Korea is minor or insignificant); *Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Pasta from Italy: Affirmative Preliminary Determination of Circumvention of Antidumping and Countervailing Duty Orders*, 68 Fed. Reg. 46,571, 46,575 (Aug. 6, 2003), unchanged in *Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Pasta from Italy: Affirmative Final Determinations of Circumvention of Antidumping and Countervailing Duty Orders*, 68 Fed. Reg. 54,888 (Sept. 19, 2003).  Congress instructed Commerce to adopt "a more qualitative focus on the nature of the production process," rather than "a rigid numeral calculation of value-added."  SAA at 893.

A decision on the nature of processing is qualitative as a matter of common sense and can never be as simple as mere counting.  Certain processes are more important than others.  Some processes are more sophisticated and/or more involved than others.  A specific process may be more time consuming or require unique skills as compared to others.  Commerce failed to address

these crucial factors despite understanding the importance of such qualitative analysis in considering the nature of production.  Commerce routinely makes qualitative decisions related to substantial transformation when considering country of origin issues.

Commerce's failure to consider the qualitative nature of processing steps coupled with ignoring record evidence renders Commerce's *Final Determination* unsupported by the administrative record and contrary to law.   In this proceeding, the administrative record demonstrates that the value of the processing performed in Korea is substantial.   Indeed, a determination that the value of the processing performed in Korea is minor or insignificant is inconsistent with CBP's substantial transformation analysis.  CBP has determined that aluminum foil imported from China into a third country may be exported from that third country with a new country of origin.  *See e.g.,* Customs Ruling H302201 (Apr. 6, 2020) (provided in Letter from Mowry & Grimson, PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: The Flexible Packaging Association's Coalition for Aluminum Foil Security's Comments on Initiation and Rebuttal Factual Information* (Sept. 16, 2022) ("FPA Coalition's September 16th Comments") at Exhibit 13, P.R. 95, C.R. 32).  Importantly, the processing that occurs in Korea alters the physical and mechanical characteristics of the aluminum foil and completely changes it into a different and significantly more expensive product.  *Id.*  While CBP's Customs Ruling focused on the question of substantial transformation for purposes of determining country of origin, CBP's focus on the nature of production and the value added to such production is persuasive in this instance.   There is also significant information of record that provides Commerce with detailed production methods and information related to the total production cost.  *See e.g.,* FPA Coalition's September 16th Comments at 12-15, P.R. 90, C.R. 27; *see also* Letter from Mowry & Grimson, PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's*

*Republic of China: The Flexible Packaging Association's Coalition for Aluminum Foil Security's Comments Prior to the Preliminary Circumvention Decisions* (Feb. 24, 2023) at 7, P.R. 175. The production process in Korea requires the substantial transformation of the physical and mechanical characteristics of the imported material. As a result, the value-added, when viewed in combination with this fundamental alteration of the merchandise, is not small.

### D. COMMERCE PLACED UNREASONABLE AND UNLAWFUL WEIGHT ON TWO OF THE FIVE FACTORS USED TO DETERMINE "MINOR AND INSIGNIFICANT"

Assuming *in arguendo* that Commerce's analysis regarding the nature of the production process and the value-added in Korea was proper, Commerce assigned undue weight in evaluating the factors to be considered for the "minor or insignificant" analysis pursuant to 19 U.S.C. § 1677j(b)(2). As noted in Section A, in assessing whether a process is "minor or insignificant," the statue directs Commerce to take into account:

> (A) the level of investment in the foreign country,
> (B) the level of research and development in the foreign country,
> (C) the nature of the production process in the foreign country,
> (D) the extent of production facilities in the foreign country, and
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2). In the *Final Determination*, Commerce issued a final affirmative finding despite three of the factors (level of investment, the level of R&D, and the extent of the production facilities in Korea) weighed against a finding that the process of assembly or completion in Korea is minor or insignificant. *See* Final I&D Memorandum at 32, P.R. 263. Commerce provided the following in stating that two factors support a finding of circumvention:

> The factors involving the level of investment, the level of R&D, and the extent of the production facilities in {the third country} weigh less heavily in our determination than the factors involving the nature of the production process and the value added in {the third

country} because the former relate more broadly to the companies
and their facilities, whereas the latter relate more to the production
of the inquiry merchandise itself.

*Id*. at 32.

Commerce's reliance on only two of the five total factors in rending its determination is

unreasonable and contrary to law. Commerce's analysis effectively rendered three out of the five

statutory factors meaningless. There is no textual foundation in the statute to allow for two factors

to carry more weight than other statutory factors. Indeed, the legislative history was clear that

Congress intended for no single factor to be determinative. Congress stated that "Commerce will

evaluate each of these factors as they exist either in the United States or a third country" and further

indicated that "{n}o single factor will be controlling." SAA at 893.

Such an analysis is improper as it elevated certain factors above the other factors in a

manner that finds no foundation in the statute. Commerce's flawed analysis placed improperly

weight on two processes, resulting in three of the five statutory factors to be provided less import

consideration for the "minor or significant" determination.

**E. COMMERCE'S PATTERNS OF TRADE ANALYSIS IS NOT SUPPORTED BY
SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

In the *Final Determination*, consistent with the *Preliminary Determination*, Commerce

continued to find that the patterns of trade indicated circumvention for Korea. Final I&D

Memorandum at 47, P.R. 263. Commerce concluded that "{w}hen comparing the pre-initiation

period (July 2012, to March 2017) to the post-initiation period (April 2017 to December 2021),

we found that U.S. imports of aluminum foil from China decreased substantially" and Commerce

"found that this pattern of trade indicates a shift in exports of aluminum foil to the United States

from China to Korea and, thus weighs in favor of finding circumvention." *Id*. at 46. Commerce's

determination concerning patterns of trade is flawed and the analysis fails to address record evidence.

When evaluating whether action is appropriate to prevent evasion of an order, Commerce examines the factors under 19 U.S.C. § 1677j(b)(3), which provides:

> In determining whether to include merchandise assembled or completed in a foreign country in a countervailing duty order or an antidumping duty order or finding under paragraph (1), the administering authority shall take into account such factors as—
>
>> (A) the pattern of trade, including sourcing patterns,
>>
>> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
>>
>> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

19 U.S.C. § 1677j(b)(3).

While the record does demonstrate an increase in imports, there is no record evidence that in any way demonstrates that these increases are related to any attempts to circumvent the *Orders*. Commerce points to no unlawful transshipment or examples of evasion of AD/CVD orders. The administrative record demonstrates that there was an established manufacturing industry in Korea unrelated to the *Aluminum Foil Orders*. Korean Producers' sourcing patterns have not changed as "each of the six Korean Producers has been manufacturing aluminum foil for more than 30 years and, in the case of Lotte for, for 55 years." Korean Producers' Pre-Preliminary Comments at 6, P.R. 172; C.R. 87. Indeed, the administrative record demonstrates that "{t}he Korean aluminum foil industry is a direct competitor of the Chinese aluminum foil industry that has made significant

investments in time and resources to develop their aluminum foil production, sales, and distribution operations." *Id*. at 7. Given the historical trade pattern of Korean aluminum foil, the import of these products into the U.S. is not a new or recent development. Rather, Korean Producers demonstrated a long-standing presence in the U.S. market. *Id*.; *see also* Lotte's IQR at 3, 2, 8-9, 10-11; Lotte's SQR at S4 – S6; Dong-IL's IQR at 1-2.

It is unreasonable to conclude that such trade patterns are indicative of circumvention rather than a condition of the Korean industry. The very purpose of circumvention provisions is to "address the circumvention of antidumping or countervailing duty orders through *the establishment* of screwdriver assembly operations in the United States or a third country." SAA at 893 (emphasis added). Indeed, in addressing the timeframe Commerce is to consider in its circumvention analysis, Congress indicated that Commerce should consider the date on which an investigation is initiated. Specifically, Congress stated:

> {I}t it is possible for a foreign producer to establish a screwdriver operation in the United States or a third country before an initial antidumping or countervailing duty investigation is completed and thereby potentially avoid any finding of circumvention. Therefore, Commerce will examine imports occurring after the initiation of the investigation resulting in the issuance of the order.

Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (1987), at 99.

The legislative intend is clear: Congress was concerned with the establishment of new operations in reaction to the initiation of an investigation and/or AD/CVD orders.

Decisions by U.S. importers to import Korean product reflect good business judgement, not circumvention or malintent that Commerce tried to extrapolate. There is no prohibition against importing or exporting non-subject merchandise, particularly, as the case is here, from an established industry. Importantly, the Court recognizes business reasons to import from alternative

suppliers to avoid AD/CVD duty liability and the lawfulness of doing so.  In *Inmax SDN*, for example, the Court overturned a changed circumstance review that collapsed affiliated nail producers based upon a statement of the parent company that exports would only be made through the affiliate with the lower rate.  *Inmax SDN v. United States*, 277 F.Supp.3d 1367 (Ct. Int'l Trade 2017).

> In issuing its decision, the Court explained:

> > Commerce found that the Inmax companies did <u>not</u> illegally co-mingle subject merchandise in their exports, and that their parent publicly, and transparently communicated a change in their export behavior due to the differing assigned rates.  Commerce does acknowledge that this "avoidance could be seen by some as a reasonable corporate resources decision . . .."  The court would go one step further and add that not just "some" but <u>all</u> would view such a production change as a reasonable corporate resource decision.  What were Inmax Holding's other options?  Continue to export through Inmax at 39.95%?  Commerce concludes that the otherwise reasonable corporate resource decision "is a form of deliberate manipulation, <u>via</u> cash deposit avoidance, to undermine or evade the full effect of the <u>Order</u>."

*Id*. at 1372-73.

The same reasoning applies to this proceeding.  U.S. importers' decisions to purchase from the well-established Korean aluminum foil industry reflect good supply chain management and in no way suggest circumvention.

Commerce's analysis fails to address arguments on the record related to the established industry in Korea or the impact that this has on the trade patterns analysis.  *See e.g.*, Korean Producers' Pre-Preliminary Comments at 4-7, P.R. 172; C.R. 87; Hanon's Case Brief at 15-17, P.R. 210; C.R. 94.  Likewise, Commerce failed to address this Court's decision in *Inmax SBD* as raised in briefs.

## V.    <u>CONCLUSION</u>

For the reasons set forth in this brief, Plaintiff respectfully requests that this Court hold that Commerce's *Final Determination* was not supported by substantial evidence and otherwise not in accordance with law.  Plaintiff respectfully requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:    <u>/s/ Kristen Smith</u>
Kristen Smith
Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Hanon Systems Alabama Corp.*

Dated: July 24, 2024

## Certificate of Compliance with Chamber Procedure 2(B)(1)

The undersigned hereby certifies that the foregoing brief contains 8,756 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, and certificates of counsel, and counsel's signature block, and therefore complies with the maximum 14,000-word count limitation set forth in the Standard Chamber Procedures of the U.S. Court of International Trade.

By:    /s/ Sarah E. Yuskaitis
       *Counsel to Hanon Systems Alabama Corp.*

Dated: July 24, 2024