IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

_____

|  |  |  |
|---|---|---|
| HANON SYSTEMS ALABAMA CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00013 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALUMINUM ASSOCIATION TRADE | ) | |
| ENFORCEMENT WORKING GROUP and | ) | |
| ITS INDIVIDUAL MEMBERS | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

| | |
|---|---|
| JONZACHARY FORBES | CHRISTOPHER BERRIDGE |
| Attorney | Trial Attorney |
| Department of Commerce | U.S. Department of Justice |
| Office of the Chief Counsel | Civil Division |
| for Enforcement and Compliance | Commercial Litigation Branch |
| U.S. Department of Commerce | P.O. Box 480, Ben Franklin Station |
| | Washington, D.C. 20044 |
| | (202) 353-0537 |
| | Email: Christopher.Berridge@usdoj.gov |

October 8, 2024                    *Attorneys for Defendant*

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| _____ ) | |
| HANON SYSTEMS ALABAMA CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 24-00013 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ALUMINUM ASSOCIATION TRADE ) | |
| ENFORCEMENT WORKING GROUP and ) | |
| ITS INDIVIDUAL MEMBERS ) | |
| ) | |
| Defendant-Intervenors. ) | |
| _____) | |

## <u>ORDER</u>

On consideration of plaintiff's motion for judgment on the administrative record,

defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the motion is denied and, it is further

ORDERED that judgment is entered for the United States.


Dated: _____                _____
           New York, NY                                              JUDGE

## TABLE OF CONTENTS

**PAGES**

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR JUDGMENT UPON THE AGENCY RECORD.................................……..1

STATEMENT PURSUANT TO RULE 56.2 ..................................................2

    I.    The Administrative Determination Under Review ....................................2

    II.    Issue Presented For Review .......................................................2

STATEMENT OF FACTS ....................................................................3

    I.    Legal Framework for Circumvention Inquiries Under
        19 U.S.C. § 1677j(b)..................................................................3

    II.    Background and Initiation of the Circumvention Inquiry.........................5

    III.    Preliminary Affirmative Determination of Circumvention .......................6

    IV.    Final Affirmative Determination of Circumvention...................................9

SUMMARY OF THE ARGUMENT ...........................................................13

ARGUMENT .....................................................................................14

    I.    Standard Of Review .................................................................14

    II.    Commerce's Application of the Statute Under
        19 U.S.C. § 1677j(b)(1)(C) and Its Analysis of Record Information
        is in Accordance with Law .........................................................15

    III.    Commerce's Finding that the Nature of Production Factor Under
        19 U.S.C. § 1677j(b)(2)(C) Weighs in Favor of Finding the
        Process of Assembly or Completion is Minor or Insignificant
        is Supported by Substantial Evidence…………………………………18

    IV.    Commerce's Determination Under 19 U.S.C. § 1677j(b)(2)(E)
        that the Value of the Processing Performed in Korea Represents
        a Small Proportion of the Value of the Merchandise Imported
        into the United States is Supported by Substantial Evidence....................22

    V.    Commerce Reasonably Weighed the Five Factors Under
        19 U.S.C. § 1677j(b)(2)............................................................25

i

VI.    Commerce's Pattern of Trade Analysis Under
        19 U.S.C. § 1677j(b)(3)(A) is Supported by Substantial Evidence ............26

CONCLUSION ........................................................................................ ….28

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGES**

*Al Ghurair Iron & Steel LLC v. United States,*
   536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021)...................................................................17, 25

*Al Ghurair Iron & Steel LLC v. United States,*
   65 F.4th 1351 (Fed. Cir. 2023) ..................................................................10, 15, 17

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States,*
   102 F.4th 1252 (Fed. Cir. 2024) .................................................................15, 16, 20

*Cleo Inc. v. United States,*
   501 F.3d 1291 (Fed. Cir. 2007) ...........................................................................19

*Consolidated Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ........................................................................................14

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) ........................................................................................14

*Fujitsu Gen. Ltd. v. United States,*
   88 F.3d 1034 (Fed. Cir. 1996) ............................................................................14

*Goldlink Indus. Co. v. United States,*
   431 F.Supp.2d 1323 (Ct. Int'l Trade 2006) ....................................................15, 19

*HLDS (B) Steel Sdn Bdh v. United States,*
   2024 WL244937 (Ct. Int'l Trade 2024)...........................................…..17

*Inmax SDN v. United States,*
   277 F.Supp.3d 1367 (Ct. Int'l Trade 2017) ..................................................…..27

*Hyundai Elec. & Energy Sys. Co. v. United States,*
   15 F.4th 1078 (Fed. Cir. 2021) ......................................................…..15

*Lignite Energy Council v. United States EPA,*
   198 F.3d 930 (D.C. Cir. 1999)..............................................................................4

*Meridian Prods., LLC v. United States,*
   851 F.3d 1375 (Fed. Cir. 2017) ...........................................................................14

*Usinor v. United States,*
   342 F.Supp.2d 1267 (Ct. Int'l Trade 2004) ...........................................................15

*Wirth Ltd. v. United States,*
    5 F. Supp. 2d 968 (Ct. Int'l Trade 1998) ..................................................................... 25

## STATUTES

19 U.S.C. § 1516a(b)(1)(B) ........................................................................................ 14

19 U.S.C. § 1677j(b) ..................................................................................................... 3

19 U.S.C. § 1677j(b)(1) ............................................................................................. 3, 6

19 U.S.C. § 1677j(b)(1)(A) ....................................................................................... 6, 7

19 U.S.C. § 1677j(b)(1)(B) ....................................................................................... 6, 7

19 U.S.C. § 1677j(b)(1)(C) ...................................................................................*passim*

19 U.S.C. § 1677j(b)(1)(D) ............................................................................... 7, 12, 22

19 U.S.C. § 1677j(b)(1)(E) ................................................................................. 8, 9, 27

19 U.S.C. § 1677j(b)(2) ........................................................................................*passim*

19 U.S.C. § 1677j(b)(2)(A)-(E) ......................................................................... 7, 13, 16

19 U.S.C. § 1677j(b)(2)(C) ............................................................................. 16, 18, 24

19 U.S.C. § 1677j(b)(2)(E) ................................................................................... 22, 24

19 U.S.C. § 1677j(b)(3) ........................................................................................*passim*

19 U.S.C. § 1677j(b)(3)(A) .................................................................................*passim*

19 U.S.C. § 1677j(b)(3)(C) ........................................................................................... 3

## REGULATIONS

19 C.F.R. § 351.225(h) ............................................................................................ 3, 4

19 C.F.R. § 351.226(b) ................................................................................................. 5

## ADMINISTRATIVE DETERMINATIONS

*Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*,
    88 Fed. Reg. 82,824 (Dep't of Commerce Nov. 27, 2023)................................................2

*Certain Aluminum Foil From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*,
    83 Fed. Reg. 17,362 (Apr. 19, 2018).......................................................................*passim*

*Certain Aluminum Foil From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*,
    83 Fed. Reg. 17,360 (Apr. 19, 2018).......................................................................*passim*

*Certain Aluminum Foil From the People's Republic of China: Initiation of Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders*
    87 Fed. Reg. 42,702 (July 18, 2022) ...........................................................................5, 6

*Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Preliminary Affirmative Determination of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*
    88 Fed. Reg. 17,177 (Dept. of Commerce Mar. 22, 2023) ................................................6

*Preliminary Negative Determination and Extension of Time Limit for Final Determination of Circumvention of the Antidumping Duty Order on Ferrovanadium and Nitrided Vanadium from the Russian Federation*
    77 Fed. Reg. 6,537 (Dep't of Commerce Feb. 8, 2012) ................................ 10, 19, 23, 24

*Ferrovanadium and Nitrided Vanadium from the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order*
    77 Fed. Reg. 46,712 (Aug. 6, 2012) ..............................................................................21

## OTHER DOCUMENTS

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act
    H.R. Doc. No. 103-316 (SAA), at 893 (1994) ........................................................*passim*

Omnibus Trade Act of 1987, Report of the Senate Finance Committee
    S. Rep. No. 100-71 (S. Rept.), at 101 (1987)....................................................................5

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

---

| | |
|---|---|
| HANON SYSTEMS ALABAMA CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 24-00013 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ALUMINUM ASSOCIATION TRADE ) | |
| ENFORCEMENT WORKING GROUP and ) | |
| ITS INDIVIDUAL MEMBERS ) | |
| ) | |
| Defendant-Intervenors. ) | |

---

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR
JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response in opposition to the

motion for judgment on the agency record filed by plaintiff, Hanon Systems Alabama Corp.

(Hanon).  ECF No. 20 (Hanon Br.).  Hanon is a foreign corporation that imports merchandise

that is subject to the aluminum foil orders and was part of the administrative proceedings before

Commerce.  Complaint; ECF No. 9.  Hanon challenges the United States Department of

Commerce's (Commerce) final affirmative determination issued in the circumvention inquiry of

the antidumping and countervailing duty orders on certain aluminum foil from the People's

Republic of China (China) with respect to the Republic of Korea (Korea).  Because Commerce's

final circumvention determination is supported by substantial evidence and in accordance with law, the Court should deny Hanon's motion and enter judgment in favor of the United States.

**STATEMENT PURSUANT TO RULE 56.2**

## I.      Administrative Determination Under Review

The administrative determination under review is the final determination of circumvention of the antidumping and countervailing duty orders on certain aluminum foil from China with respect to Korea, issued and published as *Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*, 88 Fed. Reg. 82,824 (Dep't of Commerce Nov. 27, 2023) (*Final Determination*) (P.R. 265), and the Issues and Decision Memorandum accompanying the determination with respect to Korea (IDM) (P.R. 263).[1]  The period of inquiry that Commerce examined is April 1, 2017, through December 31, 2021 (inquiry period).

## II.     Issues Presented for Review

1.      Whether Commerce correctly applied the statutory standard for determining whether the process of assembly or completion in Korea is minor or insignificant within the meaning of 19 U.S.C. § 1677j(b)(1)(C), (2).

2.      Whether Commerce's finding that the process of assembly or completion in Korea is minor or insignificant is supported by substantial evidence and in accordance with law.

3.      Whether Commerce properly weighed the relevant statutory factors under 19 U.S.C.

---

[1] Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the underlying administrative review.  Administrative Record Index, ECF No. 17.

§ 1677j(b)(2) in analyzing whether the process of assembly or completion in Korea is minor or insignificant.

4.    Whether Commerce's analysis of trade patterns under 19 U.S.C. § 1677j(b)(3)(A) and (C) is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

### I.    Legal Framework for Circumvention Inquiries Under 19 U.S.C. § 1677j(b)

To prevent circumvention of antidumping and countervailing duty orders, the statute permits Commerce to include within the scope of an order merchandise completed in a foreign country other than the order country if certain criteria are met.  19 U.S.C. § 1677j(b).  Commerce may do so if (A) the merchandise is of the same class or kind as any merchandise that is subject to an antidumping or countervailing duty order; (B) before importation, the imported merchandise is completed or assembled in another foreign country from merchandise that is either subject to that antidumping or countervailing duty order or is produced in the foreign country to which the order applies; (C) the process of assembly or completion of that merchandise in the foreign country is minor or insignificant; (D) the value of the merchandise produced in a foreign country to which the order applies is a significant portion of the total value of the merchandise exported to the United States; and (E) Commerce determines that action is appropriate to prevent evasion of such an order or finding.  19 U.S.C. § 1677j(b)(1); *see also* 19 C.F.R. § 351.225(h) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order, at any time such order is in effect, imported merchandise completed or assembled in a foreign country other than the country to which the order applies").

In determining whether the process of assembly or completion in the third country is "minor or insignificant" under 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to "take into account" (A) the level of investment in the foreign country, (B) the level of research and development (R&D) in the foreign country, (C) the nature of the production process in the foreign country, (D) the extent of the production facilities in the foreign country, and (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States. 19 U.S.C. § 1677j(b)(2). No single factor controls. 19 C.F.R. § 351.225(h); Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040. Additionally, when Congress has prescribed factors but not their relative weight, the agency is granted "a great degree of discretion in balancing them." *See Lignite Energy Council v. United States EPA*, 198 F.3d 930, 933 (D.C. Cir. 1999) (holding that the Environmental Protection Agency was granted a discretion to balance factors in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).

The statue identifies additional, non-exhaustive, discretionary "factors to consider" in determining whether to include merchandise completed in a third country within the scope of an order. Commerce thus will "take into account such factors" as:

(A) the pattern of trade, including sourcing patterns,

(B) whether the manufacturer or exporter of the merchandise . . . described in {19 U.S.C. § 1677j(b)(1)(B)} is affiliated with the person who uses the merchandise described in {19 U.S.C. § 1677j(b)(1)(B)} to assemble or to complete in the foreign country the merchandise that is subsequently imported into the United States; and

(C) whether imports into the foreign country of the merchandise described in {19 U.S.C. § 1677(b)(1)(B)} have increased after the initiation of the investigation that resulted in the issuance of such order . . . .

19 U.S.C. § 1677j(b)(3).

Congress intended to "authorize {Commerce} to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law." Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (S. Rept.), at 101 (1987). Commerce possesses "substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter" and that Commerce use its authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." *Id.* at 100.

## II.    Background and Initiation of the Circumvention Inquiry

On April 19, 2018, Commerce issued antidumping (AD) and countervailing duty (CVD) orders on certain aluminum foil from China. *Certain Aluminum Foil From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 83 Fed. Reg. 17,362 (Apr. 19, 2018); *Certain Aluminum Foil From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 17,360 (Apr. 19, 2018) (collectively, *Aluminum Foil Orders*).

On July 18, 2022, pursuant to 19 C.F.R. § 351.226(b), Commerce self-initiated a country-wide circumvention inquiry to determine whether imports of certain aluminum foil completed in Korea using Chinese-origin inputs are circumventing the *Aluminum Foil Orders*. *See Certain Aluminum Foil From the People's Republic of China: Initiation of Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 42,702 (July 18, 2022) (Initiation Notice) (P.R. 22); *see also* Memorandum, Initiation of Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders (July 11, 2022) (Initiation Memorandum) (P.R. 2). The merchandise subject to the inquiry is "aluminum foil, assembled or completed in

Korea using Chinese-origin aluminum foil and/or sheet, that is subsequently exported from Korea to the United States (inquiry merchandise)." *See* Initiation Notice, 87 Fed. Reg. at 42,702 (P.R. 22).

On August 11, 2022, Commerce issued quantity and value questionnaires to Korean manufacturers or exporters of aluminum foil for purposes of respondent selection. *See* Quantity and Value Questionnaire for Circumvention Inquiries With Respect to the Republic of Korea and the Kingdom of Thailand (Aug. 11, 2022) (P.R. 39). On October 12, 2022, Commerce selected Dong-IL Aluminum Co., Ltd. (Dong-IL) and Lotte Aluminum Co., Ltd. (Lotte) as mandatory respondents in the circumvention inquiry for Korea. *See* Respondent Selection Memorandum (Oct. 12, 2022) (P.R. 106).

## III.    Preliminary Affirmative Determination of Circumvention

On March 22, 2023, Commerce published its preliminary affirmative determination of circumvention. *See Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Preliminary Affirmative Determination of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand*, 88 Fed. Reg. 17,177 (Dept. of Commerce Mar. 22, 2023) (*Preliminary Determination*) (P.R. 186) and accompanying Issues and Decision Memorandum (PDM) (P.R. 181). In the *Preliminary Determination*, Commerce preliminarily found that imports of certain aluminum foil that were exported from Korea, using inputs (*i.e.*, aluminum foil and sheet-gauge products) manufactured in China were circumventing the *Aluminum Foil Orders* and, accordingly, should be covered by the scope of the *Aluminum Foil Orders*. *Id.*

Commerce evaluated the statutory circumvention criteria set forth at 19 U.S.C. § 1677j(b)(1). Evaluating the first two of these criteria, 19 U.S.C. §§ 1677j(b)(1)(A)-(B),

Commerce found that aluminum foil exported by Dong-IL and Lotte from Korea to the United States were of the same class or kind of merchandise as the merchandise subject to the *Aluminum Foil Orders,* under 19 U.S.C. § 1677j(b)(1)(A), and that they were completed in Korea using aluminum foil and sheet inputs from China, under 19 U.S.C. § 1677j(b)(1)(B).  PDM at 9-10.  Commerce described the general production process for aluminum foil as involving a multi-step process that starts with aluminum strip or sheet being passed several times through work rolls to be squeezed thinner and extruded through the gap between the rolls.  Backup rolls rotating in the opposite direction also apply pressure to help maintain stability of the work rolls and keep the product dimensions within tolerances.  *Id.* at 13.  Under 19 U.S.C. § 1677j(b)(1)(D), Commerce further found that the inputs from China were a significant portion of the total value of the completed aluminum foil exported by Dong-IL and Lotte.  *Id.* at 15-16.

Evaluating the third criterion, 19 U.S.C. § 1677j(b)(1)(C), Commerce then found that the process of assembly or completion of the aluminum foil by Dong-IL and Lotte in Korea was minor or insignificant, such that the kind of production in Korea was not enough to remove the aluminum foil from the scope of the *Aluminum Foil Orders*.  PDM at 10-15.  To reach this conclusion, Commerce evaluated the five sub-factors that the statute directs Commerce to "take into account."  19 U.S.C. § 1677j(b)(2)(A)-(E).  With respect to these factors, Commerce found that the factors involving the level of investment, the level of R&D, and the extent of the production facilities in Korea did not weigh in favor of finding the process of assembly or completion in Korea to be minor or insignificant, but that the nature of the production process and the value added in Korea weighed in favor of finding the process of assembly or completion in Korea to be minor or insignificant.  PDM at 10-15.

Commerce explained that, within the context of its analysis, it weighed the factors involving the level of investment, the level of R&D, and the extent of the production facilities in Korea less heavily than the factors involving the nature of the production process and the value added in Korea. *Id.* at 15. It did so because the former related more broadly to the companies and their facilities, whereas the latter pertained to the production of inquiry merchandise in this case, aluminum foil with inputs from China. *Id.* In particular, Commerce preliminarily determined that the value of the processing performed in Korea was especially important to its analysis in this case. *Id.*

Further, as part of its determination that circumvention was occurring in Korea, Commerce considered the patterns of trade, the level of affiliation between the respondents and their Chinese suppliers, and whether imports of aluminum foil to Korea from China had increased following the initiation of the investigation which led to the *Aluminum Foil Orders,* under 19 U.S.C. § 1677j(b)(3). PDM at 16-18. In particular, Commerce found that the stark difference in trade patterns, as well as the substantial change in aluminum foil imports from China to Korea relative to the initiation of the investigation that led to the *Aluminum Foil Orders*, weighed in favor of a finding of circumvention. *Id.*

Commerce analyzed patterns of trade by comparing publicly available U.S. import statistics for imports of aluminum foil from periods before and after 2017 (the year of initiation of the investigations which resulted in the *Aluminum Foil Orders*). Based on U.S. import data, the value of U.S. imports of aluminum foil from Korea increased substantially from $42.8 million in the pre-initiation period (July 2012 through March 2017) to $459.1 million in the post-initiation period (April 2017 through December 2021), resulting in a staggering increase of 973.7 percent. *Id.* at 16. Further, for the same periods, U.S. imports of aluminum foil from China

8

decreased from $1,573,352,069 to $531,559,728, resulting in a significant decrease of 66.2 percent. *Id.* at 16-17. Dong-IL's and Lotte's individual reported sales also reflected the same trade patterns. *Id.* at 17.

Commerce concluded that neither Dong-IL nor Lotte were affiliated with their Chinese suppliers, weighing against a finding of circumvention. *Id.* However, Commerce also concluded that information indicated that shipments of inputs from China to Korea increased following the issuance of the *Aluminum Foil Orders*. *Id.* at 18. Commerce found that the value of imports from China to Korea for aluminum sheet and plate increased by 83.37 percent, and the value increased by 91.89 percent for aluminum foil. This increase weighed in favor of a finding of circumvention.

Based on its findings with respect to the above factors, Commerce found that the statutory criteria for a finding of circumvention were met and that circumvention of the *Aluminum Foil Orders* was occurring. *Id.* at 18-19. Commerce also preliminarily determined that action under the circumvention statute was warranted to prevent evasion of the *Aluminum Foil Orders* pursuant to 19 U.S.C. § 1677j(b)(1)(E). *Id.* at 19.

Following the publication of the *Preliminary Determination*, Commerce received multiple administrative case briefs and rebuttal briefs from interested parties between May 1, 2023, and May 15, 2023, including from Hanon. *See* Hanon Systems Alabama Corp.'s case brief (May 1, 2023) (Hanon Admin. Case Br.) (P.R. 210, C.R. 94). On July 19, 2023, Commerce also held a public hearing after receiving requests from interested parties.

## IV.    Final Affirmative Determination of Circumvention

On November 27, 2023, Commerce published its *Final Determination*. Commerce made no significant changes to its *Preliminary Determination* and continued to find that U.S. imports

9

of aluminum foil completed or assembled in Korea using aluminum foil or sheet manufactured in China are circumventing the *Aluminum Foil Orders* on a country-wide basis.  *See generally Final Determination*.  (P.R. 265).

In response to comments received by interested parties, Commerce first explained that, for purposes of evaluating whether the process of assembly or completion in Korea was minor or insignificant, Commerce continued to "apply a comparative methodology, but one which takes a 'totality of the circumstances' and 'case-specific' approach."  Final Issue and Decision Memorandum (IDM) at 11. (P.R. 263).  Commerce explained that this methodology is consistent with its agency practice, court precedent, as well as legislative intent laid out in the Statement of Administrative Action accompanying the Uruguay Rounds Agreement Act.  *Id.* at 10-11 (citing *Preliminary Negative Determination and Extension of Time Limit for Final Determination of Circumvention of the Antidumping Duty Order on Ferrovanadium and Nitrided Vanadium from the Russian Federation*, 77 Fed. Reg. 6,537 (Dep't of Commerce Feb. 8, 2012) (*Ferrovanadium from Russia Prelim*); *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023); SAA, H.R. Doc. 103-316, Vol. I (1994) at 894).  Commerce further emphasized that any circumvention inquiry determination is necessarily highly case-specific and predicated on the specific set of facts, circumstances, and available data.  *Id.* at 11.

Commerce evaluated party comments with respect to the five factors under 19 U.S.C. § 1677j(b)(2).  With respect to level of investment, Commerce continued to find in the *Final Determination* that "although investment in both companies' aluminum foil production may be less than the amount of investment in a newer, integrated aluminum production facility, they had made substantial and long-term investments in Korea and had employed a significant number of workers," weighing against a finding that the process of assembly or completion is minor or

10

insignificant.  IDM at 14.  For the level of R&D, Commerce also continued to find that the level of Dong-IL's and Lotte's R&D activity in Korea weighed against finding that the process of assembly or completion in Korea is minor or insignificant.  IDM at 17.  And evaluating the extent of production facilities in Korea, consistent with its *Preliminary Determination*, Commerce found that this factor did not weigh in favor of finding that the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 26.

However, in its analysis of the nature of the production process, Commerce continued to find that both companies' overall production process in Korea is less significant than the production process for the aluminum strip input itself, weighing in favor of finding that the process of assembly or completion in Korea is minor or insignificant.  IDM at 23-25.  Commerce emphasized that, although it considered party arguments concerning the more involved processing of ultra-thin aluminum foil, Commerce found that ultra-thin aluminum foil is only a subset of what was produced by the respondents.  *Id.* at 23-24.  Further, Commerce found that aluminum foil production in Korea did not result in any substantial change in chemical properties of the aluminum foil.  *Id.* at 24.

Further, in evaluating whether the value of the processing performed in Korea represented a small proportion of the value of the merchandise imported into the United States, Commerce continued to find that it was a small proportion, thus weighing in favor of finding the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 30.  As Commerce explained, to evaluate this factor, Commerce summed the per-unit costs incurred in Korea by Dong-IL and Lotte for non-Chinese material inputs used during the Korean processing of inquiry merchandise, labor, fixed and variable overhead, selling, general, and administrative items, and interest, and divided the sum by the per-unit weighted-average value of their U.S. sales of

11

inquiry merchandise during the inquiry period.  *Id.*  Commerce thus continued to find in the *Final Determination* that the process of assembly or completion in Korea is minor or insignificant.  *Id.* at 30-32.

For purposes of 19 U.S.C. § 1677j(b)(1)(D), Commerce also continued to find that the value of the merchandise produced in China that was used by Dong-IL and Lotte to produce inquiry merchandise was a significant portion of the total value of the merchandise exported to the United States.  *Id.* at 34.  To determine the portion of the value of exported inquiry merchandise represented by the inputs produced in China that were used to produce the merchandise, for each respondent, Commerce summed the per-unit value of each Chinese part and component and divided the sum by the per-unit value of the respondent's U.S. sales of inquiry merchandise during the inquiry period.  *Id.* at 35.  Because China is a non-market economy country, consistent with Commerce practice, Commerce valued the parts and components produced in China using surrogate values from an economically comparable market-economy, which in this case was Bulgaria.  *Id.*

With respect to the evaluation of trade patterns under 19 U.S.C. 1677j(b)(3)(A), especially after the initiation of the investigation which resulted in the issuance of the *Aluminum Foil Orders*, Commerce continued to find that the record information supported its affirmative circumvention determination.  *Id.* at 46.  As in the *Preliminary Determination*, Commerce found that the value of U.S. imports of aluminum foil from Korea increased substantially from the pre-initiation period (July 2012, through March 2017) to the post-initiation period (April 2017, through December 2021).  *Id.*  When comparing the pre-initiation period (July 2012, to March 2017) to the post-initiation period (April 2017 to December 2021), Commerce found that U.S. imports of aluminum foil from China decreased substantially.  *Id.*  Commerce thus reasonably

concluded that this pattern of trade indicated a noticeable shift in exports of aluminum foil to the United States from China to Korea. Commerce rejected the respondents argument that growing global demand accounted for the increased imports of aluminum foil from Korea because that argument was not supported by the respondents own reporting, and further that, even with a demand increase, that increase could not account for the dramatic rate of increase of imports observed. *Id.* at 47.

Ultimately for purposes of the *Final Determination*, Commerce continued to find that, while some statutory factors weighed against an affirmative determination, collectively, the statutory factors under 19 U.S.C. § 1677j(b)(1)(A)-(E), and taking into consideration the relevant factors under 19 U.S.C. § 1677j(b)(2) and (3), supported an affirmative country-wide circumvention determination such that Korean imports of aluminum foil should be subject to the *Aluminum Foil Orders*.

## SUMMARY OF THE ARGUMENT

Commerce's determinations are each supported by substantial evidence and otherwise in accordance with law. Commerce properly evaluated whether Dong-IL's and Lotte's process of assembly or competition of aluminum foil in Korea using Chinese-origin inputs is minor or insignificant consistent with the statute. In conducting its evaluation, Commerce provided reasoned explanation supporting why it found that the statutory criteria under 19 U.S.C. § 1677j(b)(1)(A)-(E) were satisfied in this circumvention inquiry, as well as reasoned explanation for each of its findings with respect to whether the process of assembly or competition is minor or insignificant under 19 U.S.C. § 1677j(b)(2)(A)-(E). Commerce reasonably explained how it weighted each of the relevant factors for determining whether the process was minor or insignificant, leading to its conclusion that 19 U.S.C. § 1677j(b)(1)(C) had been satisfied. Finally, Commerce's evaluation of trade patterns under 19 U.S.C.

13

§ 1677j(b)(3)(A) and its conclusion that they weigh in favor of making an affirmative

circumvention determination are likewise supported by substantial evidence.

Hanon's arguments to the contrary improperly invites this Court to reweigh factual

evidence, an invitation this Cour should reject.  Even if there is the possibility of drawing

different conclusions from the record, those differing conclusions do not render Commerce's

findings unsupported by substantial evidence.  Accordingly, Hanon's arguments should be

rejected, and Commerce's final determination should be sustained.

## ARGUMENT

### I.    Standard of Review

Commerce's determinations shall be sustained if "supported 'by substantial evidence on

the record' and otherwise 'in accordance with law.'"  *Meridian Prods., LLC v. United States*, 851

F.3d 1375, 1381 (Fed. Cir. 2017) (citing 19 U.S.C. § 1516a(b)(1)(B)).  Substantial evidence

consists of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence

may be "less than the weight of the evidence, and the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

"{T}he antidumping statute reveals tremendous deference to the expertise of the

Secretary of Commerce in administering the antidumping law."  *Fujitsu Gen. Ltd. v. United

States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (internal citations omitted).  "Antidumping and

countervailing duty determinations involve complex accounting decisions of a technical nature,

for which agencies possess far greater expertise than courts."  *Id.* (internal citations omitted).

"This deference is both greater than and distinct from that accorded the agency in interpreting the

14

statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statute itself where ambiguous." *Id.*

Importantly, "Commerce is not bound by its prior determinations," *Al Ghurair*, 65 F.4th at 1360, and "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021).

Furthermore, "The court may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F.Supp.2d 1323, 1326 (Ct. Int'l Trade 2006) (internal citations omitted).  Likewise, the Court may not "reweigh the evidence or substitute its own judgment for that of the agency{.}" *Usinor v. United States*, 342 F.Supp.2d 1267, 1272 (Ct. Int'l Trade 2004).

When the statute uses terms that are general but not ambiguous, Commerce has "considerable discretion in determining whether particular facts meet that standard" and that "Congress delegated the task of making that determination to Commerce, based on the circumstances of each case," indicates "implied delegation of adjudicative authority to the agency." *See Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1260-61 (Fed. Cir. 2024) (finding that such conclusions are independent and distinct from the now overruled *Chevron*-doctrine) (*Asemesa*).

## II.    Commerce's Application of the Statute Under 19 U.S.C. § 1677j(b)(1)(C) and Its Analysis of Record Information is in Accordance with Law

Commerce properly evaluated whether Dong-IL and Lotte's process of assembly or completion in Korea is minor or insignificant consistent with the statutory requirements under 19

U.S.C. § 1677j(b)(1)(C).  In making such an evaluation, the statute directs Commerce to take into account criteria under subsection (b)(2)(C), which Commerce did.  It conducted a thorough examination of each of those criteria and determined that, taken together, the criteria supported a determination that the process was minor or insignificant.  Commerce followed the statutory rubric to the letter.  Despite this, Hanon argues that Commerce's evaluation of "minor or insignificant" is contrary to the plain meaning of the statutory language.  Hanon Br. at 15-16.  But Hanon's argument to this point is, at its core, an argument that Commerce improperly weighed record evidence.  *Id.*  Indeed, Hanon begins its argument by stating that "the administrative record demonstrates that the processing performed in Korea is not minor nor insignificant."  *Id.* at 15.

Relying on dictionary definitions of the terms, Hanon contends that, based upon the plain language of the statute, "minor or insignificant" processing in a third country can apply only when the third-country processing is "immaterial or unimportant."  *Id.*  However, Hanon's argument amounts to little more than a dispute that Commerce improperly found that record evidence demonstrated the production process was minor or insignificant within the meaning of the statute.  Regardless of how Hanon interprets "minor or insignificant," Commerce met its statutory obligation in making its determination by carefully following the rubric provided for in 19 U.S.C. § 1677j(b)(2)(A)-(E).

The U.S. Court of Appeals for the Federal Circuit has concluded recently that when the statute provides general language, such as "minor or insignificant," Commerce has "considerable discretion in determining *whether particular facts meet that standard*" and that "Congress delegated the task of making that determination to Commerce, based on the circumstances of each case."  *Asemesa*, 102 F.4th at 1260-61 (evaluating Commerce's application of facts to the

16

statutory language "substantially dependent") (emphasis added).  In this case, Commerce evaluated whether the particular facts of this circumvention inquiry met the statutory standard for what is minor and insignificant.  Courts have affirmed Commerce's comparative methodology like the one used in this case in evaluating this statutory element.  *See e.g.*, *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) (*Al Ghurair I*) (sustaining Commerce's use of a comparative methodology in evaluating the level of investment of a third-country producer), *aff'd,* 65 F.4th 1351, 1359-61 (Fed. Cir. 2023) (*Al Ghurair II*).

Hanon further argues that the plain meaning of the statute and that the use of the term "screwdriver operation" in the SAA required Commerce to find that the production process was not minor or insignificant.  Hanon Br. at 16.  However, Hanon's interpretation of the statute is misguided because the statute clearly elucidates the factors that Commerce is required to consider in making its evaluation, and the SAA directs Commerce how to consider those factors. The mere fact that the SAA uses the term "screwdriver operation" does not limit the statutory definition of "minor or insignificant" to considering only pass-through or sham transshipment operations.  *See, e.g.*, *HLDS (B) Steel Sdn Bdh v. United States*, 2024 WL244937 at *4 n.7 ("the SAA's reference to "screwdriver assembly operations" plainly alludes to production operations in a third country that are 'minor or insignificant.'" (citing 19 U.S.C. § 1677j(b)(1)(C))). Commerce's role is to evaluate whether the respondents' production of aluminum foil is "minor or insignificant" given the criteria established in 19 U.S.C. § 1677j(b)(2), and not if the production facilities in Korea qualify as "screwdriver operations."  *Id.* at *4.  Indeed, Hanon's misguided attempt to limit the circumvention provisions to "screwdriver operations" runs contrary to the very reason Congress enacted these provisions.  Congress enacted the new anticircumvention provisions to broaden the scope of available remedies because Commerce

17

"encountered new circumvention scenarios that revealed serious shortcomings in the 1988 Act."
SAA at 892. Commerce dutifully fulfilled its role by gathering facts and applying it to the
criteria in 19 U.S.C. § 1677j(b)(2).

Hanon concludes it argument by positing that "{a} narrow application is proper,
especially given the extraordinary action of an anticircumvention proceeding, which brings
nonsubject merchandise under the scope of an order." Hanon Br. at 16. In advancing this
argument, Hanon fails to support its claim with any citation and therefore fails to establish that
Commerce's application of facts to the statute establishing the circumvention inquiry process
was unlawful. Accordingly, this Court should conclude that Commerce's application of the
statute under 19 U.S.C. § 1677j(b)(2)(C) and its analysis of record information is in accordance
with law.

### III. Commerce's Finding that the Nature of Production Factor Under 19 U.S.C. § 1677j(b)(2)(C) Weighs in Favor of Finding the Process of Assembly or Completion is Minor or Insignificant is Supported by Substantial Evidence

Contrary to Hanon's claim, Commerce provided a robust analysis evaluating whether the
nature of the production process in Korea weighed in favor of finding that the process of
assembly or completion is minor or insignificant. IDM at 23-25. Such analyses are inherently
case and fact specific, and once again Hanon's arguments challenging Commerce's conclusion
amount to nothing more than requests that this Court reweigh record evidence. Hanon Br. at 17
("Commerce's nature of production analysis is fundamentally flawed because Commerce failed
to *accurately weigh* and consider the importance of Korean operations and their transformative
impact on the final end product." (emphasis added)). However, simply because a party or the
reviewing court would have reached a different conclusion based on the same record does not

18

mean that Commerce's determination is unsupported by substantial evidence. *See Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007); *see also Goldlink*, 431 F.Supp.2d at 1326.

First, Hanon misunderstands Commerce's conclusions with respect to changes in physical properties, claiming that "Commerce claims that there is no 'physical' or substantial transformation as there is no change to the chemical properties." Hanon Br. at 18. This is not what Commerce said. Commerce stated, "{w}ith regard to physical properties (and, though barely mentioned here, mechanical properties), the operations of the respondents *do change* the properties of the input." IDM at 24 (emphasis added). However, Commerce found that such changes in the product do not amount to a "substantial transformation," or that those changes weighed *in favor* of finding that the processing in Korea was not minor or insignificant. *Id.* Commerce did not claim that there is no physical transformation because there was no change to the chemical properties; Commerce stated that, although there was physical transformation, that transformation was not substantial enough to conclude that the nature of the production process was significant. *Id.*

Separate from its analysis of the physical transformation, Commerce further concluded that the production process in Korea did not include any change at all to the chemical properties of the Chinese-origin inputs. *Id.* Accordingly, Commerce properly rejected Hanon's claims that there is a complete transformation of the physical and chemical properties of the product. *Id.* Commerce also compared its conclusion to the *Ferrovanadium from Russia Preliminary Negative Determination*. In that case, the production process at issue actually involved a change to the chemical properties of the input in question; in this case, that did not occur. *Id.* at n.111 (citing *Ferrovanadium from Russia Prelim*).

19

Hanon argues that neither the circumvention statute nor Commerce's regulations require a chemical change for a product to be substantially transformed and therefore Commerce has introduced an unlawful standard.  Hanon Br. at 18.  However, as Commerce explained, it considered *both* the physical and chemical changes, as well as other relevant evidence in its analysis of the nature of the production process in Korea.  IDM at 23-25.  Contrary to Hanon's argument, nothing prevents Commerce from considering whether the production process results in chemical changes.  Indeed, the statute provides only that Commerce take into account "the nature of the production process in the foreign country," indicating that Commerce has considerable discretion to evaluate whether certain record evidence supports or detracts from a finding that the nature of the production process weighs in favor of a finding that the production process in Korea is minor or insignificant.  *See Asemesa*, 102 F.4th at 1260-61.

Hanon contends that "{i}t is nonsensical that a product cannot be substantially transformed simply because the chemical alloy composition in the raw material input is the same as that with the finished product."  Hanon Br. at 19.  But this is merely a straw man: Commerce did not make this *per se* finding or establish a *per se* test.  Instead, Commerce considered the chemical properties *and also* record information about the change in physical properties and concluded that the change in physical properties (specifically the rolling of the aluminum input to a thinner gauge) was not substantial *enough* to find that the nature of the production process weighed in favor of finding the production process is not minor or insignificant.  IDM at 24.

After contending that Commerce applied an unlawful *per se* test, Hanon goes on to argue that Commerce should instead apply a different *per se* test of which Hanon approves:  that the nature of a production process must be substantial when the process is necessary to make the product suitable for its use and resulted in a different and significantly new product.  Hanon Br.

at 19-20.  Hanon misguidedly relies on the *Ferrovanadium from Russia Final Determination* to highlight this alleged inconsistency in Commerce's practice and to advocate for the "test" used in that case.  *Id.* (citing *Ferrovanadium and Nitrided Vanadium from the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg. 46,712 (Aug. 6, 2012) (*Ferrovanadium from Russia Final*), and accompanying Issues and Decision Memorandum (July 30, 2012) at 9.

In relying on the *Ferrovanadium from Russia Final*, Hanon ignores that Commerce's circumvention inquiries are inherently fact and record specific, that Commerce evaluates the totality of circumstances of each case, and that comparing how Commerce weighed certain facts in one case to another is not controlling.  Even if the *Ferrovandium from Russia Final* was controlling, which it is not, Commerce made clear that, within the context of that case, "{t}he nature of this process is significant enough to result in the complete chemical and physical transformation of one material, vanadium pentoxide, into another material with a completely different physical and chemical structure, ferrovanadium."  *Ferrovanadium from Russia Final* IDM at 8.  That is plainly not comparable to the facts of this inquiry, and therefore Commerce has not acted inconsistently with *Ferrovandium from Russia Final* such that Commerce's conclusion here is arbitrary or inconsistent with past practice.

For these reasons, Commerce's determination that the nature of the production process in Korea weighs in favor of concluding that the process of assembly or completion in Korea is minor or insignificant is supported by substantial evidence.  Hanon's arguments to the contrary impermissibly ask this Court to reweigh record evidence and therefore should be disregarded.

**IV.    Commerce's Determination Under 19 U.S.C. § 1677j(b)(2)(E) that the Value of the Processing Performed in Korea Represents a Small Proportion of the Value of the Merchandise Imported into the United States is Supported by Substantial Evidence**

As with the other criteria, Commerce's determination that the value of the processing performed in Korea represents a small proportion of the value of the merchandise imported into the United States is also supported by substantial evidence.  To evaluate this factor, Commerce summed the per-unit costs incurred in Korea by Dong-IL and Lotte for non-Chinese material inputs used during the Korean processing of inquiry merchandise—labor; fixed and variable overhead; selling, general, and administrative items; and interest, and divided the sum by the per-unit weighted-average value of their U.S. sales of inquiry merchandise during the inquiry period. *Id.*  Commerce calculated that the value of processing performed by Dong-IL in Korea is [      ] percent of the value of the inquiry merchandise imported into the United States.  *See* Preliminary Analysis Memorandum for Dong-IL at 4 (P.R. 182; C.R. 89).  For Lotte, Commerce calculated that the value of processing performed in Korea is [      ] percent of the value of the inquiry merchandise imported into the United States.  *See* Preliminary Analysis Memorandum for Lotte at 4 (P.R. 184; C.R. 91).  In what amounts to a difference of opinion, Hanon contends that these values are significant, and further that Commerce improperly conducted only a quantitative analysis.  Hanon Br. at 21-25.[2]  But Commerce's analysis was appropriate, and its conclusion

---

[2] Hanon also states in this section of their brief, "{i}n the *Final Determination*, Commerce found that the value of the merchandise produced in China that was used by mandatory respondents (*i.e.*, Dong-IL and Lotte) to produce inquiry merchandise is a significant portion of the total value of the merchandise exported to the United States."  Hanon Brief at 20 (citing IDM at 34).  Hanon appears to have confused the relevant statutory provisions.  Whether the Chinese-input is a significant portion of the total value of the merchandise exported to the United States is the test under 19 U.S.C. § 1677j(b)(1)(D), which is the statutory provision Commerce was evaluating in the section of the IDM that Hanon cites.  However, Hanon's argument is that Commerce misapplied 19 U.S.C. § 1677j(b)(2)(E), which is a separate statutory analysis that Commerce performed at pages 30-32 of the IDM.

that the values were not significant *enough* to change the evasion determination is supported by substantial evidence.

With respect to Hanon's arguments that the values Commerce calculated should instead be found to be significant, Hanon argues simply that, if it were Commerce, it would have found the values to be significant. But that argument again inappropriately asks this Court to reweigh and to reconsider factual evidence. Hanon Br. at 21-22.[3] Hanon avers that Commerce found these percentages of value as "lacking meaning or importance." *Id.* This is a mischaracterization. Commerce did not find that those values lacked meaning or were not important in the overall evaluation of the case. Commerce found that, even with those values known, Commerce applied the statutory framework to conclude that the values indicated a small proportion of the value of the imported merchandise. IDM at 30. That Hanon would have this Court conclude differently does not mean that Commerce was unreasonable when considering the values in question.

To advance its argument about inconsistent practice from Commerce, Hanon returns to the *Ferrovanadium from Russia* case. Hanon Br. at 21 (citing *Ferrovanadium from Russia Prelim*, 77 Fed. Reg. at 6,539). However, in the *Ferrovanadium from Russia Prelim*, Commerce made clear, "{i}n calculating these percentages, we note that {Commerce} *has not* established specific value-added percentages that would signal the significance of value added. Rather, the Department examines the totality of the circumstances in light of the statutory criteria on a case-

---

[3] Hanon also states, "{m}oreover, as the Korean Producers explained, Commerce improperly calculated value because it failed to use a U.S. price net of movement expenses." Hanon Br. at 21. However, Hanon does not make any arguments for the Court to consider with respect to a U.S. price net of movement expenses beyond stating that other parties advanced such an argument at the administrative stage. Commerce addressed those arguments in the *Final Determination*. IDM at 30-31.

by-case basis." 77 Fed. Reg. at 6,541 (emphasis added).  Commerce signaled that there is no

universal value-added quantitative threshold across all types of inquiries involving all products,

and that Commerce conducts its analyses on a case-by-case basis.  Indeed, in the *Ferrovanadium*

*from Russia Prelim*, Commerce compares other administrative decisions in which it found *higher*

percentages of value added to be indicative that the value added is a small proportion.  *Id.*

Accordingly, Hanon's reference to the *Ferrovanadium from Russia Prelim* fails to establish that

Commerce has acted inconsistently with its practice, and instead, support that Commerce has

consistently applied a case-by-case analysis evaluating relevant factual information in each

proceeding.

     Hanon also argues that Commerce erred by conducting only a quantitative analysis in

evaluating this specific factor.  Hanon Br. at 22-25.  Citing legislative history, Hanon argues that

Congress intended for Commerce to apply "a more qualitative focus on the nature of the

production process{.}"  Hanon Br. at 23 (citing SAA at 893) (quotations omitted).  Commerce,

however, did not conduct a purely quantitative analysis. Commerce took into account the

relevant production process and the specific product at issue when determining whether the

percentage values represented a small proportion.  IDM at 31.

     Even if Commerce's analysis could be characterized as quantitative in nature, the

qualitative "nature of the production process" is already a facet of Commerce's minor or

insignificant determination, as provided by 19 U.S.C. § 1677j(b)(2)(C).  It would be somewhat

duplicative for Commerce to evaluate the nature of the production process pursuant to Section

1677j(b)(2)(C) and then simply reevaluate the nature of the production process under Section

1677j(b)(2)(E).  Moreover, this Court has previously sustained Commerce's value-added

methodology:

> Because {19 U.S.C. § 1677(b)} does not mandate the use of a particular formula, Commerce has the ability to choose how to calculate the value-added percentages as long as its chosen methodology is reasonable and Commerce explains its choice. Commerce is required neither to use a party's proffered and preferred methodology, nor to provide an explanation for a decision not to use an alternative methodology offered by a party.

*Al Ghurair I*, 536 F.Supp.3d at 1374. Therefore, even if the methodology advocated for by Hanon were permissible, absent a clear statutory directive, Commerce is accorded deference in choosing an appropriate methodology. *Id.*

Lastly, Hanon argues that because CBP has determined that aluminum foil imported from China into a third country may be exported from that third country with a new country of origin, Commerce is compelled to consider this qualitative information and accordingly find that the value added is a small proportion. Hanon Br. at 24. Commerce squarely addressed these arguments concluding that, "We are not persuaded that the changes in the product amount to a "substantial transformation;" our substantial transformation test differs from, and is in some manners more rigorous than, that of CBP's country of origin test." IDM at 31 (citing *Wirth Ltd. v. United States*, 5 F. Supp. 2d 968, 973 (Ct. Int'l Trade 1998) (Although "{Commerce} may consider the decisions of Customs, it is not obligated to follow, nor is it bound by, the classification determinations of Customs. . . ."). Hanon does not address this precedent or otherwise explain why Commerce must be bound by CBP's determinations or why it was unreasonable for Commerce to decline to do so.

## V.    Commerce Reasonably Weighed the Five Factors Under 19 U.S.C. § 1677j(b)(2)

In determining that the process of assembly or completion in Korea is minor or insignificant under 19 U.S.C. § 1677j(b)(1)(C), Commerce explained that the factors involving the level of investment, the level of R&D, and the extent of the production facilities in Korea weighed less heavily in its determination than the factors involving the nature of the production

process and the value added in Korea because the former relate more broadly to the companies and their facilities, whereas the latter relate more to the production of the inquiry merchandise. IDM at 32. Therefore, based on a totality of the circumstances, Commerce reasonably found that the process of assembly or completion in Korea is minor or insignificant for Dong-IL and Lotte. *Id.*

Hanon argues that Commerce unlawfully and unreasonably relied on only two of the five factors in its analysis, rendering the other three factors "meaningless". Hanon Br. at 26. However, as Hanon recognizes, Congress explained that "Commerce will evaluate each of these factors as they exist either in the United States or a third country" and further indicated that "{n}o single factor will be controlling." SAA at 893. Commerce provided a reasoned explanation why it decided to weigh each factor as it did. And despite Hanon's contentions to the contrary, Commerce did not determine that certain factors were meaningless or decline to evaluate them.

Hanon says that Commerce's elevation of certain factors above others is not supported by the statute, but both the statutory language and the SAA make clear that Commerce is not required to conclude that all or even a majority of factors weigh in favor of finding that the process of assembly or completion in Korea is minor or insignificant. Hanon Br. at 26. Hanon's arguments do not find support in the law, and do not undermine Commerce's reasoned weighing of record information in reaching its conclusion under 19 U.S.C. § 1677j(b)(1)(C).

## VI. Commerce's Pattern of Trade Analysis Under 19 U.S.C. § 1677j(b)(3)(A) is Supported by Substantial Evidence

Commerce reasonably concluded that its pattern of trade analysis supported a finding of circumvention under 19 U.S.C. § 1677j(b)(3). As discussed at length above, Commerce analyzed patterns of trade by comparing publicly available U.S. import statistics for imports of

aluminum foil from periods before and after 2017. And based on U.S. import data, the value of U.S. imports of aluminum foil from Korea increased substantially from the pre-initiation period to the post-initiation period, at a rate of 973.7 percent. PDM at 16. Further, for the same periods U.S. imports of aluminum foil from China decreased in value by 66.2 percent. *Id.* at 16-17. These numbers comparing the pre-initiation period with the post-initiation period plainly demonstrate that Commerce was reasonable in concluding that patterns of trade supported its circumvention determination.

In an attempt to blunt the stark picture painted by the import data, Hanon contends that "{w}hile the record does demonstrate an increase in imports, there is no record evidence that in any way demonstrates that these increases are related to any attempts to circumvent the Orders." Hanon Br. at 27. Hanon thus contends that for Commerce to permissibly have trade patterns inform its circumvention analysis it must affirmatively demonstrate that Korean companies in general and respondents intended to circumvent the *Aluminum Foil Orders*. Such an argument finds no basis in the statute or legislative history; Commerce is not required by the statute to prove intent. Rather, 19 U.S.C. § 1677j(b)(1)(E) provides that, before issuing an affirmative circumvention determination, Commerce should "determine{} that action is appropriate…to prevent evasion" of the relevant AD/CVD orders at issue. Nowhere does the statute indicate that evasion must be intentional, or that a respondent in the third country must have the intent to evade duties.

Hanon cites to a case involving a very fact-specific issue involving a changed circumstances review (a wholly separate administrative proceeding conducted under a different statutory provision) to support its otherwise unsupported argument that Commerce must demonstrate intent to evade the *Aluminum Foil Orders*. Hanon Br. at 29 (citing *Inmax SDN v.*

27

*United States,* 277 F.Supp.3d 1367, 1372-73 (Ct. Int'l Trade 2017). Even ignoring that this case involves a separate type of administrative proceeding governed by different statutes and regulations, within the context of a circumvention inquiry, Commerce's practice is to consider general trade patterns between countries that may indicate circumvention, and not just company-specific trade patterns. To require that Commerce demonstrate intent for the Korean market at large or else ignore clear evidence of possible circumvention is both unsupported by the statute and impractical for effectuating the intent of the statute in the first place. Accordingly, the Court should find that Commerce's determination that trade patterns support its affirmative circumvention determination is supported by substantial evidence and in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's final affirmative determination of circumvention and deny Hanon's motion for judgment on the agency record.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

28

OF COUNSEL:                               /s/Christopher A. Berridge
JONZACHARY FORBES                         CHRISTOPHER BERRIDGE
Attorney                                  Trial Attorney
Department of Commerce                    U.S. Department of Justice
Office of the Chief Counsel               Civil Division
for Enforcement and Compliance            Commercial Litigation Branch
U.S. Department of Commerce               P.O. Box 480, Ben Franklin Station
                                          Washington, D.C. 20044
                                          (202) 353-0537
                                          Email: Christopher.Berridge@usdoj.gov

October 8, 2024                           *Attorneys for Defendant*

29

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the

Court's scheduling order in that it contains 8,132 words, including text, footnotes, and headings.


<u>/s/Christopher A. Berridge</u>