NONCONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

_____

|  |  |
|---|---|
| HANON SYSTEMS ALABAMA CORP. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) Court No. 24-00013 |
| | ) |
| and | ) |
| | ) |
| ALUMINUM ASSOCIATION TRADE | ) |
| ENFORCEMENT WORKING GROUP AND ITS | ) |
| INDIVIDUAL MEMBERS, ET AL., | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

_____

**DEFENDANT INTERVENORS' RESPONSE BRIEF IN OPPOSITION TO
PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

JOHN M. HERRMANN
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP

Counsel to the Aluminum Association Trade
Enforcement Working Group and Its
Individual Members, et al.

October 8, 2024

NONCONFIDENTIAL

**Table of Contents**

**Page**

THE ADMINISTRATIVE DETERMINATION UNDER REVIEW ............................................1

ISSUES PRESENTED AND SUMMARY OF ARGUMENT ....................................................2

STANDARD OF REVIEW ....................................................................................................5

STATEMENT OF FACTS ....................................................................................................6

ARGUMENT ....................................................................................................................11

I.      THE DEPARTMENT LAWFULLY APPLIED THE "MINOR OR
        INSIGNIFICANT" STATUTORY FACTORS, CONSISTENT WITH
        THE PLAIN LANGUAGE OF THE STATUTE ...............................................11

II.     COMMERCE LAWFULLY DETERMINED THAT THE NATURE OF
        THE PRODUCTION PROCESS IN KOREA IS LESS SIGNIFICANT
        THAN THE NATURE OF THE PRODUCTION PROCESS OF
        CHINESE MANUFACTURED ALUMINUM STRIP ......................................13

        A.      The Court Should Reject Hanon's Request to Reweigh Record
                Evidence...............................................................................................13

        B.      The Department's Determination Is Consistent with Its Established
                Practice.................................................................................................17

III.    COMMERCE'S ANALYSIS OF THE VALUE OF THE PROCESSING
        PERFORMED IN KOREA IS LAWFUL ..........................................................21

IV.     THE DEPARTMENT'S WEIGHING OF THE FIVE "MINOR OR
        INSIGNIFICANT" FACTORS IS IN ACCORDANCE WITH LAW..............................27

V.      COMMERCE'S ANALYSIS OF THE "PATTERNS OF TRADE" AND
        IMPORT TRENDS IS IN ACCORDANCE WITH LAW ................................28

VI.     CONCLUSION.......................................................................................................34

## TABLE OF AUTHORITIES

Page(s)

### Cases

Akzo N.V. v. United States Int'l Trade Comm'n,
    808 F.2d 1471 (Fed. Cir. 1986)...........................................................................6, 14

Al Ghurair Iron & Steel LLC v. United States,
    536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021), aff'd, 65 F.4th 1351 (Fed. Cir.
    2023) ............................................................................................................... passim

Consolidated Edison Co. v. NLRB,
    305 U.S. 197 (1938)..........................................................................................6, 14

Consolo v. Fed. Mar. Comm'n,
    383 U.S. 607 (1966).............................................................................................14

HLDS B. Steel SDN Bhd. v. United States,
    Slip Op. 24-6, 2024 Ct. Int'l Trade LEXIS 6 (Jan. 23, 2024)..........................15, 33

Inmax SDN v. United States,
    277 F. Supp. 3d 1367 (Ct. Int'l Trade 2017) ..................................................4, 5, 32

Kearns v. Chrysler Corp.,
    32 F.3d 1541 (Fed. Cir. 1994)...........................................................................6, 14

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,
    463 U.S. 29 (1983)...................................................................................................5

Nippon Steel Corp. v. United States,
    458 F.3d 1345 (Fed. Cir. 2006)........................................................................5, 27

NMB Singapore Ltd. v. United States,
    557 F.3d 1316 (Fed. Cir. 2009)........................................................................4, 33

Tianjin Wanhua Co. v. United States,
    179 F. Supp. 3d 1062 (Ct. Int'l Trade 2016) ......................................................14

U.K. Carbon & Graphite Co. v. United States,
    931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013) .............................................12, 25, 28

Universal Camera Corp. v. NLRB,
    340 U.S. 474 (1951).........................................................................................5, 27

Valeo N. America, Inc. v. United States,
    404 F. Supp. 3d 1303 (Ct. Int'l Trade 2019) .......................................................32

Yeda Research & Dev. Co. v. Mylan Pharms. Inc.,
    906 F.3d 1031 (Fed. Cir. 2018)............................................................33

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..............................................................5

19 U.S.C. § 1675..............................................................................32

19 U.S.C. § 1677j(b)..................................................................30, 32, 34

19 U.S.C. § 1677j(b)(2).............................................................*passim*

19 U.S.C. § 1677j(b)(2)(C)............................................................13, 14

19 U.S.C. § 1677j(b)(2)(E)................................................................21

19 U.S.C. § 1677j(b)(3)...................................................................29

19 U.S.C. § 3511(a)(2)....................................................................12

**Legislative Authorities**

Statement of Administrative Action Accompanying the Uruguay Round
    Agreements Act, H.R. Doc. No. 103- 316, Vol. I (1994) ("SAA").........................12

S. Rep. 100-71...............................................................................33

**Administrative Determinations**

Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From
    the People's Republic of China: Final Affirmative Determinations of
    Circumvention With Respect to the Republic of Korea and the Kingdom of
    Thailand, 88 Fed. Reg. 82,824 (Dep't Commerce Nov. 27, 2023) ("Final
    Determination") ........................................................................1, 10

Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From
    the People's Republic of China: Preliminary Affirmative Determination of
    Circumvention With Respect to the Republic of Korea and the Kingdom of
    Thailand, 88 Fed. Reg. 17,177 (Dep't Commerce Mar. 22, 2023)
    ("Preliminary Determination") .........................................................8

Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic
    Cells, Whether or Not Assembled Into Modules, from the People's Republic
    of China: Issues and Decision Memorandum for the Circumvention Inquiry
    With Respect to the Kingdom of Thailand (Aug. 17, 2023), ref'd in 88 Fed.
    Reg. 57,419 (Dep't Commerce Aug. 23, 2023).........................................23

Antidumping Duty and Countervailing Duty Orders on Aluminum Wire and
    Cable from the People's Republic of China: Preliminary Decision
    Memorandum for the Scope Inquiry and Preliminary Decision Memorandum
    for the Circumvention Inquiry with Respect to the Republic of Korea (July 31,
    2024) ................................................................................................................ 24-25

Antidumping Duty and Countervailing Duty Orders on Aluminum Wire and
    Cable from the People's Republic of China: Preliminary Decision
    Memorandum for the Scope Inquiry and Preliminary Decision Memorandum
    for the Circumvention Inquiry with Respect to the Socialist Republic of
    Vietnam (July 31, 2024) .......................................................................................... 25

Certain Aluminum Foil From the People's Republic of China:
    Amended Final Affirmative Countervailing Duty Determination and
    Countervailing Duty Order, 83 Fed. Reg. 17,360 (Dep't Commerce Apr. 19,
    2018) ............................................................................................................................ 6

Certain Aluminum Foil From the People's Republic of China:
    Amended Final Determination of Sales at Less Than Fair Value and
    Antidumping Duty Order, 83 Fed. Reg. 17,362 (Dep't Commerce Apr. 19,
    2018) ............................................................................................................................ 6

Certain Aluminum Foil From the People's Republic of China:
    Initiation of Circumvention Inquiries of the Antidumping Duty and
    Countervailing Duty Orders, 87 Fed. Reg. 42,702 (Dep't Commerce July 18,
    2022) ("Initiation Notice") ................................................................................... 6, 7

Certain Cold-Rolled Steel Flat Products from the Republic of Korea:
    Affirmative Final Determinations of Circumvention of the Antidumping Duty
    and Countervailing Duty Orders, 84 Fed. Reg. 70,934 (Dep't Commerce Dec.
    26, 2019) ("Korea CRS Final Determination"), accompanying Issues and
    Decision Memorandum (Dec. 13, 2019) ("Korea CRS IDM"), aff'd,
    Ferrostaal Metals GmbH v. United States, 518 F. Supp. 3d 1357, 1375-76 (Ct.
    Int'l Trade 2021) ...................................................................................................... 31

Certain Corrosion-Resistant Steel Products From the People's Republic of China:
    Affirmative Preliminary Determination of Circumvention Involving the
    United Arab Emirates, 85 Fed. Reg. 8,841 (Dep't Commerce Feb. 18, 2020),
    and accompanying Preliminary Decision Memorandum (Feb. 7, 2020),
    unchanged in 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) and
    accompanying Issues and Decision Memorandum (July 6, 2020) ("Al Ghurair
    IDM"), aff'd, Al Ghurair, 536 F. Supp. 3d 1357, aff'd, 65 F.4th 1351 (Fed.
    Cir. 2023). ........................................................................................................ 24, 31

Certain Tissue Paper Products From the People's Republic of China:
    Affirmative Preliminary Determination of Circumvention of the Antidumping
    Duty Order, 78 Fed. Reg. 14,514 (Dep't Commerce Mar. 6, 2013) and
    accompanying Preliminary Decision Memorandum (Mar. 23, 2009),
    unchanged in 78 Fed. Reg. 40,101 (Dep't Commerce July 3, 2013);..............................22, 31,

Decision Memorandum for the Final Affirmative Determination of Circumvention
    of the Antidumping Duty Order on Prestressed Concrete Steel Wire Strand
    from Mexico (Sept. 20, 2024), ref'd in 89 Fed. Reg. 79,252 (Dep't Commerce
    Sept. 27, 2024) ............................................................................................................18

Decision Memo from USDOC to Associate Deputy Assistant Secretary Pertaining
    to Interested Parties Prelim Issues And Decision Memo (Mar. 15, 2023)
    ("PDM")........................................................................................................8, 9, 16

Ferrovanadium and Nitrided Vanadium from the Russian Federation:
    Negative Final Determination of Circumvention of the Antidumping Duty
    Order, 77 Fed. Reg. 46,712 (Dep't Commerce Aug. 6, 2012) ("Ferrovanadium
    from Russia"), and accompanying Issues and Decision Memorandum (July
    30, 2012) ("Ferrovanadium from Russia IDM") ............................................................. passim

Glycine From the People's Republic of China:
    Final Partial Affirmative Determination of Circumvention of the Antidumping
    Duty Order, 77 Fed. Reg. 73,426 (Dep't Commerce Dec. 10, 2012) and
    accompanying Issues and Decision Memorandum (Dec. 3, 2012)........................................22

Issues and Decision Memorandum for Anti-Circumvention Inquiries on the
    Antidumping Duty and Countervailing Duty Orders on Certain Corrosion-
    Resistant Steel Products from the People's Republic of China (May 16, 2018),
    ref'd in 83 Fed. Reg. 23,895 (Dep't Commerce May 23, 2018).............................................18

Issues and Decision Memorandum for the Circumvention Inquiry of the
    Antidumping and Countervailing Duty Orders on Circular Welded Carbon
    Quality Steel Pipe from the People's Republic of China (Nov. 2, 2023), ref'd
    in 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 8, 2023)........................................................19

Issues and Decision Memorandum for the Final Affirmative Circumvention
    Determination of the Antidumping Duty Order on Certain Aluminum Foil
    from the People's Republic of China with Respect to the Republic of Korea
    (Nov. 17, 2023) ("IDM")................................................................................. passim

Issues and Decision Memorandum for the Final Affirmative Circumvention
    Determination of the Antidumping Duty and Countervailing Duty Orders on
    Certain Collated Steel Staples from the People's Republic of China with
    Respect to the Kingdom of Thailand (Jan. 23, 2024), ref'd in 89 Fed. Reg.
    5,855 (Dep't Commerce Jan. 30, 2024)..................................................................................19

Issues and Decision Memorandum for the Final Affirmative Determination of
    Circumvention Concerning Aluminum Extrusions from the People's Republic
    of China (July 31, 2019), ref'd in 84 Fed. Reg. 39,805 (Dep't Commerce Aug.
    12, 2019) ...................................................................................................................18

Small Diameter Graphite Electrodes From the People's Republic of China:
    Affirmative Final Determination of Circumvention of the Antidumping Duty
    Order, 77 Fed. Reg. 47,596 (Dep't Commerce Aug. 9, 2012) and
    accompanying Issues and Decision Memorandum (July 31, 2012), aff'd, U.K.
    Carbon & Graphite Co. v. United States, 931 F. Supp. 2d 1322 (Ct. Int'l Trade
    2013) ........................................................................................................................22

Oil Country Tubular Goods from the People's Republic of China:
    Initiation of Anti-Circumvention Inquiries on the Antidumping Duty and
    Countervailing Duty Orders (Nov. 3, 2020), ref'd in 85 Fed. Reg. 71,877
    (Dep't Commerce Nov. 12, 2020), unchanged in Oil Country Tubular Goods
    From the People's Republic of China: Final Affirmative Determinations of
    Circumvention, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021)...............18

Oil Country Tubular Goods from the People's Republic of China:
    Issues and Decision Memorandum for Final Affirmative Determinations of
    Circumvention (Nov. 19, 2021), ref'd in 86 Fed. Reg. 67,443 (Dep't
    Commerce Nov. 26, 2021)......................................................................................15

Wax & Wax/Resin Thermal Transfer Ribbon from the Republic of Korea,
    69 Fed. Reg. 17,645 (Dep't Commerce Apr. 5, 2004)...........................................26

NONCONFIDENTIAL

This response brief is filed on behalf of the Aluminum Association Trade Enforcement Working Group and its individual members JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products, LLC (collectively, "Defendant-Intervenors") in opposition to the Rule 56.2 Motion for Judgment on the Agency Record and Memorandum of Points and Authorities in support of the same (ECF No. 20) (hereinafter, "Hanon Br.") submitted on behalf of Hanon Systems Alabama Corp. (hereinafter, "Plaintiff" or "Hanon").  For the reasons detailed below, Defendant-Intervenors urge this Court to reject Hanon's claims and to sustain the U.S. Department of Commerce's (hereinafter, "Commerce" or the "Department") final affirmative anti-circumvention determination.

## THE ADMINISTRATIVE DETERMINATION UNDER REVIEW

Hanon challenges certain aspects of the Department's final affirmative determination in the anti-circumvention inquiry concerning aluminum foil from China completed or assembled in the Republic of Korea (hereinafter, "Korea").  See Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Final Affirmative Determinations of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand, 88 Fed. Reg. 82,824 (Dep't Commerce Nov. 27, 2023) (PR 265)[1] (hereinafter, "Final Determination") and the accompanying Issues and Decision Memorandum for the Final Affirmative Circumvention Determination of the Antidumping Duty Order on Certain Aluminum Foil from the People's Republic of China with Respect to the Republic of Korea (Nov. 17, 2023) (hereinafter, "IDM") (PR 263).

---

[1]    Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR ___)" and "(PR ___)") provided in the Index to the Administrative Record filed with the Court on Apr. 1, 2024 (ECF No. 17).

## ISSUES PRESENTED AND SUMMARY OF ARGUMENT

Hanon claims the Department's <u>Final Determination</u> is not supported by substantial evidence and is not otherwise in accordance with law because:

1. The Department misinterpreted the phrase "minor or insignificant" in 19 U.S.C. § 1677j(b)(1)(C).

2. The Department's analysis of the nature of the production process in Korea is not supported by substantial evidence.

3. The Department's analysis of the value of processing performed in Korea is contrary to the statute and failed to account for qualitative factors.

4. The Department unreasonably weighed the five factors under 19 U.S.C. § 1677j(b)(2) in assessing whether the process of completion or assembly in Korea is "minor or insignificant."

5. The Department's analysis of the patterns of trade analysis is not supported by substantial evidence.

Hanon's claims are wrong and should be rejected by this Court.

<u>First</u>, the Department's application of the "minor or insignificant" statutory factors is in accordance with law. Hanon claims the Department interpreted the terms "minor or insignificant" in a manner that is "far too broad" and "contrary to the plain meaning of the statute language." Hanon Br. at 15-16. To the contrary, the Department's analysis is consistent with the statutory scheme established by Congress, as set forth in the statute's plain language. The statute explicitly provides five enumerated factors the Department "shall take into account" "{i}n determining whether the process of assembly or completion is minor or insignificant." 19 U.S.C. § 1677j(b)(2). The Department analyzed all five factors and reasonably weighed them in the <u>Final Determination</u>. <u>See</u> <u>IDM</u> at 11-32 (PR 263). Thus, the Department did not conduct any statutory interpretation of the phrase "minor or insignificant," rather it applied the statute's plain

language.  See generally IDM.  Accordingly, this Court should determine that the Department's application of the "minor or insignificant" statutory factors is in accordance with law.

Second, the Department's determination that the nature of the production process in Korea is less significant than the production process for manufacturing aluminum strip in China is supported by substantial evidence.  Contrary to this Court's standard of review, which only considers whether the agency's factual determinations are reasonable, Hanon explicitly requests that this Court reweigh the record evidence.  See Hanon Br. at 17.  The Department compared the nature of the production process for aluminum foil in Korea, which involves rolling and finishing only, with the nature of the production process in China for aluminum strip involving melting, refining, casting, and rolling, and reasonably determined the former was less significant than the latter.  The Department's comparison of the nature of the production process in Korea with the nature of the production process in China is also consistent with the agency's established practice, as evidenced by the Department's analysis of this factor in Al Ghurair, CORE from China (Vietnam), OCTG from China, Aluminum Extrusions from China, PC Strand from Mexico, Collated Steel Staples from China, and Circular Welded Carbon Quality Steel Pipe from China.  See infra Section I.B.2.1.  Accordingly, this Court should determine that the Department's analysis of the nature of the production process in Korea is supported by substantial evidence.

Third, the Department's analysis of the value of the processing performed in Korea is in accordance with law.  The Department's method of calculating the value added by Korean producers is consistent with its well-established practice, and the Department's determination that this value supports a finding that the process of assembly or completion is minor or insignificant is also consistent with its past determinations.  Additionally, contrary to Hanon's

claims, the Department conducted a qualitative analysis of the value of the processing in Korea and found the qualitative factors supported the same conclusion.  <u>See</u> Hanon Br. at 20; <u>IDM</u> at 23-25, 30-32 (PR 263).

<u>Fourth</u>, the Department reasonably weighed the five factors under 19 U.S.C. § 1677j(b)(2) in assessing whether the process of completion or assembly in Korea is "minor or insignificant," consistent with the statute, its practice, and the legislative history.

<u>Fifth</u>, the Department's analysis of the "patterns of trade" and import trends is in accordance with law.  Hanon does not challenge any of the factual findings the Department cited to support its determination.  <u>See</u> Hanon Br. at 26-29.  Instead, Hanon argues that the Korean respondents did not "attempt" to circumvent the Orders, but "intent" is not a requirement in circumvention proceedings, as the Department and the courts have consistently found.  <u>See</u> Hanon Br. at 27.  Hanon also argues that the Department failed to address a lack of a finding of "unlawful transshipment" or "evasion of AD/CVD orders," both of which are outside of the scope of the Department's circumvention authority and not requirements of an affirmative determination.  <u>See id.</u>  Hanon also raises a temporal claim that the increase in imports is a "condition of the Korean industry," and that the circumvention statute only applies to newly established operations.  Hanon. Br. at 27-29.  Again, the Department and the courts have repeatedly rejected this argument.  Finally, Hanon argues the Department failed to address <u>Inmax SDN v. United States</u>, 277 F. Supp. 3d 1367 (Ct. Int'l Trade 2017), a case raised in administrative briefing.  <u>See</u> Hanon Br. at 28-29.  The case, however, is inapposite. The Department is not required to address irrelevant or non-dispositive arguments. <u>See</u> <u>NMB Singapore Ltd. v. United States</u>, 557 F.3d 1316, 1323 (Fed. Cir. 2009) ("We have previously held that § 1677f(i) does not require us to invalidate a decision of Commerce if Commerce failed

to explicitly address a party's non-dispositive argument."). Further, <u>Inmax SDN</u> involved a changed circumstances review, an inquiry entirely different from the circumvention determination at issue in this action. <u>See Inmax SDN</u>, 277 F. Supp. 3d at 1369. Accordingly, the Department's patterns of trade analysis is supported by record evidence and should be affirmed by this Court.

## **STANDARD OF REVIEW**

In reviewing a challenge to a final determination by the Department, this Court will sustain the determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a mere scintilla." <u>Nippon Steel Corp. v. United States</u>, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (quoting <u>NLRB v. Columbian Enameling & Stamping Co.</u>, 306 U.S. 292, 300 (1939)). Substantial evidence has also been determined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 477 (1951)). "{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.</u>, 463 U.S. 29, 43 (1983) (quoting <u>Burlington Truck Lines v. United States</u>, 371 U.S. 156, 168 (1962)). When reviewing agency determinations, this Court will evaluate whether the agency action is reasonable given the record as a whole and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp.</u>, 340 U.S. at 488; <u>see also</u> <u>Nippon Steel Corp.</u>, 458 F.3d at 1350-51.

This is a limited standard of review that only tests whether a determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The applicable standard of review does not allow a court to substitute its judgment for that of Commerce (see Akzo N.V. v. United States Int'l Trade Comm'n, 808 F.2d 1471, 1487 (Fed. Cir. 1986) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)), nor does it allow the parties to retry factual issues before a court de novo (see Kearns v. Chrysler Corp., 32 F.3d 1541, 1548 (Fed. Cir. 1994)).

## STATEMENT OF FACTS

On April 19, 2018, the Department published antidumping and countervailing duty orders on certain aluminum foil from the People's Republic of China. See Certain Aluminum Foil From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 83 Fed. Reg. 17,362 (Dep't Commerce Apr. 19, 2018); Certain Aluminum Foil From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 17,360 (Dep't Commerce Apr. 19, 2018) (collectively, the "Orders").

On July 18, 2022, the Department self-initiated a country-wide circumvention inquiry to determine whether imports of certain aluminum foil ("aluminum foil") completed or assembled in Korea using aluminum foil- or sheet-gauge products manufactured in China are circumventing the Orders. See Certain Aluminum Foil From the People's Republic of China: Initiation of Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders, 87 Fed. Reg. 42,702 (Dep't Commerce July 18, 2022) (PR 22) (hereinafter, "Initiation Notice"); see also Decision Memo From USDOC to AS/EC Pertaining to Interested Parties Initiation Memo (July 11, 2022) (PR 2). In the Initiation Notice, the Department noted its intention to select mandatory

respondents on the basis of quantity and value questionnaire responses.  See Initiation Notice, 87 Fed. Reg. at 42,703 (PR 22).

Six Korean entities submitted responses to the Department's quantity and value questionnaires, including Dong-IL Aluminum Co., Ltd. (hereinafter, "Dong-IL") and Lotte Aluminum Co., Ltd. (hereinafter, "Lotte").  See Response from Trade Pacific PLLC to Sec of Commerce Pertaining to Korean Producers Q&V Responses (Aug. 25, 2022) (CR 10) (PR 64) (hereinafter, "Korean Producers' Q&V Responses").  Collectively, these responses showed that each of the six Korean entities had produced and sold aluminum foil to the United States using Chinese inputs.  See id.; see also Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on Respondent Selection 1-5 (Sept. 7, 2022) (CR 12) (PR 67). The data also showed that both the volume of aluminum foil from Korea, as well as the percentage of that volume produced using Chinese inputs, [

]  See Korean Producers' Q&V Responses; Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Rebuttal Cmts at 27-28, Exhibit 7 (CR 41) (PR 110) (hereinafter, "Petitioners' Rebuttal Initiation Comments").  Specifically, from the [



]  See Petitioners' Rebuttal Initiation Comments at 28, Exh. 7.

The Department selected Dong-IL and Lotte as the mandatory respondents, and each company responded to the Department's initial circumvention inquiry questionnaire as well as supplemental questionnaires issued by the Department.  See Memo From USDOC to Office Director Pertaining to Interested Parties Respondent Selection (Oct. 11, 2022) (CR 38) (PR 106);

NONCONFIDENTIAL

see also Decision Memo from USDOC to Associate Deputy Assistant Secretary Pertaining to Interested Parties Prelim Issues And Decision Memo at 2-3 (Mar. 15, 2023) (hereinafter, "PDM") (PR 181) (identifying respondents' questionnaire responses).

On March 15, 2024, the Department issued a preliminary affirmative circumvention determination.  See Antidumping and Countervailing Duty Orders on Certain Aluminum Foil From the People's Republic of China: Preliminary Affirmative Determination of Circumvention With Respect to the Republic of Korea and the Kingdom of Thailand, 88 Fed. Reg. 17,177 (Dep't Commerce Mar. 22, 2023) (PR 186) (hereinafter, "Preliminary Determination"); PDM (PR 181).  The Department preliminarily determined that: (i) the inquiry merchandise imported into the United States from Korea is of the same class or kind as the class or kind of merchandise subject to the Orders, (ii) aluminum foil imported into the United States was completed in Korea from merchandise (i.e., aluminum foil and aluminum sheet) produced in China, (iii) the process of assembly or completion in Korea is minor or insignificant for Dong-IL and Lotte, (iv) the value of the merchandise produced in China that was used to produce inquiry merchandise is a significant portion of the total value of the merchandise exported to the United States, and (v) the patterns of trade and sourcing patterns supported an affirmative circumvention finding.  See PDM at 9-19 (PR 181).

In preliminarily analyzing whether the process of completion or assembly in Korea is minor or insignificant, the Department stated that "{n}o single factor, by itself, controls Commerce's determination" and, as a result, its "practice {is} to evaluate each of five factors in section 781(b)(2) of the Act, as they exist in the third country" and to "consider the totality of" the "analysis of those factors in making a determination."  Id. at 8 (PR 181).  Further, Commerce explained that "{t}he importance of any one of the factors listed under section 781(b)(2) of the

Act can vary from case to case based on the particular circumstances unique to each circumvention inquiry." Id. (PR 181).

In analyzing the enumerated factors under 19 U.S.C. § 1677j(b)(2), the Department preliminarily found that the level of investment, the level of R&D, and the extent of the production facilities in Korea all weighed against finding that the process of completion or assembly in Korea is minor or insignificant. See id. at 11-14 (PR 181). However, Commerce also preliminarily found that for aluminum foil

> the factors involving the level of investment, the level of R&D, and the extent of the production facilities in Korea weigh less heavily in our determination than the factors involving the nature of the production process and the value added in Korea because the former relate more broadly to the companies and their facilities, whereas the latter relate more to the production of inquiry merchandise itself.

Id. at 15 (PR 181).

With respect to the nature of the production process, the Department found that the Korean respondents' production process in Korea is less significant than the production process for the aluminum strip input in China. See id. at 13-14 (PR 181). The Department also evaluated the value of processing in Korea as compared with the value of the merchandise sold in the United States and determined that the value of processing in Korea represents a small proportion of the value of the inquiry merchandise imported into the United States. See id. (PR 181). The Department further found that "the value of the processing performed in Korea is especially important" to the analysis. Id. (PR 181). Thus, "based on a totality of the circumstances involving the five statutory factors," Commerce preliminarily determined "that the process of assembly or completion in Korea is minor or insignificant for Dong-IL and Lotte." Id. at 15 (PR 181).

On May 1, 2023, Hanon submitted an administrative case brief urging the Department to issue a negative final determination.  See Brief from Sandler, Travis & Rosenberg, P.A. to Sec of Commerce Pertaining to Hanon Case Brief (May 1, 2023) (CR 94) (PR 210).  Hanon urged the Department to find that all five factors under 19 U.S.C. § 1677j(b)(2) support a determination that the processes of assembly or completion used by Korean aluminum foil producers with respect to inputs from China are not minor or insignificant.  See id. at 5-15 (CR 94) (PR 210).  Hanon also urged the Department to find that the patterns of trade data did not support an affirmative circumvention determination.  See id. at 15-17 (CR 94) (PR 210).

On May 25, 2023, Petitioners submitted a rebuttal case brief addressing the arguments raised by respondents and interested parties in their affirmative case briefs.  See Brief from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Rebuttal Brief (May 25, 2023) (CR 100) (PR 233).  Specifically, Petitioners argued that (1) respondents' legal and policy arguments against an affirmative determination of circumvention lacked merit; (2) the production process in Korea is minor or insignificant; (3) the value of processing in Korea is not significant; (4) the value of the merchandise in China is a significant portion of the total value of the merchandise exported to the United States from Korea; and (5) the patterns of trade support and affirmative circumvention determination.  See id. at 8-48 (CR 100) (PR 233).

On November 27, 2023, the Department published the Final Determination.  See Final Determination (PR 265); IDM (PR 263).  The Department did not modify its conclusions from the Preliminary Determination.  See IDM at 3 (PR 263).  The Department continued to find that the statutory criteria under 19 U.S.C. § 1677j(b)(1) were satisfied.  See id. (PR 263).  The Department also continued to find that the process of completion or assembly in Korea was minor or insignificant after weighing all of the statutory factors and record evidence.  See IDM at

11-32 (PR 263).  Finally, the Department continued to find that the patterns of trade supported an affirmative circumvention determination.  See IDM at 47 (PR 263).

## ARGUMENT

**I.    THE   DEPARTMENT   LAWFULLY   APPLIED   THE   "MINOR   OR INSIGNIFICANT" STATUTORY FACTORS, CONSISTENT WITH THE PLAIN LANGUAGE OF THE STATUTE**

Hanon argues the Department's application of the "minor or insignificant" factors set forth in 19 U.S.C. § 1677j(b)(2) is "far too broad" and "contrary to the plain meaning of the statute language."  Hanon Br. at 15-16.  Hanon is wrong.  The Department's analysis is consistent with the statutory scheme established by Congress, as set forth in the statute's plain language.

First, Hanon presents a statutory interpretation of the phrase "minor or insignificant" by referencing selected dictionary definitions of each term.  See Hanon Br. at 15.  This Court should reject Hanon's attempt to rewrite the statute, which provides the Department with specific statutory criteria to evaluate in determining whether a process of assembly or competition is minor or insignificant.  See 19 U.S.C. § 1677j(b)(2).  Specifically, the statute explicitly provides that "{i}n determining whether the process of assembly or completion is minor or insignificant" the Department "*shall* take into account" five enumerated factors:

(1) the level of investment in the foreign country;

(2) the level of research and development in the foreign country;

(3) the nature of the production process in the foreign country;

(4) the extent of production facilities in the foreign country; and

(5) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

<u>See</u> 19 U.S.C. § 1677j(b)(2) (emphasis added).  Nowhere in its decision memorandum did the Department attempt to interpret the phrase "minor or insignificant."  <u>See</u> <u>generally</u> <u>IDM</u> (PR 263).  Rather the Department faithfully followed the statute's plain language by analyzing the five factors enumerated in 19 U.S.C. § 1677j(b)(2).  <u>See</u> <u>id.</u> at 11-32 (PR 263).  Thus, Hanon's claim that the Department misinterpreted the phrase "minor or insignificant" is wrong.

<u>Second</u>, the Department correctly noted that "{n}o single factor, by itself, controls Commerce's determination of whether the process of assembly or completion in a third country is minor or insignificant," which is also consistent with the statute's plain language.  <u>IDM</u> at 7; <u>see also</u> <u>U.K. Carbon & Graphite Co. v. United States</u>, 931 F. Supp. 2d 1322, 1335 (Ct. Int'l Trade 2013) ("The Court notes that the five factors are to be separately taken into consideration, as appropriate, and their totality weighed.").  While the statute requires the Department to evaluate all five enumerated factors in 19 U.S.C. § 1677j(b)(2), it does not assign a weight to each factor, nor does it elevate any single factor or factors over the others.  <u>See</u> 19 U.S.C. § 1677j(b)(2).  Indeed, the Statement of Administrative Action, which is the primary interpretative source that was approved by Congress (<u>see</u> <u>id.</u> § 3511(a)(2)) explicitly provides that

> Commerce will evaluate each of these factors as they exist either in the United States or a third country, depending on the particular circumvention scenario. No single factor will be controlling.

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103- 316, Vol. I (1994) (hereinafter, "SAA"), at 893.

In completing its analysis, the Department analyzed each of the five factors identified in the statute and assigned more weight to two of those factors – the nature of the production process and the value of the processing performed in Korea as compared with the value of the

merchandise imported into the United States.  See IDM at 32 (PR 263).  Significantly, Hanon does not claim the Department failed to consider any of the statutory factors; rather, it only disagrees with the Department's weighing of the record evidence.  See generally Hanon Br.  For these reasons, this Court should find that the Department's "minor or insignificant" analysis in consistent with the statute and otherwise in accordance with law.  See 19 U.S.C. § 1677j(b)(2); IDM at 11-32 (PR 263).

**II.    COMMERCE LAWFULLY DETERMINED THAT THE NATURE OF THE PRODUCTION PROCESS IN KOREA IS LESS SIGNIFICANT THAN THE NATURE OF THE PRODUCTION PROCESS OF CHINESE MANUFACTURED ALUMINUM STRIP**

**A.    The Court Should Reject Hanon's Request to Reweigh Record Evidence**

Hanon argues that Commerce's analysis of the "nature of the production process" under 19 U.S.C. § 1677j(b)(2)(C), and conclusion that the "overall production process in Korea is less significant than the production process for the aluminum strip input, which weighs in favor of finding that the process of assembly or completion in Korea is minor or insignificant," is not supported by substantial evidence.  Hanon Br. at 17.  Hanon specifically argues that "Commerce failed to accurately weigh and consider the importance of Korean operations and their transformative impact on the final end product."  Id.  Hanon's claims are wrong, as they both misapply the standard of review and ignore Commerce's careful analysis of the record evidence.

First, Hanon explicitly asks this Court to reweigh the record evidence, stating:

> Commerce's nature of production analysis is fundamentally flawed because Commerce **failed to accurately weigh and consider the importance** of Korean operations and their transformative impact on the final end product.

Hanon Br. at 17 (emphasis added).  Hanon's request, however, is directly contrary to the standard of review applied by this Court.  In particular, the substantial evidence standard only

tests whether an agency determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co., 305 U.S. at 197. This standard of review does not allow the Court to substitute its judgment for that of the Department (see Akzo N.V., 808 F.2d at 1487), nor does it allow the parties to retry factual issues before this Court de novo (see Kearns, 32 F.3d at 1548). Indeed, an agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence. See, e.g., Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Plaintiff is required to demonstrate that its preferred evidentiary finding is the only reasonable outcome on the administrative record, "not simply that {its preferred finding} may have constituted another possible reasonable choice." See Tianjin Wanhua Co. v. United States, 179 F. Supp. 3d 1062, 1071 (Ct. Int'l Trade 2016). Here, the Department analyzed the record evidence, addressed the respondents' arguments, and reasonably concluded that the nature of the production process in Korea (i.e., final rolling and finishing) was less significant than the production process for manufacturing aluminum strip in China (i.e., melting, refining, casting, and rolling). See IDM at 23-25 (PR 263).

Second, Commerce's consideration of the record evidence and determination that the production process in Korea is less significant than the production process for aluminum strip (performed in China) is reasonable. See id. The statute does not specify a particular methodology the Department must apply in analyzing the nature of the production process in the foreign country. See 19 U.S.C. § 1677j(b)(2)(C). Here, the Department considered the processing in Korea in the context of the entire production process for aluminum foil – a methodology that is consistent with the agency's court-approved practice. See IDM at 25 ("We continue to apply a comparative methodology, but one which takes a totality of the

circumstances and case-specific approach for this final determination.") (PR 263);  see also Al

Ghurair Iron & Steel LLC v. United States, 536 F. Supp. 3d 1357, 1368-72 (Ct. Int'l Trade 2021)

(hereinafter, "Al Ghurair"), aff'd, 65 F.4th 1351, 1359-62 (Fed. Cir. 2023); HLDS B Steel SDN

Bhd. v. United States, Slip Op. 24-6 at 8, 2024 Ct. Intl. Trade LEXIS 6 at *7 (Jan. 23, 2024)

("Again, Al Ghurair resolves this issue because the Federal Circuit found that the Department's

analysis, and {comparison} of the entire manufacturing process {in the country under order to}

'just the final steps,' {in the country through which circumvention is occurring} was consistent

with the {Department's} prior determinations.") (citing Al Ghurair, 65 F.4th at 1360); Oil

Country Tubular Goods from the People's Republic of China: Issues and Decision Memorandum

for Final Affirmative Determinations of Circumvention, at 6-11 (Nov. 19, 2021), ref'd in 86 Fed.

Reg. 67,443 (Dep't Commerce Nov. 26, 2021) (final determ.).

Relative to the entire manufacturing process for aluminum foil, rolling aluminum strip

into aluminum foil is minor or insignificant.  As the Department explained, the entire production

process, which largely occurs in China, begins with the melting and refining of aluminum ingots,

scrap, and alloying materials in furnaces.  See IDM at 14 (PR 263); see also Petitioners' Rebuttal

Initiation Comments at Exhibit 6 (CR 41) (PR 110).  [


                                                ]  See Petitioners' Rebuttal

Initiation Comments at Exhibit 6 (CR 41) (PR 110).  [


                                        ]  See id. (CR 41) (PR 110).  The processing in Korea

includes additional rolling to a final gauge (or thickness) and finishing operations.  See Hanon

Br. at 17.    After considering these facts, the Department determined that the processing performed in Korea was less significant than the processing conducted in China to produce aluminum sheet and foil used by Korean producers.    IDM at 23-25 (PR 263); see also PDM at 13-14 (PR 181).  Substantial evidence supports this determination.

Hanon argues the Department "improperly downplayed" the importance of physical and mechanical properties.    See Hanon Br. at 18.    Again, Hanon is simply asking this Court to reweigh the record evidence.  The Department did account for the physical changes imparted by processing in Korea in its analysis, explicitly stating that "{w}ith regard to physical properties (and, though barely mentioned {by the respondent interested parties}, mechanical properties), the operations of the respondents do change the properties of the input," but concluded that "the changes in the product {do not} amount to a 'substantial transformation' . . . ."  IDM at 24 (PR 263).

Further, Commerce weighed changes in physical properties against the complete lack of any change in chemical properties in connection with the processing operations performed in Korea, explaining that "the reduction by rolling, along with the other processes performed by" respondents "cannot change the fact that an ingot or billet of a subject aluminum alloy has the same chemical makeup as the plate, sheet, or strip made" in China.  IDM at 24 (PR 263).  That the Department did not reach Hanon's desired outcome does not make the agency's determination unlawful or unsupported by substantial evidence.  Further, contrary to Hanon's claim that the Department added a new requirement not contemplated by the statute – that a chemical change is required to find a substantial transformation or significant processing (see Hanon Br. at 18) – the Department's IDM, discussed directly above, demonstrates that the Department considered both that respondents' processes resulted in certain physical changes and

the lack of any chemical changes as part of its holistic analysis of the nature of the production process in Korea.  See IDM at 23-25 (PR 263).  Hanon does not identify any record evidence indicating that the Department determined the nature of the production process in Korea was less significant than the production of aluminum strip in China *only because* there were no chemical changes imparted by the Korean processing, or that a chemical change is required for processing to be significant.  See Hanon Br. at 18-19; see also IDM at 23-25 (PR 263).  Rather, the Department, consistent with its established practice, considered this as one factor in determining that Korean processing was not significant relative to the production process of the subject merchandise in China.  See IDM at 23-25 (PR 263).

### B.    The Department's Determination Is Consistent with Its Established Practice

Hanon also claims Commerce's analysis of the nature of the production process is inconsistent with an analysis Commerce performed in a circumvention inquiry involving vanadium pentoxide completed or assembled in the United States into ferrovanadium.  See Hanon Br. at 19-20 (citing Ferrovanadium and Nitrided Vanadium from the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 46,712 (Dep't Commerce Aug. 6, 2012) ("Ferrovanadium from Russia"), and accompanying Issues and Decision Memorandum (July 30, 2012), at 9) ("Ferrovanadium from Russia IDM").  Hanon is wrong.  Contrary to Hanon's claim, Commerce's methodology is consistent with Ferrovanadium from Russia and many more recent third country (and U.S.) completion or assembly decisions.

For example, the Department has determined that cold-rolling and galvanizing Chinese-origin hot-rolled carbon steel in the UAE is a minor or insignificant process, and this Court and the United States Court of Appeals for the Federal Circuit ("CAFC") have sustained this finding.

See Al Ghurair, 536 F. Supp. 3d at 1368-72, aff'd, 65 F.4th at 1359-62 (Fed. Cir. 2023). The Department made a similar determination for cold-rolling and galvanizing Chinese-origin hot-rolled carbon steel in the Vietnam. Issues and Decision Memorandum for Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders on Certain Corrosion-Resistant Steel Products from the People's Republic of China, at 7-11 (May 16, 2018), ref'd in 83 Fed. Reg. 23,895 (Dep't Commerce May 23, 2018) (final determ.). The Department has also found that converting hot-rolled steel in coil form into welded oil country tubular goods ("OCTG") – involving "cut{ting}" the steel "to the desired dimensions {} then run{ing the steel} through a series of rollers that give the sheet a tube-like shape," and "heat{ing} and weld{ing the sheet's edges} together before the unfinished pipe is trimmed, heat-treated, upset, and threaded, resulting in welded OCTG" – is minor or insignificant. See Oil Country Tubular Goods from the People's Republic of China: Initiation of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders, at 5 (Nov. 3, 2020), ref'd in 85 Fed. Reg. 71,877 (Dep't Commerce Nov. 12, 2020), unchanged in Oil Country Tubular Goods From the People's Republic of China: Final Affirmative Determinations of Circumvention, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021). The Department has found that re-melting aluminum previously extruded in China to produce aluminum billets that are then re-extruded in Vietnam to produce aluminum extrusions (i.e., re-melting and re-extruding) is a minor or insignificant process. See Issues and Decision Memorandum for the Final Affirmative Determination of Circumvention Concerning Aluminum Extrusions from the People's Republic of China, at 9-10 (July 31, 2019), ref'd in 84 Fed. Reg. 39,805 (Dep't Commerce Aug. 12, 2019) (final determ.). The Department has found that stranding steel wire, stabilizing it, and rewinding/packaging the finished steel wire strand is minor or insignificant.

<u>See</u> <u>Decision Memorandum for the Final Affirmative Determination of Circumvention of the</u>
<u>Antidumping Duty Order on Prestressed Concrete Steel Wire Strand from Mexico</u>, at 18-19
(Sept. 20, 2024), <u>ref'd in</u> 89 Fed. Reg. 79,252 (Dep't Commerce Sept. 27, 2024) (final determ.).
The Department also recently found that producing collated staples from either stainless steel
wire or galvanized wire by flattening, measuring and sizing, stamping, or press forming the wire
into staples was minor or insignificant.  <u>See, e.g.</u>, <u>Issues and Decision Memorandum for the Final</u>
<u>Affirmative Circumvention Determination of the Antidumping Duty and Countervailing Duty</u>
<u>Orders on Certain Collated Steel Staples from the People's Republic of China with Respect to</u>
<u>the Kingdom of Thailand</u>, at 21 (Jan. 23, 2024), <u>ref'd in</u> 89 Fed. Reg. 5,855 (Dep't Commerce
Jan. 30, 2024) (final determ.).  The Department has also found that slitting, forming, welding,
finishing, and or galvanizing hot-rolled steel into circular welded carbon quality steel pipe is
minor or insignificant.  <u>See</u> <u>Issues and Decision Memorandum for the Circumvention Inquiry of</u>
<u>the Antidumping and Countervailing Duty Orders on Circular Welded Carbon Quality Steel Pipe</u>
<u>from the People's Republic of China</u>, at 29-35 (Nov. 2, 2023), <u>ref'd in</u> 88 Fed. Reg. 77,287
(Dep't Commerce Nov. 8, 2023) (final determ.).  The nature of the production process in the
third countries (or the United States) at issue in these recent circumvention determinations is
similar to or more intensive than the nature of the production process at issue here in Korea.
Accordingly, the Department's finding is consistent with its established practice and lawful.

Commerce's <u>Final Determination</u> also specifically addressed the <u>Ferrovanadium from</u>
<u>Russia</u> proceeding, finding it inapposite.  <u>See</u> <u>IDM</u> at 24, n.111 (PR 263); Hanon Br. at 19-20.  In
particular, as Commerce explained:

> *Ferrovanadium from Russia* in this context is inapposite; the
> product in that case is "ferrovanadium and nitrided vanadium."
> The term "nitride" means "to be heated in the presence of

nitrogen," which produces a chemical reaction that *does* change the chemical composition of the vanadium. There is no evidence of a similar process on the record of these inquiries.

IDM at 24 n.111 (PR 263). In other words, in Ferrovanadium from Russia, the processing changed both the physical and chemical properties of the input, which led Commerce to determine:

> Based on the record evidence, we concluded that the toll-conversion process is more than a mere finishing or assembly process. It entails a series of processes that cause the chemical reaction necessary to convert vanadium pentoxide, in powder or flake form, to molten metallic vanadium and then to alloy the molten metallic vanadium with metallic iron to form a solid (i.e., conversion of a chemical compound to a metal alloy). The nature of this process is significant enough to result in the complete chemical and physical transformation of one material, vanadium pentoxide, into another material with a completely different physical and chemical structure, ferrovanadium.

Ferrovanadium from Russia and accompanying Ferrovanadium from Russia IDM at 8.

In contrast, in the underlying proceeding, the Korean producers merely rolled aluminum sheet or strip to a thinner gauge and then performed finishing operations (e.g., slitting, annealing, coating) without changing the chemical properties of the processed merchandise. See IDM at 24 (PR 263). Thus, the instant case is more similar to Commerce's analyses in Al Ghurair, CORE from China (Vietnam), OCTG from China, Aluminum Extrusions from China, PC Strand from Mexico, Collated Steel Staples from China, and Circular Welded Carbon Quality Steel Pipe from China. Accordingly, the Department's analysis and determination is both supported by substantial evidence on the record and in accordance with law.

NONCONFIDENTIAL

### III.  COMMERCE'S ANALYSIS OF THE VALUE OF THE PROCESSING PERFORMED IN KOREA IS LAWFUL

Hanon argues Commerce's analysis of the value of the processing performed in Korea "is flawed for two reasons:" (1) Commerce's "definition of 'minor or insignificant' {} is an impermissible interpretation of the statute;" and (2) Commerce failed to conduct a qualitative analysis.  Hanon Br. at 20.  Hanon also separately argues that Commerce's calculation of the value added in Korea as a result of the processing operations is not supported by substantial evidence.  See id. at 21-22.  All of Hanon's claims are wrong.

First, as discussed above in section I.A., Commerce did not perform a statutory interpretation of the terms "minor or insignificant."  Rather, Commerce evaluated the five enumerated statutory factors, consistent with the statute's plain language.  As a result, Hanon's repeated argument that Commerce misinterpreted the statute is wrong.

Second, Hanon points to other "value-added" analyses proposed by respondent interested parties that Hanon argues would have, if adopted by Commerce, led the agency to a different conclusion.  See Hanon Br. at 21.  To calculate whether the value of processing performed in Korea represents a small proportion of the value of the merchandise imported to the United States, the Department

> summed the per-unit costs incurred in Korea by Dong-IL and Lotte for non-Chinese material inputs used during the Korean processing of inquiry merchandise, labor, fixed and variable overhead, selling, general, and administrative items, and interest, and divided the sum by the per-unit weighted-average value of their U.S. sales of inquiry merchandise during the inquiry period.

IDM at 30 (PR 263).  This methodology is consistent with the statute's plain language, which provides that Commerce should assess "whether the value of the processing in" Korea "represents a small proportion of the value of the merchandise imported into the United States."

19 U.S.C. § 1677j(b)(2)(E).  The sum of the per-unit costs incurred by Korean respondents for non-Chinese material inputs is equivalent to the "value of the processing in Korea" and the "per-unit weighted-average value" of the Korean respondents' sales is equivalent to the "value of the merchandise imported into the United States."

The methodology used by Commerce is also consistent the agency's established practice in many prior third country completion or assembly circumvention inquiries.  See, e.g., Small Diameter Graphite Electrodes From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 47,596, 47,598-99 (Dep't Commerce Aug. 9, 2012) and accompanying Issues and Decision Memorandum at 9-12 (July 31, 2012), aff'd, U.K. Carbon & Graphite Co. v. United States, 931 F. Supp. 2d 1322, 1332-37 (Ct. Int'l Trade 2013); Certain Tissue Paper Products From the People's Republic of China: Affirmative Preliminary Determination of Circumvention of the Antidumping Duty Order, 78 Fed. Reg. 14,514 (Dep't Commerce Mar. 6, 2013) and accompanying Preliminary Decision Memorandum at 7-8 (Mar. 23, 2009), unchanged in 78 Fed. Reg. 40,101 (Dep't Commerce July 3, 2013) (final determ.) ("Tissue Paper IDM"); Glycine From the People's Republic of China: Final Partial Affirmative Determination of Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 73,426 (Dep't Commerce Dec. 10, 2012) and accompanying Issues and Decision Memorandum at 18-19 (Dec. 3, 2012) (stating "that this same methodology was used by the Department to determine value added in past cases").

Third, Hanon argues that even the value-add Commerce calculated is inconsistent with other cases where Commerce found the value added was not minor, citing again to Ferrovanadium from Russia.  See Hanon Br. at 21; Memo from USDOC to File Pertaining to Lotte at 4 (Mar. 15, 2023) (PR 184) (CR 91) (hereinafter, "Preliminary Analysis Memorandum

for Lotte"); Memo from USDOC to File Pertaining to Dong Il at 4 (Mar. 15, 2023) (PR 182) (CR

89) (hereinafter, "Preliminary Analysis Memorandum for Dong-IL").    The Department

calculated the value of the processing performed in Korea at [        ] percent for Dong-IL and

[        ] percent for Lotte (of the value of the inquiry merchandise imported into the United

States), or an average of [        ] percent.  See Preliminary Analysis Memorandum for Dong-IL

at 4; Preliminary Analysis Memorandum for Lotte at 4.   As previously discussed, however,

Commerce found Ferrovanadium from Russia to be inapposite, particularly with respect to

qualitative analysis of processing in the third country.  See IDM at 24 n.111 (PR 263).

The Department has rejected this same argument previously.

> CSIL contends that Commerce incorrectly found that the value of
> its inquiry country processing, as a percentage of the merchandise
> value, supported an affirmative circumvention determination, when
> in other cases Commerce found that smaller processing
> percentages did not support an affirmative circumvention
> determination. However, Commerce has found processing
> percentages consistent with CSIL's to be small percentages.
> Moreover, while CSIL cited the processing percentages of 12 to 26
> percent in the Ferrovanadium from Russia Final Determination to
> support its argument, in that case Commerce "acknowledged …
> that the value of U.S. processing of vanadium pentoxide into
> ferrovanadium, as calculated by {Commerce}, fell within the range
> of value-added percentages that {Commerce} has found to be
> "small" in previous cases …" Thus, we do not find that our
> assessment of whether the value of CSIL's inquiry country
> processing is a small proportion of the value of the inquiry
> merchandise imported into the United States is necessarily
> inconsistent with some of the "small" percentages found in
> Ferrovanadium from Russia Final Determination. While
> Commerce ultimately determined in Ferrovanadium from Russia
> Final Determination that the value percentages were not small
> based on the extensive and substantial processing that occurred, as
> explained above we find it is appropriate to consider the nature of
> processing in the overall circumvention decision rather than in
> assessing the percentage calculated under section 781(b)(2)(E) of
> the Act.

Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Thailand, at 59-60 (Aug. 17, 2023) (footnotes omitted), ref'd in 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (final determ.).

Further, contrary to Hanon's claim, the value added in Korea (i.e., [          ] percent) is consistent with other proceedings in which the Department has found the value added in a third country or the United States to be a small proportion of the value of the merchandise imported to the United States. See Preliminary Analysis Memorandum for Lotte at 4 (PR 184) (CR 91); Preliminary Analysis Memorandum for Dong-IL at 4 (PR 182) (CR 89). For example, in CORE China/UAE, the Department determined that value-added processing ranges of **10 to 31 percent** and **13 to 22 percent** were minor or insignificant. See Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Preliminary Determination of Circumvention Involving the United Arab Emirates, 85 Fed. Reg. 8,841 (Dep't Commerce Feb. 18, 2020) and accompanying Preliminary Decision Memorandum, at 21-22 (Feb. 7, 2020), unchanged in 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) (final determ.) and accompanying Issues and Decision Memorandum at 8 (July 6, 2020) (hereinafter, "Al Ghurair IDM"), aff'd, Al Ghurair, 536 F. Supp. 3d at 1368-72, aff'd, 65 F.4th at 1359-62 (Fed. Cir. 2023).

Similarly, in Aluminum Wire and Cable from China/Korea, the Department found that the

value of the processing performed in Korea by Pusan is **below 40 percent**, and thus, represents a small proportion of the value of the

-24-

inquiry merchandise imported into the United States, and thus, weighs in in favor of finding circumvention.

Antidumping Duty and Countervailing Duty Orders on Aluminum Wire and Cable from the People's Republic of China: Preliminary Decision Memorandum for the Scope Inquiry and Preliminary Decision Memorandum for the Circumvention Inquiry with Respect to the Republic of Korea at 22 (July 31, 2024). Further, in Aluminum Wire and Cable from China/Vietnam, the Department found that

> the value of the processing performed in Vietnam by ICF Cable and Tanghenam is **below 30 percent**, and thus, represents a small proportion of the value of the inquiry merchandise imported into the United States, and thus, weighs in in favor of finding circumvention.

Antidumping Duty and Countervailing Duty Orders on Aluminum Wire and Cable from the People's Republic of China: Preliminary Decision Memorandum for the Scope Inquiry and Preliminary Decision Memorandum for the Circumvention Inquiry with Respect to the Socialist Republic of Vietnam, at 20 (July 31, 2024). These findings are consistent with the value added in Korea in the instant proceeding, especially in light of the fact that the Department also determined the qualitative factors demonstrated the processing in Korea was minor or insignificant, and a small proportion of the value of the merchandise imported into the United States. See IDM at 23-25, 31 (PR 263).

Fourth, Hanon's claim that Commerce did not assess qualitative factors is wrong. See Hanon Br. at 22-25. Contrary to Hanon's assertions, Commerce conducted both a qualitative and quantitative value-added analysis pursuant to the statute. See U.K. Carbon & Graphite Co., 931 F. Supp. 2d at 1335 ("Commerce 'performed a qualitative and quantitative value-added analysis' pursuant to 19 U.S.C. § 1677j(b) and 'found that they both supported the conclusion

that the value of the processing performed in the U.K. represents a 'small proportion' of the value of the merchandise imported into the United States.'") (emphasis added) (citing, e.g., SAA at 894). Indeed, Commerce specifically explained that no change in chemical composition occurred in Korea, contrary to the processing analyzed in Ferrovanadium from Russia – the only case Hanon cites in support of its argument. See IDM at 24 (PR 263).[2] Further, the Department even took into account the additional production steps that were used to produce "ultra-thin aluminum foil," but nevertheless found the value of the processing in Korea to be a small proportion of the value of the merchandise imported into the United States. See IDM at 31-32 (PR 263). Indeed, Commerce's analysis repeatedly addressed qualitative factors, and rejected an approach based only on an analysis of quantitative factors. See, e.g., IDM at 14-15, 18, 25, 27, 32 (PR 263) (explaining for example on page 32 that "{t}he petitioners have not provided sufficient support for their proposed quantitative-only method of comparative analysis").

Commerce also addressed Hanon's argument that Customs Ruling H302201 renders the Department's final determination unsupported by substantial evidence or unlawful. See Hanon Br. at 24. As the Department stated, its substantial transformation test differs from, and is in some manners more rigorous than, that of CBP's country of origin test. See IDM at 31; see also

---

[2]   Ferrovanadium from Russia is inapposite here. In Ferrovanadium from Russia, the Department found that part of the range of values (6 to 26 percent) for foreign processing could have been considered small in other proceedings, but in conjunction with the significant qualitative nature of the processing that was occurring (i.e., a full chemical and physical transformation involving converting vanadium pentoxide, in powder or flake form, to molten metallic vanadium and then to alloy the molten metallic vanadium with metallic iron to form a solid; a conversion of a chemical compound to a metal alloy), it determined the value of the processing to be significant. See Ferrovanadium from Russia IDM at 12. That is, based on the quantitative and qualitative considerations, the Department determined the value of processing in Ferrovanadium from Russia was significant. In the instant proceeding, the Department determined that the qualitative analysis demonstrates that the processing in Korea is minor or insignificant. Accordingly, the Department's determination at issue here is not inconsistent with Ferrovanadium from Russia.

NONCONFIDENTIAL

Wax & Wax/Resin Thermal Transfer Ribbon from the Republic of Korea, 69 Fed. Reg. 17,645, 17,648 (Dep't Commerce Apr. 5, 2004) (notice of final determination of sales at not less than fair value) ("As {Commerce} has stated on numerous occasions, {Customs} decisions regarding substantial transformation and customs regulations . . . are not binding on {Commerce}, because we make these decisions with different aims in mind (e.g., anticircumvention)."). Commerce considered the ruling identified by Hanon (see IDM at 31 (PR 263)) as required by law, and it determined that based on the record as a whole the value of the processing performed in Korea was a small proportion of the value of the merchandise imported into the United States. Accordingly, the Department's determination is supported by substantial evidence and in accordance with law.

## IV. THE DEPARTMENT'S WEIGHING OF THE FIVE "MINOR OR INSIGNIFICANT" FACTORS IS IN ACCORDANCE WITH LAW

Hanon also argues Commerce inappropriately weighed certain of the factors enumerated under 19 U.S.C. § 1677j(b)(2). See Hanon Br. at 25-26. Hanon's argument is contrary to the standard of review, Commerce's practice, judicial precedent, and the Statement of Administrative Action.

As stated previously, it is not for this Court to reweigh the evidence evaluated by the Commerce Department. The standard of review requires the Court to consider whether Commerce's weighing of the evidence was reasonable. See Universal Camera Corp., 340 U.S. at 488; see also Nippon Steel Corp., 458 F.3d at 1350-51. As discussed below, because Commerce reasonably weighed the evidence and assessed the factors set forth in the statute, its decision is supported by substantial evidence and otherwise in accordance with law.

There is no statutory mandate that the Department sum the factors that weigh in favor of an affirmative or negative determination and make its determination based on which accounts for a greater total. Rather, the statute states specifically that each of the five factors should be taken into account. See 19 U.S.C. § 1677j(b)(2). Consistent with the statute's plain language, the Department did consider each of the relevant statutory factors in reaching the Final Determination. See IDM at 11-32 (PR 263). Indeed, as Hanon itself notes, the legislative history is clear that Congress intended for no single factor to be determinative, and that the Department will evaluate each of these factors as they exist in the third country, with no factor being controlling. See Hanon Br. at 26 (citing SAA at 893).

This Court has confirmed the same interpretation of the statutory language, stating that "{n}one of the five factors is dispositive" and that "Commerce is to evaluate the factors 'depending on the particular circumvention scenario' on a case-by-case basis." U.K. Carbon & Graphite Co., 931 F. Supp. 2d at 1335; see also Al Ghurair, 536 F. Supp. at 1365, 1376, aff'd, 65 F.4th 1351 (Fed. Cir. 2023).

Accordingly, the statute, the relevant legislative history, the Department's established practice, and judicial precedent all support the Department's Final Determination.

## V.    COMMERCE'S ANALYSIS OF THE "PATTERNS OF TRADE" AND IMPORT TRENDS IS IN ACCORDANCE WITH LAW

Hanon argues that Commerce's analysis of the patterns of trade and import trends "is flawed" because it "fails to address record evidence." Hanon Br. at 27. The evidence that Hanon claims Commerce failed to address is a lack of finding of "unlawful transshipment" or "evasion of AD/CVD orders," two issues that are outside the scope of Commerce's circumvention authority and instead involve customs fraud. Id. Hanon also argues that Korean

respondents demonstrated they made investments in Korea and that U.S. imports of aluminum foil from Korea were not a new development.  See id. at 27-28.  Contrary to Hanon's arguments, Commerce addressed all of these claims and reasonably determined that patterns of trade and import trends support an affirmative circumvention determination.

The statute mandates that the Department take into account additional factors in determining whether to include merchandise assembled or completed in a foreign country within the scope of a countervailing duty order or an antidumping duty order.  Those factors are:

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
>
> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

19 U.S.C. § 1677j(b)(3).  Hanon concedes that the patterns of trade and increase in the volume of U.S. imports of aluminum foil from Korea after the initiation of the investigation support an affirmative determination.  See Hanon Br. at 27.  Hanon does not challenge the Department's findings that the value of U.S. imports of aluminum foil from Korea increased substantially from the pre-initiation period, that U.S. imports of aluminum foil from China decreased substantially from the pre-initiation period, and that this pattern of trade indicates a shift in exports of aluminum foil to the United States from China to Korea that weighs in favor of finding circumvention.  See IDM at 46; Hanon Br. at 25-26.  Hanon also does not challenge the Department's finding that the Korean respondents' reported sales reflect a pattern of trade that

**NONCONFIDENTIAL**

indicates a shift in exports of aluminum foil to the United States from China to Korea, which also weighs in favor of finding circumvention.  See id. at 46-47; Hanon Br. at 25-26.  Hanon also does not challenge the Department's finding that, even after accepting the Korean respondents' allocation methodology (because the respondents could not track their sales to the inputs used to manufacture the merchandise at issue), there was "a marked increase in imports of aluminum foil {from Korea} produced with Chinese aluminum strip."  Id. at 47.  Indeed, the record demonstrates that both the volume of imports from Korea and the percentage of shipments produced from Chinese materials [                              ]:

| Korean Aluminum Foil Exports by Input Country of Origin | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 7/1/2017 - 6/30/2018 | | 7/1/2018 - 6/30/2019 | | 7/1/2019 - 6/30/2020 | | 7/1/2020-6/30/2021 | | 7/1/2021-6/30/2022 | |
| | | Volume (MT) | % | Volume (MT) | % | Volume (MT) | % | Volume (MT) | % | Volume (MT) | % |
| Korean Producers' Shipments | Using Chinese Inputs | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] |
| | Using Inputs From Other Countries | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] |
| | Total | [   ] | 100% | [   ] | 100% | [   ] | 100% | [   ] | 100% | [   ] | 100% |

See Petitioners' Rebuttal Initiation Comments at Exhibit 7 (CR 41) (PR 110).  Thus, Commerce's analysis of the patterns of trade and import trends is supported by substantial evidence.

Commerce and this Court have also previously rejected the notion of any specific intent requirement in 19 U.S.C. § 1677j(b).  Commerce has repeatedly found that intent is not a necessary element:

> AGIS' argument that Commerce must find intent of evasion in order to reach a finding of circumvention is clearly unsupported by the Act.  The section of the Act identifying the factors for evaluating whether merchandise completed or assembled in a foreign country is circumventing an order does not specify that Commerce should consider the intent of a respondent as part of its analysis.  Rather, section 781(b)(1)(E) of the Act provides that before issuing an affirmative circumvention determination Commerce should 'determine{} that action is appropriate . . . to

> prevent evasion' of the relevant AD/CVD orders at issue.
> Nowhere does the statute indicate that 'evasion' must be
> intentional, or that a respondent in the third country must have the
> 'intent' to evade duties. According to AGIS's interpretation of the
> Act, even if circumvention of an AD or CVD order exists,
> Commerce must also — through some undefined means —
> ascertain a respondent's intent to evade duties before it may
> determine that circumvention has occurred. Not only is an intent
> analysis inherently impractical in the context of trade remedies,
> there is no support for AGIS's argument in the statute. Indeed, we
> have previously explained that intent is not a necessary element of
> a finding of circumvention.

Al Ghurair IDM at 13-14 (citations omitted); see also Certain Cold-Rolled Steel Flat Products

from the Republic of Korea: Affirmative Final Determinations of Circumvention of the

Antidumping Duty and Countervailing Duty Orders, 84 Fed. Reg. 70,934 (Dep't Commerce Dec.

26, 2019) (hereinafter, "Korea CRS Final Determination") and accompanying Issues and

Decision Memorandum, at 57-60 (Dec. 13, 2019) (hereinafter, "Korea CRS IDM"), aff'd,

Ferrostaal Metals GmbH v. United States, 518 F. Supp. 3d 1357, 1375-76 (Ct. Int'l Trade 2021)

(sustaining the final determination that was challenged on other grounds); Tissue Paper IDM at

7. This Court has affirmed Commerce's analysis on this issue. See Al Ghurair, 536 F. Supp. 3d

at 1370, aff'd, 65 F.4th 1351 (Fed. Cir. 2023) ("{Commerce} is not required to determine intent

during a circumvention inquiry.") (citing Tissue Paper IDM at 7)).

Commerce and the U.S. Court of International Trade have also repeatedly rejected

Hanon's temporal claim that the increase in imports is a "condition of the Korean industry" and

that the circumvention statute only applies to newly established operations. See Hanon Br. at

27-29. In particular, the U.S. Court of International Trade has noted that "Commerce has found

circumvention regardless of the point in time at which third-country operations were established,

including instances in which the establishment of such operations preceded the issuance of the

underlying AD or CVD order." Al Ghurair, 536 F. Supp. 3d at 1370, aff'd, 65 F.4th 1351 (Fed.

Cir. 2023) (citing Korea CRS Final Determination and Korea CRS IDM at 57-60).  The Court

went on to state that:

> This conclusion is buttressed by the fact that when Congress
> intended to incorporate temporal elements in a circumvention
> inquiry, Congress did so expressly. *See* 19 U.S.C.
> § 1677j(b)(3)(C). Section 1677j(b)(3)(C) provides that Commerce
> consider in a circumvention inquiry whether imports from a third
> country have increased after the initiation of the investigation that
> resulted in the issuance of the order. 19 U.S.C. § 1677j(b)(3)(C).
> Notably, the statute does not provide for consideration of the
> sequencing of establishment of operations relative to an AD/CVD
> order; the statute addresses only the timing of actual imports. 19
> U.S.C. § 1677j(b)(3)(C).

Al Ghurair, 536 F. Supp. 3d at 1369-70, aff'd, 65 F.4th 1351 (Fed. Cir. 2023).  Consistent with

the statute, Commerce determined that "{i}t is possible for companies or facilities which are not

'screwdriver operations' to circumvent an order – and {the Department} determined that

Dong-IL and Lotte are fair examples of such operations."  IDM at 24.

Finally, Hanon's citation to Inmax SDN v. United States, 277 F. Supp. 3d 1367 (Ct. Int'l

Trade 2017) is inapposite.  See Hanon Br. at 28-29.  Inmax SDN involved a changed

circumstances review, an inquiry entirely different from the circumvention determination at issue

in this action.  See id., 277 F. Supp. 3d at 1369.  Changed circumstances reviews and

circumvention inquiries (more specifically inquiries concerning merchandise completed or

assembled in a foreign country) are based on two entirely different statutory schemes.  Compare

19 U.S.C. § 1675 with id. § 1677j(b).  These two distinct inquiries do not share requirements or

factors for consideration.  Compare id. § 1675 with id. § 1677j(b).  The Department's "failure" to

address Inmax SDN in the Final Determination is not unlawful because that decision is irrelevant

to the underlying proceeding.  See Valeo N. America, Inc. v. United States, 404 F. Supp. 3d

1303, 1319 (Ct. Int'l Trade 2019) (stating "the agency need not respond to every argument made by a party, so long as the path of the agency's reasoning is reasonably discernable by the court") (citing Timken U.S. Corp. v. United States, 421 F.3d 1350, 1354 (Fed. Cir. 2005)); NMB Singapore Ltd., 557 F.3d at 1323 ("We have previously held that § 1677f(i) does not require us to invalidate a decision of Commerce if Commerce failed to explicitly address a party's non-dispositive argument.") (citing Timken, 421 F.3d at 1357;  see also Yeda Research & Dev. Co. v. Mylan Pharms. Inc., 906 F.3d 1031, 1046 (Fed. Cir. 2018) ("{F}ailure to explicitly discuss every . . . minor argument does not alone establish that the {agency} did not consider it.") (citation omitted).

Hanon's argument that "the Court recognizes business reasons to import from alternative suppliers to avoid AD/CVD duty liability and the lawfulness of doing so," and that this same reasoning applies to circumvention determinations is incorrect and would render the entire anti-circumvention statute unenforceable.  Hanon Br. at 28-29 (citing Inmax SDN v. United States). If all that was required for a negative circumvention determination was a "business reason" (i.e., avoiding AD/CVD liability), the anti-circumvention statute would be rendered useless. Avoiding AD/CVD liability is the reason that companies circumvent unfair trade orders in the first place, and the statute was enacted to prevent this specific behavior.  See S. Rep. 100-71 at 99 ("The purpose of the provision is to prevent certain forms of circumvention and diversion that are being practiced by foreign producers to avoid antidumping and countervailing duties. . . . The bill {} adds a new section 780(b)(2) to the 1930 Act to address circumvention of orders through processing operations in third countries."); see also HLDS B. Steel SDN Bhd. v. United States, Slip Op. 24-6 at 3, 2024 Ct. Int'l Trade LEXIS 6, at *2 (Jan. 23, 2024) ("One way that clever producers and importers may seek to circumvent duty orders is to first ship a product's

NONCONFIDENTIAL

components to a third country for completion or assembly before export to the United States. Congress anticipated this possibility in 19 U.S.C. § 1677j(b). . . .").

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the Department's <u>Final Determination</u> is supported by substantial evidence and in accordance with law.  Accordingly, this Court should deny Hanon's Motion for Judgment on the Agency Record and sustain the Department's <u>Final Determination</u> in its entirety.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  October 8, 2024

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, setting the word

limitation of Response Briefs to 14,000 words, counsel for Defendant-Intervenors certifies that

the attached Response Brief contains 10,258 words, including footnotes. The word count

certification is made in reliance on the word-count feature contained in Microsoft 365 -

Enterprise.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  October 8, 2024