## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| HANON SYSTEMS ALABAMA CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and ITS INDIVIDUAL MEMBERS, <br><br> *Defendant-Intervenors.* | Court No. 24-00013 |

### PLAINTIFF HANON SYSTEMS ALABAMA CORP.'S REPLY BRIEF

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965

Dated: November 5, 2024

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 1

   A. Defendant and Defendant-Intervenor's Standard of Review Is Improper ........................... 1

   B. Commerce's Application of "Minor or Insignificant" is Flawed ........................................ 3

   C. Overwhelming Evidence Demonstrates that the Process of Assembly or Completion in South Korea is Not Minor or Insignificant ............................................................................. 5

      1.      Commerce Erred in Finding that the Nature of the Production Process is Minor or Insignificant ........................................................................................................................ 6

      2.      Commerce Erred in Finding That The Value of Processing Performed in South Korea Represents a Small Proportion of the Value of the Merchandise Imported Into the United States ........................................................................................................................ 8

   D. Commerce's Weighing of the "Minor or Insignificant Factors" is Contrary to Law ........ 11

   E. Commerce's Analysis of Patterns of Trade Information is Not Supported by Substantial Evidence ................................................................................................................................... 14

III.    CONCLUSION ................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l trade 2021)4, 5, 11

*Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023).......................... 4, 5

*Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) ............................................................ 2

*Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) ............. 14

*Fujitsu Gen. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996) ....................................................... 1

*Inmax SDN v. United States*, 277 F. Supp. 3d 1367 (Ct. Int'l Trade 2017)................................. 14

*Loper Bright Enters v. Raimondo*, 144 S. Ct. 2244 (2024) .................................................. passim

**Statutes and Regulations**

19 U.S.C. § 1677j(b)(1) ............................................................................................................ 3, 6

19 U.S.C. § 1677j(b)(1)(E) ........................................................................................................... 3

19 U.S.C. § 1677j(b)(2) ...................................................................................................... 3, 11, 12

**Other Authorities**

Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (S. Rept.) (1987) .............................................................................................................................. 2

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, Vol. I (1994) ........................................................................................ 12, 13

**Administrative Decisions**

*Ferrovanadium and Nitrided Vanadium From the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg. 46,712 (Aug. 6, 2012), and accompanying Issues and Decision Memorandum ................................................... 9

## I.    INTRODUCTION

Plaintiff Hanon Systems Alabama Corp. ("Hanon" or "Plaintiff"), by and through its attorneys, respectfully submits the following brief in reply to response briefs from Defendant United States, ECF Nos. 22 and 23 ("Def. Br."), and Defendant-Intervenors the Aluminum Association Trade Enforcement Working Group and its individual members JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products, LLC ("Defendant-Intervenors"), ECF Nos. 25 and 26 ("Def.-Int. Br.").

## II.    ARGUMENT

### A.    Defendant and Defendant-Intervenor's Standard of Review Is Improper

Defendant claims that tremendous deference is owed to Commerce because of its expertise in administrating antidumping laws.  Def. Br. at 14-15, citing *Fujitsu Gen. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996).  In relying on *Fujitsu*, Defendant maintains that "'{t}his deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statute itself where ambiguous.'"  *Id*.  Defendant fails to acknowledge that the standard set forth in *Fujitsu* is no longer applicable due to the Supreme Court's *Loper Bright Enters v. Raimondo*.  In *Loper*, the Supreme Court stated:

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.  Careful attention to the judgment of the Executive Branch may help inform that inquiry.  And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.  But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Loper Bright Enters v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  In light of the Supreme Court's *Loper* decision, the standard of review for this Court is to apply all relevant tools in interpreting Commerce's antidumping statute to conclude which interpretation is the best.  *Id*. at 2266.  As the Supreme Court provided, "{i}t therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best.  In the business of statutory interpretation, if it is not the best, it is not permissible." *Id*. at 2266.

While Defendant continues to maintain that Commerce is owed substantial deference based on its "technical expertise in identifying, selecting and applying methodologies," Def. Br. at 15, the agency's "expertise," the technical subject matter of the statute, its interpretation, and the methodologies in administrating the statue were the exact rationale behind *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), which *Loper* overruled.  The Supreme Court in *Loper* found that "even when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given it to the agency.  Congress expects courts to handle technical statutory questions." *Loper*, 144 S. Ct. at 2267.

Congress did not grant express authority for Commerce to interpret the anticircumvention statute.  Yet, Defendant submits that "Commerce possess 'substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter' and that Commerce use its authority 'to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws.'"  Def. Br. at 5, *citing* Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (S. Rept.), at 100 (1987).  Defendant's arguments do not stand as such standard of

review was invalidated due to *Loper*.  The circumvention statute does not delegate unfettered authority to Commerce.  The current antidumping statute provides that Commerce must determine whether action is appropriate, but only if the criteria set forth in 19 U.S.C. § 1677j(b)(1)(A) – (D) are met.  19 U.S.C. § 1677j(b)(1)(E).  Commerce's statutory interpretations under this circumvention law are not binding.  The Court owes no deference to Commerce's interpretations under this statute.

**B.  Commerce's Application of "Minor or Insignificant" is Flawed**

Commerce's *Final Determination* is fatally flawed as a result of its misapplication of the statutory standard set forth in criterion (C) of 19 U.S.C. § 1677j(b)(1).  Specifically, Commerce erred in its analysis addressing whether the Korean manufacturing process could be considered "minor or insignificant."  Commerce must consider certain factors in determining whether the assembly or completion in the inquiry country is minor or insignificant. 19 U.S.C. § 1677j(b)(2).  Commerce is tasked with collecting factors on the level of investment, level of research and development, nature of production, production facilities, and the value of the processing the foreign country, and the value of the finished merchandise imported into the United States.  *Id*.  Commerce then applies certain methodologies in interpreting the statute to determine what is "minor or insignificant."  As such, the standard for this Court in assessing Commerce's methodology and statutory interpretation in this case is whether it was the "best" methodology. *Loper*, 144 S. Ct. at 2266 ("if not the best, it is not permissible.").

As Plaintiff pointed out in its moving brief, Commerce's application of "minor or insignificant" is contrary to the plain meaning of the statutory language.  Pl. Br. at 15. Defendant submits that "Hanon's arguments amount to little more than a dispute that Commerce improperly found that record evidence demonstrated the production process was minor or insignificant within the meaning of the statute."  Def. Br. at 16.  First, while Commerce does

play a fact-finding role, Commerce's facts must still pass both the reasonableness and substantial evidence tests, which it does not in this instance. Even if one acknowledges that Commerce is the factfinder and/or the court will not reweigh the evidence, Commerce's determinations must still be based on actual evidence of record. A statutory interpretation or particular methodology does not establish a fact.

Second, Defendant misunderstands Hanon's arguments. Hanon's arguments are based on the statutory interpretation of what constitutes minor and insignificant. As set forth in briefing, a plain language reading of the statute of the definition of "minor or insignificant" processing in a third country is to apply in instances in which the third-country processing is immaterial or unimportant. Pl. Br. at 15. The plain language of the statute and the legislative intend support a narrow interpretation of the statutory language defining "minor" and "insignificant." Commerce's *Final Determination* cannot be said to adopt a narrow interpretation in light of the administrative record before it.

Defendant cites to *Al Ghurair Iron & Steel LLC* to support the position that Commerce evaluated whether the particular facts of this circumvention inquiry met the statutory standard for what is minor and insignificant. Def. Br. at 17, citing *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l trade 2021) (*Al Ghurair I*), aff'd, 65 F.4th 1351, 1359-61 (Fed. Cir. 2023) (*Al Ghurair II*); *see also* Def. Int. Br. at 15. The Federal Court's *Al Ghurair* decision does not stand under *Loper*. Under *Loper*, the methodology that Commerce employs to determine whether the inquiry merchandise was minor and insignificant is for the Court to decide *de novo*.

In *Al Ghurair*, the plaintiff argued that Commerce erred in finding its production operations insignificant. The Federal Circuit rejected Al Ghurair's argument as "improper

attempts to relitigate the facts on appeal." *Al Ghurair*, 65 F.4th at 1360-61. However, the decision on this issue was based on the CIT's application of *Chevron* deference to Commerce's methodologies in reaching the conclusion that Al Ghurair's production operations were "insignificant." The CIT in the lower court decision stated:

> Based on the absence of a designated methodology, Commerce has the discretion to decide on its own method of analysis. *See Timken Co. v. United States*, 38 CIT , n.7, 968 F. Supp. 2d 1279, 1286 n.7 (2014), *aff'd*, 589 F. App'x 995 (Fed. Cir. 2015) (when a statute "places no other limits on the methodologies that Commerce may employ . . ., {it} leav{es} Commerce discretion as to the choice of methodologies"). The statute does not provide for a specific minimum or maximum level of investment to qualify as minor or insignificant, so Commerce has the discretion to adapt to different factual circumstances to address circumvention.

*Al Ghurair*, 536 F. Supp. 3d at 1368. In light of *Loper*, the Federal Circuit's decision in *Al Ghurair* cannot stand.

Here, as discussed in detail in opening briefs, Commerce's application of "minor or insignificant" is contrary to the plain meaning of the statutory language. The Court must decide whether the methodology Commerce applied in determining whether aluminum foil production in South Korea is minor and insignificant is the "best" methodology. *Loper*, 144 S. Ct. at 2267 ("In the business of statutory interpretation, if it is not the best, it is not permissible."). As it is contrary to the plain statutory language, here the Court owes no deference to Commerce's broad application of "minor and insignificant." Commerce's methodology applied in determining whether the aluminum foil production in South Korea is "minor or insignificant" is not the "best" methodology. It is therefore not permissible.

### C. Overwhelming Evidence Demonstrates that the Process of Assembly or Completion in South Korea is Not Minor or Insignificant

The statute sets out five statutory criteria that Commerce must consider in determining whether aluminum foil completed or assembled in Korea may be included within the AD and

CVD orders from China. *See* 19 U.S.C. § 1677j(b)(1); *see also* Pl. Br. at 13-16. Of the five factors listed in the statute for Commerce to consider in reaching its determination, Commerce found that a majority of them weighed against finding that the process was minor or insignificant. Commerce found, however, that the nature of production and the value of processing performed by both Dong-IL and Lotte in South Korea represents a small proportion of the value of the inquiry merchandise imported into the United States were both minor or insignificant, which weighed in favor of Commerce's affirmative circumvention determination. As set forth in Hanon's opening brief, these determinations are fundamentally flawed and unreasonable.

## 1. Commerce Erred in Finding that the Nature of the Production Process is Minor or Insignificant

Commerce's *Final Determination* concerning the nature of the production process is unsupported by substantial evidence and not in accordance with law. Contrary to Defendant's arguments, Hanon raises serious issues with Commerce's analysis and highlights inconsistencies in the underlying administrative record and does not merely "request{} that this Court reweigh record evidence." Def. Br. at 18. As set forth in Hanon's opening brief, the administrative record provides evidence of the physical transformations that occur due to Korean processing, which results a new and distinct product suitable for its intended use. Pl. Br. at 18. Commerce's *Final Determination* provided the following:

> The petitioners reason that the aluminum foil production process in Korea does not result "in the complete transformation of the chemical and physical properties of the product" because rolling and finishing operations do not involve a complete transformation of the chemical and physical properties of the aluminum strip input. With regard to physical properties (and, though barely mentioned here, mechanical properties), the operations of the respondents do change the properties of the input. We are not persuaded that the changes in the product amount to a "substantial transformation;" our substantial transformation test differs from,

> and is in some manners more rigorous than, that of CBP's country
> of origin test.   However, we see nothing in the record which
> indicates the possibility of any substantial change – or any change
> at all – in the chemical properties.  The reduction by rolling, along
> with the other processes performed by Dong-IL and Lotte, cannot
> change the fact that an ingot or billet of a subject aluminum alloy
> has the same chemical makeup as the plate, sheet, or strip made
> from that ingot or billet, as does the foil made from the sheet or
> strip.   We consequently reject the positing of a "complete
> transformation of the chemical and physical properties of the
> product," as there is not (and, we believe, cannot be) any evidence
> in the record of any change in the chemical properties.

Final I&D Memorandum at 24 (internal footnotes omitted), P.R. 263.  Contrary to assertions

otherwise, Hanon does not misunderstand Commerce's conclusions with respect to changes in

physical properties.  Def. Br. at 19.  While Commerce found that the physical and mechanical

properties have changed, Commerce did not find these physical changes rendering a new and

distinct product suitable for its intended use enough of a product change.  *See e.g.*, Pl. Br. at 17-

18 (citing to Dong-IL IQR at 16-20, P.R. 131; C.R. 42; Lotte's IQR at 19, 20, P.R. 134; C.R. 49).

Nor did Commerce address that these material inputs that undergo this physical change could be

used for a variety of very different end use products that bear no relation to aluminum foil and

any related downstream products.

Commerce's determination regarding the nature of the production process focuses on the

chemical properties rather than the physical and mechanical properties of the product.  The Final

I&D Memorandum provides no clear guidance as to the importance of the chemical properties

over the physical and mechanical properties of the product.  Indeed, Defendant merely concludes

that "Commerce considered the chemical properties *and also* record information about the

change in physical properties and concluded that the change in physical properties (specifically

the rolling of the aluminum input to a thinner gauge) was not substantial *enough* to find that the

nature of the production process weighed in favor of finding the production process is not minor

or insignificant." Def. Br. at 19 (emphasis in original). Yet, the *Final Determination* is devoid of explanation as to why chemical properties rendered the change in physical properties "not substantial enough."

Contrary to the Defendant's assertions, the administrative record does not support Commerce's *Final Determination*. Absent explanation of why a chemical change is required in this instant, Commerce and now Defendant fail to address the absurdity that may result from such analysis. When the Court focuses on the administrative record, sophisticated, significant, and high-level processing occurs in Korea, which requires expensive machinery, well trained, skilled workforce, and mechanical and physical changes that change the product to meet its intended use. *See* Pl. Br. at 17-18. For these reasons, Commerce's findings regarding the nature of processing performed in Korea are not supported by substantial evidence or otherwise in accordance with law.

2. **Commerce Erred in Finding That The Value of Processing Performed in South Korea Represents a Small Proportion of the Value of the Merchandise Imported Into the United States**

Commerce erred in finding that the value of processing performed by both Dong-IL and Lotte in South Korea represents a small proportion of the value of the inquiry merchandise imported into the United States. Final I&D Memorandum at 34, P.R. 263; *see also* Pl. Br. at 20-25. Defendant's arguments that Commerce's determination that the value of the processing performed in Korea represents a small portion of the value of the merchandise imported into the United States also fail. Def. Br. at 22-25. Hanon's arguments concerning the value of processing performed in South Korea is not a mere "difference of opinion" as Defendant contends. *Id.* at 22. Rather, Commerce's calculated percentages for Dong-IL and Lotte for the value of processing performed in South Korea highlight Commerce's unreasonableness. Def. Br. at 22; Pl. Br. at 21; Preliminary Analysis Memorandum for Dong-IL at 4, P.R. 182; C.R. 89;

Preliminary Analysis Memorandum for Lotte at 4, P.R. 184; C.R. 91.  Moreover, Commerce's failure to provide any qualitative explanation concerning this factor renders the determination unsupported by record evidence and contrary to law.  Based on the administrative record, viewed in totality, the value of processing performed in South Korea cannot reasonably be characterized as "minor or insignificant."

Defendant submits that Hanon's reference to *Ferrovanadium from Russia* "supports that Commerce has consistently applied a case-by-case analysis evaluating relevant factual information in each proceeding."  Def. Br. at 24.  Defendant again misunderstands Hanon's arguments.  In *Ferrovanadium and Nitrided Vanadium From the Russian Federation*, Commerce found that 15 to 20 percent value added in the United States did not constitute a "small" proportion pursuant to 19 U.S.C. § 1677j(a)(2)(E) (the corresponding value-added provision for inquiries involving minor assembly or completion in the United States) when those percentages were viewed *in conjunction* with the qualitative changes to the product.  *Ferrovanadium and Nitrided Vanadium From the Russian Federation: Negative Final Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg. 46,712 (Aug. 6, 2012), and accompanying Issues and Decision Memorandum at 12.  In *Ferrovanadium*, Commerce found that the processing in the United States "involves a more extensive and substantial conversion of the merchandise" and that "the value-added ranges we calculated, when viewed in combination with this fundamental alteration of the imported merchandise, are not small."  *Id*.

Here, Commerce's Final I&D Memorandum fails to detail or provide any analysis regarding the qualitative methodology it may have undertaken.  Final I&D Memorandum at 31, P.R. 263.  The value analysis focused solely on the quantitative analysis.  Defendant is inaccurate in stating that "Commerce, however, did not conduct a purely quantitative analysis.

Commerce considered the relevant production process and the specific product at issue when determining whether the percentage values represented a small proportion." Def. Br. at 24, citing Final I&D Memorandum at 31. While Defendant states that Commerce did not conduct a purely quantitative analysis, the Final Issue & Decision Memorandum is devoid of any explanation. The memorandum simply states that "{w}e followed the guidance from *Ferrovanadium from Russia* in the Preliminary Determination and do the same here." Final I&D Memorandum at 31, P.R. 263.

As the statute does not establish rigid numerical cut-offs for whether the value of processing is small, Commerce failed to incorporate a qualitative analysis of the value added in South Korea to determine whether the value added in South Korea was "small." Had Commerce properly analyzed the qualitative factors, Commerce would not have found the value of the process to be minor or insignificant. For example, Commerce found in the Final Issues & Decision Memorandum that the operations of the South Korean "respondents do change the {physical and mechanical} properties of the input." Final I&D Memorandum at 24, P.R. 263. Where Commerce has found that the conversion process was critical for producing a commercially usable product, it also found that the nature of the production process was "significant" under the circumstances. *See* Korean Producers' Case Brief at 16-18, P.R. 213; C.R. 95. Finally, as Plaintiff explained, the quantitative value-added percentage is within the range of percentages that Commerce found not to be small in other cases. Pl. Br. at 21.

Further, Defendant's analysis concerning this Court's review of Commerce's methodology is inconsistent with *Loper*. Defendant provides that "even if the methodology advocated for by Hanon were permissible, absent a clear statutory directive, Commerce is accorded deference in choosing an appropriate methodology." Def. Br. at 25 (citing *Al Ghurair*

*I*, 536 F.Supp.3d at 1374). As detailed above, the reasoning in *Al Ghurair* requires a second look as a result of *Loper* as the foundation of the decision on issue at the Federal Circuit focused issues related to this Court's *Chevron* deference to Commerce's methodologies in reaching the conclusion that Al Ghurair's production operations were "insignificant." *Al Ghurair*, 536 F. Supp. 3d at 1368. Under *Loper*, such analysis would be reviewed by the Court *de novo*.

## D. Commerce's Weighing of the "Minor or Insignificant Factors" is Contrary to Law

In response briefs, the Defendant and Defendant-Intervenors maintain that Commerce's interpretation and application of its statute was both proper and reasonable under 19 U.S.C. § 1677j(b)(2). Def. Br. at 25-26; Def. Int. Br. at 27-28. Defendant-Intervenors argue that Hanon's argument is contrary to the standard of review, Commerce's practice, judicial precedent, and the Statements of Administrative Action. Def. Int. Br. at 27-28. These arguments fail.

First, in assessing whether a process is "minor or insignificant," the statute directs Commerce to take into account:

> (A) the level of investment in the foreign country,
>
> (B) the level of research and development in the foreign country,
>
> (C) the nature of the production process in the foreign country,
>
> (D) the extent of production facilities in the foreign country, and
>
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2). Congress stated that "Commerce will evaluate each of these factors as they exist either in the United States or a third country" and further indicated that "{n}o single

factor will be controlling." Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, Vol. I (1994) ("SAA"), at 893.

In the *Final Determination*, Commerce provided the following in stating that two factors support a finding of circumvention:

> The factors involving the level of investment, the level of R&D, and the extent of the production facilities in {the third country} weigh less heavily in our determination than the factors involving the nature of the production process and the value added in {the third country} because the former relate more broadly to the companies and their facilities, whereas the latter relate more to the production of the inquiry merchandise itself.

Final I&D Memorandum at 32, P.R. 263. The statute provides no such hierarchy.

Under 19 U.S.C. § 1677j(b)(2), Commerce builds an administrative record, collecting evidence concerning the respondents' level of investment, nature of the production, production processes, the value of the processing in the foreign country and the value of the finished merchandise imported into the United States. *Id*. Commerce then employs certain methodologies in interpreting the statute to determine what is "minor or insignificant." As such, Commerce's discretion in selecting a methodology no longer enjoys *Chevron* deference under *Loper*. Defendant-Intervenor improperly states that "{t}he standard of review requires the Court to consider whether Commerce's weighting of the evidence was reasonable." Def. Int. Br. at 27. The standard for the Court in assessing Commerce's methodology and statutory interpretation in this case is whether it was the "best" methodology; "if not the best, it is not permissible." *Loper*, 144 S. Ct. at 2266. The statute purposely has five factors for consideration, each of which is not controlling. The result of this decision renders three of five factors as effectively meaningless. Such an interpretation is not the "best" methodology.

Assuming *in arguendo* that Defendant and Defendant-Intervenor are correct in this standard of review, the administrative record demonstrates that Commerce's methodology applied in weighing the five factors considered in determining "minor or insignificant" was unreasonable.  Commerce relied heavily on its flawed analysis concerning the nature of the production process and value of processing performed in South Korea to find that the process was "minor or insignificant."  Commerce's determination on the production process and value of processing cannot negate the multitude of facts that clearly demonstrate that the production process in South Korea is extensive and sophisticated.

Commerce placed improper decisive weight on these two factors.  The statute requires Commerce to consider five factors in determining whether the process of assembly or completion in the foreign country is minor or insignificant.  Nothing in the text of the statute indicates that the nature of the production process in the foreign country and value of the processing performed in South Korea should be afforded particular importance.  Indeed, Congress indicated that "Commerce will evaluate each of these factors as they exist either in the United States or a third country" and that "{n}o single factor will be controlling."  SAA at 893.  Nothing in the legislative history permits Commerce to afford determinative status to certain statutory factors over others.  Such interpretation is not permissible.  *Loper*, 144 S. Ct. at 2266.

In sum, Commerce's analysis places improper determinative weight on two factors, elevating them above the other factors in a manner that contradicts the plain language of the statute and the Statements of Administrative Action.  Commerce's application of "minor or insignificant" to the facts at hand was far too broad and not consistent with the administrative record in this proceeding.

**E. Commerce's Analysis of Patterns of Trade Information is Not Supported by Substantial Evidence**

Trade data is not a basis for finding circumvention.  As the U.S. Court of International Trade ("CIT") stated in *Columbia Forest* decision:

> The court acknowledges that evidence demonstrates that, since the initiation of the investigation, import volumes of plywood with both veneers of softwood increased drastically compared with plywood with at least one veneer of hardwood.  Although a substitution effect may be indicative of circumvention, it is not a sufficient cause for Commerce to initiate a minor alterations inquiry.

*Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283, 1295 (Ct. Int'l Trade 2019); *see also Inmax SDN v. United States*, 277 F. Supp. 3d 1367 (Ct. Int'l Trade 2017) (where the Court found that production and exports naturally flow to companies with lower AD tax rate burdens).  Both Defendant and Defendant-Intervenor misunderstand the arguments set forth in Hanon's brief.  Hanon does not submit that Commerce must prove intent.  *See e.g.*, Def. Br. at 27.  Defendant and Defendant-Intervenor would have this Court view the aluminum foil industry in a vacuum.  In the *Final Determination*, Commerce failed to tie the trade data beyond mere substitution to circumvention.

In the specific facts before the Court, there was an established manufacturing industry in South Korea unrelated to the *Aluminum Foil Orders*.  Korean Producers' sourcing patterns have not changed as "each of the six Korean Producers has been manufacturing aluminum foil for more than 30 years and, in the case of Lotte for, for 55 years."  Korean Producers' Pre-Preliminary Comments at 6, P.R. 172; C.R. 87.  Indeed, the administrative record demonstrates that "{t}he Korean aluminum foil industry is a direct competitor of the Chinese aluminum foil industry that has made significant investments in time and resources to develop their aluminum foil production, sales, and distribution operations."  *Id*. at 7.  Given the historical trade pattern of

14

Korean aluminum foil, the import of these products into the U.S. is not a new or recent development.  Rather, Korean Producers demonstrated a long-standing presence in the U.S. market.  *Id*.; *see also* Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Lotte's Circumvention Inquiry Questionnaire Response* (Dec. 6, 2022) ("Lotte's IQR"), at 3, 2, 8-9, 10-11, P.R. 134; C.R. 49; Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Lotte's Circumvention Inquiry Supplemental Questionnaire Response* (Jan. 30, 2023) ("Lotte's SQR") at S4-S6, P.R. 165, C.R. 78; *See* Letter from Trade Pacific PLLC to Dep't of Commerce, *Re: Aluminum Foil from the People's Republic of China: Dong-IL's Circumvention Inquiry Questionnaire Response* (Dec. 6, 2022) ("Dong-IL's IQR") at 1-2, P.R. 131; C.R. 42. .

Aluminum foil exports to the U.S. shifting from China to South Korea is merely the rational and foreseeable reaction from the global markets, as the Courts appear to understand. Legitimate and logical business decisions are not evidence that South Korean aluminum foil producers are engaged in circumvention just because the well-established South Korea industry overall increased its participation in international trade.

III.    **CONCLUSION**

In light of the foregoing, Commerce's *Final Determination* is not supported by substantial evidence or in accordance with law.  Plaintiff respectfully requests that this Court hold that Commerce's *Final Determination* was not supported by substantial evidence and otherwise not in accordance with law.  Plaintiff respectfully requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:     /s/ Kristen Smith
        Kristen Smith
        Sarah E. Yuskaitis

        **SANDLER TRAVIS & ROSENBERG, P.A.**
        1300 Pennsylvania Avenue, N.W.
        Suite 400
        Washington, DC 20004
        Tel: (202) 730-4965
        Fax: (202) 842-2247

        *Counsel to Hanon Systems Alabama Corp.*

Dated: November 5, 2024

<u>**Certificate of Compliance with Chamber Procedure 2(B)(1)**</u>

The undersigned hereby certifies that the foregoing brief contains 4,605 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, and certificates of counsel, and counsel's signature block, and therefore complies with the maximum 7,000-word count limitation set forth in the Standard Chamber Procedures of the U.S. Court of International Trade.

By:    <u>/s/ Sarah E. Yuskaitis</u>
       *Counsel to Hanon Systems Alabama Corp.*

Dated: November 5, 2024