Slip Op. 25-94

## UNITED STATES COURT OF INTERNATIONAL TRADE

HANON SYSTEMS ALABAMA CORP.,

     Plaintiff,

v.

UNITED STATES,

     Defendant,

     and,

ALUMINUM ASSOCIATION TRADE
ENFORCEMENT WORKING GROUP
AND ITS INDIVIDUAL MEMBERS,

     Defendant-Intervenors.

Before: Joseph A. Laroski, Jr., Judge

Court No. 24-00013

## OPINION

[Denying plaintiff's motion for judgment on the agency record and sustaining in full the final determination of the U.S. Department of Commerce.]

Dated: July 21, 2025

William Francis Marshall, Sandler, Travis & Rosenberg, PA, of New York, NY, argued for plaintiff Hanon Systems Alabama Corp. With him on the briefs were Kristen S. Smith, Mark D. Tallo, and Sarah E. Yuskaitis.

Christopher A. Berridge, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant United States. JonZachary Forbes, Of Counsel, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C. also argued for defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel, arguing for defendant, was

JonZachary Forbes, Of Counsel, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Joshua R. Morey, Kelley Drye & Warren, LLP, of Washington, D.C., argued for Defendant-Intervenors Aluminum Association Trade Enforcement Working Group and its Individual Members.  Matthew G. Pereira, Kelley Drye & Warren, LLP, of Washington, DC, also argued for Defendant-Intervenors Aluminum Association Trade Enforcement Working Group and its Individual Members.  With them on the brief were John M. Herrmann, II and Paul C. Rosenthal.

Laroski, Judge:  The action before the court is a motion for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2 filed by plaintiff Hanon Systems Alabama Corp. ("Hanon").  Pl. Mot. for J. on the Agency R. ("Hanon. Br."), ECF No. 21.  Hanon challenges the U.S. Department of Commerce's ("Commerce") final affirmative determination concerning the anticircumvention inquiry related to the antidumping and countervailing orders on certain aluminum foil from the People's Republic of China ("China"), conducted pursuant to section 781(b) of the Tariff Act of 1930, as amended ("the Act"), and 19 C.F.R. § 351.225(g). See Antidumping and Countervailing Duty Orders on Certain Aluminum Foil from the People's Republic of China: Final Affirmative Determinations of Circumvention with Respect to the Republic of Korea and the Kingdom of Thailand, 88 Fed. Reg. 82,824 (Dep't of Commerce Nov. 27, 2023), accompanying Issues and Decision Memorandum (Dep't of Commerce Nov. 17, 2023) ("Final Determination" or "IDM").

Hanon challenges Commerce's Final Determination on five grounds.  Hanon argues that: (1) Commerce's determination concerning the nature of the production process in the Republic of Korea ("Korea") did not correctly apply the statutory "minor or insignificant" standard; (2) Commerce's inquiry regarding the nature of

the production process in Korea ignored record evidence; (3); Commerce's finding

regarding the level of value added to the imported merchandise through processing

in Korea is flawed because Commerce applied an overbroad definition of "minor or

insignificant" and failed to conduct a proper qualitative analysis of this factor; (4)

Commerce improperly placed greater weight on two of the five factors laid out in

section 781(b)(2) of the Act (19 U.S.C. § 1677j(b)(2)) in its "minor or insignificant"

analysis; and (5) Commerce's determination concerning patterns of trade is flawed

and failed to address record evidence.  See Hanon Br. at 2–3.

Defendant United States ("the Government") and defendant-intervenors

Aluminum Association Trade Enforcement Working Group and its Individual

Members[1] (collectively, "Association Members") maintain that Commerce's

conclusions are supported by substantial evidence and otherwise lawful.  Def. Resp.

in Opp'n to Pl. Mot. for J. on the Agency R. ("Gov. Br."), ECF No. 23; Def.-Int.'s

Resp. in Opp'n to Pl. Mot. for J. on the Agency R. ("DI Br."), ECF No. 26.

For the forgoing reasons, the court denies plaintiff's motion and sustains

Commerce's Final Determination.

## BACKGROUND

On April 19, 2018, Commerce issued antidumping and countervailing duty

orders on certain aluminum foil from China.  Certain Aluminum Foil from the

People's Republic of China: Amended Final Determination of Sales at Less Than

Fair Value and Antidumping Duty Order, 83 Fed. Reg. 17,362 (Apr. 19, 2018)

---

[1] "Individual Members" include: JW Aluminum Company, Novelis Corporation, and Reynolds
Consumer Products, LLC.

("Aluminum Foil AD Order"); Certain Aluminum Foil from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 17,360 (Apr. 19, 2018) ("Aluminum Foil CVD Order") (collectively, the "Orders"). On July 18, 2022, pursuant to 19 C.F.R. § 351.226(b), Commerce self-initiated a country-wide circumvention inquiry to determine whether imports of certain aluminum foil ("aluminum foil") completed in Korea using Chinese-origin aluminum inputs are circumventing the Orders. See Certain Aluminum Foil from the People's Republic of China: Initiation of Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders, 87 Fed. Reg. 42,702, P.R. 22 (July 18, 2022) ("Initiation Notice"); see also Memorandum, Initiation of Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders, P.R. 2 (July 11, 2022) ("Initiation Memorandum").

At the time of initiation, Commerce defined the inquiry merchandise for the purposes of the circumvention proceeding as

> [A]luminum foil assembled and completed in Korea and Thailand, using Chinese-origin aluminum foil and/or sheet, that is subsequently exported from Korea and Thailand to the United States. Specifically, Commerce placed information on the administrative record, as attachments to its Initiation Memorandum, that indicates aluminum foil inputs produced in China undergo further processing in Korea and Thailand before being exported to the United States. Commerce intends to determine as part of this circumvention inquiry whether or not that further processing in Korea and Thailand is minor or insignificant and otherwise meets the circumvention criteria set forth in section 781(b) of the Act.

Initiation Notice, 87 Fed. Reg. at 42,702. The period of the inquiry was April 1, 2017, through December 31, 2021. Id.; PDM at 5.

On August 11, 2022, Commerce issued quantity and value ("Q&V")

questionnaires to Korean producers and exporters of aluminum foil for purposes of

respondent selection.  See Quantity and Value Questionnaire for Circumvention

Inquiries with Respect to the Republic of Korea and the Kingdom of Thailand, P.R.

39 (Aug. 11, 2022) ("Q&V Questionnaire").  Korean producers, including Dong-IL

Aluminum Co., Ltd. ("Dong-IL") and Lotte Aluminum Co., Ltd. ("Lotte"), filed timely

responses to the Q&V Questionnaire.  See id.  On October 12, 2022, Commerce

selected Dong-IL and Lotte as mandatory respondents in the circumvention inquiry

for Korea based on reported Q&V data.  See Respondent Selection Memorandum,

C.R. 38, P.R. 106 (Oct. 11, 2022).  Both mandatory respondents filed timely

responses to Commerce's questionnaires and requests for information.  See Dong-

IL's Circumvention Inquiry Questionnaire Response, C.R. 42, P.R. 131 (Dec. 6,

2022) ("Dong-IL IQR"); Lotte's Circumvention Inquiry Questionnaire Response, C.R.

49, P.R. 134 (Dec. 6, 2022) ("Lotte IQR"); Dong-IL Circumvention Inquiry

Supplemental Questionnaire Response, C.R. 61, P.R. 159 (Jan. 20, 2023) ("Dong-IL

SQR"); Lotte Circumvention Inquiry Supplemental Questionnaire Response, C.R.

78, P.R. 165 (Jan. 30, 2023) ("Lotte SQR").

On March 15, 2023, Commerce issued its preliminary affirmative

determination of circumvention.  See Antidumping and Countervailing Duty Orders

on Certain Aluminum Foil from the People's Republic of China: Preliminary

Affirmative Determination of Circumvention with Respect to the Republic of Korea

and the Kingdom of Thailand, 88 Fed. Reg. 17,177, P.R. 186 (Dept. of Commerce

Mar. 22, 2023), accompanying Preliminary Decision Memorandum, P.R. 181

("Preliminary Determination" or "PDM").  Commerce preliminarily found that the

aluminum foil, which was manufactured in Korea using inputs from China,

circumvented the Orders.  Id.

In reaching its preliminary affirmative circumvention determination,

Commerce conducted its inquiry and analysis in accordance with the framework

proscribed by section 781 of the Act.  Id. at 7–9.  Commerce preliminarily found

that: (i) the inquiry merchandise imported into the United States from Korea is of

the same class or kind of merchandise subject to the Orders, (ii) aluminum foil

imported into the United States was completed in Korea from Chinese-origin

aluminum foil and aluminum sheet, (iii) the process of assembly or completion in

Korea is minor or insignificant, (iv) the value of the merchandise produced in China

that was used to produce inquiry merchandise in Korea represents a significant

portion of the total value of the merchandise exported to the United States, and (v)

the patterns of trade and sourcing patterns weighed in favor of an affirmative

finding of circumvention.  Of particular relevance for the purpose of the court's

review are Commerce's findings with respect to items (iii) and (v) above.

Regarding item (iii), Commerce considered five factors under section 781(b)(2)

of the Act to find that the process of assembly or completion of inquiry merchandise

in Korea was minor or insignificant for the mandatory respondents.  Id. at 10–11.

Commerce found that three of the five factors in the Act weighed against a finding

that the process of assembly or completion in Korea was minor or insignificant: (1)

the mandatory respondents' level of investment in Korea, (2) the mandatory

respondents' level of research and development ("R&D") in Korea, and (3) the extent

of mandatory respondents' production facilities in Korea.  Id. at 11–14. Commerce

preliminarily found that the remaining two factors – (1) the nature of the

production process in Korea and (2) whether the value of processing in Korea

represents a small proportion of the value of the merchandise imported into the

United States – weighed in favor of finding that the process of assembly or

completion in Korea was minor or insignificant.  Id. at 13–14.

        Commerce considered all five factors to conclude, based on a totality of the

circumstances in this inquiry, that the production of inquiry merchandise in Korea

was minor or insignificant for the mandatory respondents.  Id. at 18.

        In reaching its conclusion, Commerce's analysis accorded differing weight to

each of the five factors.  Id. at 15.  Commerce weighed the factors involving the level

of investment, the level of R&D, and the extent of the production facilities in Korea

less heavily than "the factors involving the nature of the production, and the value

added in Korea because the former relate more broadly to the mandatory

respondents and their facilities, whereas the latter relate more to the production of

inquiry merchandise itself."  Id.

        Pursuant to Commerce's invitation to submit comments on the Preliminary

Determination, interested parties submitted case and rebuttal briefs between May

1, 2023, and May 25, 2023.  On July 19, 2023, Commerce held a public hearing.

Commerce issued its Final Determination on November 17, 2023, reaffirming the

reasoning and conclusions reflected in its Preliminary Determination.  IDM at 3.

    In its Final Determination, Commerce continued to find that the aluminum

foil products at issue were circumventing the Orders.  IDM at 1.  In response to

interested party comments made at the briefing stage, Commerce provided further

explanation in support of its conclusions.  Commerce did not modify any conclusions

from the Preliminary Determination.  Id.

## STANDARD OF REVIEW

    This court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28

U.S.C. § 1581(c).  Under section 1516a(b)(1)(B)(i), the court will hold unlawful

Commerce's determination if it is found "to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law."  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  The question

for the court is not whether we agree with Commerce's decision, nor whether we

would have reached the same result as Commerce had the matter come before us for

decision in the first instance, but whether Commerce's determination is reasonable

and supported by the record.  Nippon Steel Corp. v. United States, 458 F.3d 1345,

1352 (Fed. Cir. 2006) (citing U.S. Steel Grp. v. United States, 96 F.3d 1352, 1357

(Fed. Cir. 1996); Altx, Inc. v. United States, 370 F.3d 1108, 1121 (Fed. Cir. 2004).

    The court must review the record in its entirety, "including whatever fairly

detracts from the substantiality of the evidence."  Atlantic Sugar, Ltd. v. United

States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  Still, the possibility of drawing two

inconsistent conclusions from the record "does not prevent an administrative

agency's finding from being supported by substantial evidence."  Consolo v. Fed.

Mar. Comm'n, 383 U.S. 607, 620 (1966) (citation omitted).  Under the substantial

evidence standard, the court should uphold the agency determination if "its factual

findings are reasonable and supported by the record as a whole, even if there is

some evidence that detracts from the agency's conclusion."  Ashley Furniture

Indus., LLC v. United States, 750 F. Supp. 3d 1329, 1338 (CIT 2024).

## LEGAL FRAMEWORK

Circumvention inquiries are governed by section 781 of the Act.  19 U.S.C.

§ 1677j.  When the process of assembly or completion of the merchandise occurs in a

third country other than the country named in the AD/CVD order, the relevant

provision is 781(b) of the Act.  To find that imported merchandise completed in a

third country falls within the scope of the AD/CVD order, Commerce must show

that the merchandise satisfies the criteria under section 781(b)(1) of the Act.

Relevant for this case is section 781(b)(1)(C) of the Act ("the process of

assembly or completion in the foreign country referred to in subparagraph (B) is

"minor or insignificant").  To find circumvention under subparagraph (B),

Commerce must determine that the process of assembly or completion in the foreign

country is "minor or insignificant."  19 U.S.C. § 1677j(b)(1)(C).  In determining

whether the process of assembly or completion is minor or insignificant, Commerce

considers five factors: (1) the level of investment in the foreign country; (2) the level

of research and development in the foreign country; (3) the nature of the production

process in the foreign country; (4) the extent of production facilities in the foreign

country; and, (5) whether the value of processing performed in the foreign country

represents a small proportion of the value of the merchandise imported into the

United States.  19 U.S.C. § 1677j(b)(2).  No single factor under section 781(b)(1)(C)

of the Act controls. 19 U.S.C. § 1677j(b)(1)(C).

Under section 781(b)(3), in "determining whether to include merchandise

assembled or completed in a foreign country in a countervailing duty order or an

antidumping duty order," Commerce is required to take into account the following

additional factors: (1) the pattern of trade, including sourcing patterns; (2) whether

the manufacturer or exporter of the merchandise is affiliated with the person who

uses the merchandise to assemble or complete in the foreign country the

merchandise that is subsequently imported into the United States; and (3) whether

imports into the foreign country of the merchandise have increased after the

initiation of the investigation which resulted in the issuance of such order or

finding.  19 U.S.C. § 1677j(b)(3).

## DISCUSSION

I.    **Whether Commerce's application of the "minor or insignificant" standard to section (c) of the Act and its subfactors under section 781(b)(2) is supported by substantial evidence and otherwise lawful**

a.  Party Arguments

Hanon argues that Commerce's application of the "minor or insignificant"

standard to the circumvention statute is legally flawed because it is overbroad and

inconsistent with the administrative record.  Hanon Br. at 13, 16.  Hanon references

dictionary definitions of "minor" and of "insignificant" to argue that "based on the plain language of the statute, 'minor or insignificant' processing in a third country is to apply in instances in which the third-country processing is immaterial or unimportant." Id. at 15 (citing Minor, MERRIAM-WEBSTER DICTIONARY available at https://www.merriam-webster.com/dictionary/minor (last accessed Jul. 8, 2025); Insignificant, MERRIAM-WEBSTER DICTIONARY available at https://www.merriam-webster.com/dictionary/insignificant (last accessed Jul. 8, 2025)). The legislative history, Hanon contends, "reflects Congressional intent to focus on third country manufacturing operations amounting to no more than the assembly or completion of the merchandise subject to an AD/CVD order. Id. at 16 (invoking the Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc No. 103-316 (1994) ("SAA") to show that the role of the circumvention statute is to combat the establishment of so-called "screwdriver" assembly operations).

The Government responds that Hanon's interpretation of the statute is misguided because the statute lays out with clarity the steps Commerce must take in its evaluations, and the SAA directs Commerce on how to consider those steps. Gov. Br. at 16. Hanon's attempt to limit the circumvention provisions to combatting "screwdriver operations," the Government argues, runs contrary to the more fundamental goal of the circumvention provisions: "to broaden the scope of available remedies." Id. at 17–18 (citing the SAA at 892).

Hanon also argues that that the Supreme Court's decision in Loper Bright Entrs. v. Raimondo strips Commerce of any deference to interpret the

circumvention statute.  Hanon Br. at 4 ("[u]nder Loper [Bright], the methodology that Commerce employs [here] is for the [c]ourt to decide de novo") (citing 603 U.S. 369 (2024)).  Hanon further contends that Loper Bright requires this court to decide on the 'best' methodology Commerce should apply in determining whether the aluminum foil production in Korea is minor or insignificant because the Supreme Court observed that "in the business of statutory interpretation, if it is not the best, it is not permissible."  Hanon Reply at 5 (citing Loper Bright, 603 U.S. at 2267).

     b.  Legal Framework and Analysis

Hanon's argument is without merit.[2]  Although the meaning of a statutory term is a legal question, see Loper Bright, 603 U.S. at 391–92, Loper Bright makes clear that Congress may "leave [] agencies with flexibility" by using open ended terms such as "reasonable" or "appropriate."  603 U.S. at 395; see also Garg Tube Exp. LLP v. United States, F. Supp. 3d 1355, 1366–67 (concluding the phrase "differ significantly" is an open-ended term akin to "reasonable" or "appropriate"); Kisor v. Wilkie, 588 U.S. 558, 632 (2019) (Gorsuch, J., concurring) (observing that when regulations "employ broad and open-ended terms like "reasonable," "appropriate,"

---

[2] Hanon sets forth the proposed interpretation of the statutory terms "minor or insignificant" as "immaterial or unimportant" based on the dictionary definitions of "minor" ("inferior in importance, size, or degree: comparatively unimportant") and "insignificant" ("not significant: such as (a) lacking meaning or import; (b) small in size, quantity, or number.")  Hanon Br. at 15 (citation omitted).  Hanon provides no explanation for excluding certain aspects of these definitions from its proposed interpretation, such as the comparative nature of the term minor.  More importantly, Hanon fails to explain how its proposed interpretation differs from or alters Commerce's consideration of the five factors under the Act.  See 19 U.S.C. § 1677j(b).  Hanon characterizes its challenge as a matter of statutory interpretation, but its arguments target Commerce's *application* of the five statutory factors.  See Hanon Br. at 15, 16 ("The plain language and the legislative intent support a narrow interpretation of the statute.  A narrow *application* is proper . . . .") (emphasis added).

"feasible," or "practicable," "courts allow an agency to reasonable exercise its
discretion to choose among the options allowed by the text of the rule.")

As the Supreme Court recently observed in the context of the National
Environmental Protection Act, "courts should afford substantial deference and
should not micromanage [] agency choices so long as they fall within a broad zone of
reasonableness" when the agency faces "fact-dependent, context-specific, and policy-
laden choices about the depth and breadth of its inquiry . . . ." Seven County
Infrastr. Coal. v. Eagle County, 145 S. Ct. 1497, 1504, 1513 (2025).  Even Loper
Bright acknowledges that statutes may empower agencies to make fact-based
determinations.  603 U.S. at 391–392 (discussing Gray v. Powell, 314 U.S. 402
(1941); NLRB v. Hearst Publications, Inc., 322 U.S. 111 (1944)).  The fact-intensive
flexibility afforded by Congress here is confirmed by the language of the statute,
which articulates criteria by which Commerce conducts the fact-bound analysis to
determine minor or insignificant processing.  19 U.S.C. § 1677j(b)(2).  The court
considers Commerce's approach to the statutory factors and the evidentiary record
for substantial evidence – that is, whether Commerce reasonably applied the law to
the facts.  See, e.g., Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

Here, Commerce applied the factors set forth in the Act reasonably.  Under
section 781(b) of the Act, "Commerce may include imports of merchandise
assembled or completed in a third country within the scope of an order . . . if: (c) the
process of assembly or completion in the foreign country is minor or insignificant."
19 U.S.C. § 1677j(b).  Section 781(b)(2) requires that Commerce consider five

subfactors to determine whether, based on the totality of the particular circumstances presented by the inquiry, whether the process of assembly or completion in the foreign country is minor or insignificant.  19 U.S.C. § 1677j(b)(2). As discussed in more detail below, Commerce reasonably and properly followed the statutory framework set forth in the Act.  See 19 U.S.C. § 1677j(b)(2)(A)–(E); see PDM at 10–15; see also IDM at 32.

Finally, Hanon's argument that the SAA supports narrowing the scope of the circumvention statute to "third country manufacturing operations amounting to no more than the assembly or completion of the merchandise subject to an AD/CVD order," Hanon Br. at 16, or to "screwdriver operations," ignores the context in which "screwdriver operations" are mentioned in the SAA.  The SAA provides that one goal in the text of the Act is to address "screwdriver operations" that may be circumventing AD/CVD orders, but it is not the *only* goal.  SAA at 898.  Rather, the SAA explains that "the overall thrust of section 230 of the bill [] is to focus the anticircumvention inquiry on the question of whether minor or insignificant assembly or completion is taking place," SAA at 894, and that "sections 781(a)(2) and 781(b)(2)" list the five factors to determine whether assembly or completion is minor or significant.  SAA at 894.  The SAA reinforces that Commerce must consider these five factors, implementing a fact-bound determination, to find minor or insignificant assembly or completion.  Nowhere does the SAA limit the application of the statute to situations like a "screwdriver operation."

II.    **Whether Commerce's analysis of the nature of production factor is supported by substantial evidence and otherwise lawful**

a.  Party Arguments

Hanon argues that Commerce's analysis of the nature of the production process in Korea is flawed because "Commerce failed to accurately weigh and consider the importance of Korean operations and their transformative impact on the final end product."  Hanon Br. at 17 (citing IDM at 23–25).  Hanon contends that the administrative record demonstrates that high-level processing occurs in Korea utilizing a trained and skilled workforce.[3]  Hanon Br. at 17–18 (citing Dong-IL IQR at 19; Lotte IQR at 19, 20).  For example, the annealing process results in "metal [that] is physically transformed into a new and distinct product that differs and is substantially transformed from its raw material inputs."  Hanon Br. at 18. Hanon cites to a previous circumvention determination, Ferrovanadium and Nitrided Vanadium from the Russian Federation ("Ferrovanadium"), to highlight that Commerce found a third-country conversion process to be "critical for producing a commercially usable product," which led Commerce to find that the nature of the production process was not minor or insignificant under the circumstances.  Hanon Br. at 19 (citing Ferrovanadium: Negative Final Determination of Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 46712 (Aug. 6, 2012) ("Ferrovanadium Final Determination"), accompanying Issues

---

[3] Dong-IL reported that manufacturing starts at rolling and includes (1) milling and doubling process (separating and slitting process); (3) annealing process; (4) inspection and quality control; (5) coating process and (6) heavy gauge and gang slitting.  Dong-IL IQR at 16–20; "Lotte reported similar manufacturing."  Hanon Br. at 17 (citing Lotte IQR at 19, 20).

and Decision Memorandum (July 30, 2012) ("Ferrovanadium IDM"), at 9)).  Like

Ferrovanadium, Hanon argues that here, the processing in Korea was necessary to

make the product suitable for its use, which demonstrates that the physical change

occurring in Korea makes the nature of production significant.  Hanon Br. at 20.

  "With no real explanation," Hanon argues, "Commerce . . . simply claimed

that processing was minor and insignificant because the chemical properties of the

product did not change."  Id. at 18.  Yet, Hanon states, the administrative record

demonstrates that the Korean processing renders a new and distinct product, and

that the statute does not require chemical change.  Id.  "Absent explanation of why

a chemical change is required in this instant," Hanon argues, "Commerce and now

Defendant fail to address the absurdity that may result from such analysis."  Hanon

Reply at 8.  Framing Commerce's analysis as solely examining the product for

chemical change, Hanon argues that Commerce acted unreasonably by not

considering the substantial physical change that the product underwent during

processing in Korea.  Id. at 7–8.

  The Government rejects Hanon's argument, contending that "Commerce

provided a robust analysis evaluating whether the nature of the production process

in Korea weighed in favor of finding that the process of assembly or completion in

Korea is minor or insignificant."  Gov. Br. at 18 (citing IDM at 23–25).  First, in

response to Hanon's argument that "Commerce claims that there is no 'physical' or

substantial transformation as there is no change in the chemical properties," the

Government argues that "this is not what Commerce said."  Gov. Br. at 19 (citing

Hanon Br. at 18).  The Government emphasizes that "Commerce considered the chemical properties *and also* record information about the change in physical properties and concluded that the change in physical properties (specifically the rolling of the aluminum input to a thinner gauge) was not substantial *enough . . . .*" Gov. Br. at 20 (citing <u>IDM</u> at 24).  The Government dismisses Hanon's reliance on <u>Ferrovanadium</u> as misguided because Hanon ignores that Commerce's circumvention inquiries are based on the totality of circumstances in each individual case and are inherently fact and record specific.  Gov. Br. at 21 (citing <u>Ferrovanadium IDM</u> at 9).  Further, <u>Ferrovanadium</u> did not involve facts comparable to the inquiry here such that Commerce was neither arbitrary nor inconsistent with past practice when it declined to follow <u>Ferrovanadium</u>.  <u>Id.</u>

Association Members emphasize that this court does not retry factual issues or reweigh evidence.  DI Br. at 13–14.  They also highlight that the statute does not specify a particular methodology Commerce must apply in analyzing the nature of the production process in Korea so long as Commerce acts reasonably.  <u>Id.</u> at 14.

b.  Legal Framework and Analysis

In determining whether the process of assembly or completion in a third country is minor or insignificant under section 781(b)(1)(C) of the Act, section 781 (b)(2) directs Commerce to consider five subfactors, one being 781(b)(2)(C), "the nature of the production process in the foreign country."  19 U.S.C. § 1677j(b)(2)(C).

Both Commerce's analysis of the nature of the production process in Korea and its conclusion that this process is less significant than the production process of

the Chinese-origin aluminum strip inputs is reasonable and fully supported by the record.  In the Preliminary Determination, Commerce analyzed Dong-IL's nature of production process in Korea separately from that of Lotte's.  Commerce considered Dong-IL's aluminum foil production process, which involves the following steps: an aluminum strip is rough-milled, then final-milled to reduce thickness and control flatness; doubled between rough and final milling; the doubled layers are separated and cut to meet the customer's desired size; the foil is annealed; the foil is inspected; some foil is tension-leveled, washed, and coated.  PDM at 13.  Regarding Dong-IL's thicker aluminum foil products, Commerce noted such products do not undergo doubling, and sometimes do not get annealed.  Id.  Its thicker aluminum foil products are slit into multiple rolls and gang-slit to each customer's specified length and width.  Id.  Nevertheless, Commerce preliminarily found that the nature of Dong-IL's production process in Korea was less significant than the production process for the Chinese-origin aluminum strip input.  Id.

Commerce similarly considered Lotte's aluminum foil production process.  Id. Lotte passes aluminum strip through work rolls, which squeeze the aluminum inputs thin while backup rolls rotate in opposite direction to help stabilize the work rolls.  Id.  To produce ultra-thin foil, Lotte doubles the aluminum strip is doubled so that one surface finish is matte and the other is polished.  Id.  The layers are then separated, trimmed, slit on the rolling mills, cut narrower to customer specifications, and annealed.  Id. at 13–14.  Commerce found that the nature of production process for products like Lotte's ultrathin foil, while more substantial

than that for other types of foil, also is less significant than the production process in China for the aluminum strip input.  Id. at 14.

In the Final Determination, Commerce reiterated its finding in the Preliminary Determination "that the nature of the production process in Korea for products such as [the mandatory respondents'] ultra-thin aluminum foil is more substantial . . . than some other types of foil, but that both [mandatory respondents'] overall production process in Korea is less significant than the production process for the aluminum strip input."  IDM at 23.  Commerce noted that "ultra-thin aluminum foil is only a subset of what is produced by the respondents, and this fact is also an important part of our analysis."  Id. at 24.

Hanon's argument that "Commerce failed to accurately weigh . . . the transformative impact [of Korean operations] on the final end product," Hanon Br. at 17, calls on the court to reweigh the evidence, which is not required by the substantial evidence standard.  See, e.g., Nippon Steel, 458 F.3d at 1352. Commerce reasonably conducted its fact-finding, responded to interested party comments in the Final Determination, and explained and supported its reasoning.

In the Preliminary Determination, Commerce addressed the physical changes that the product undergoes in Korea, noting that both the aluminum foil from both Dong-IL and Lotte go through multi-step processes and detailing the nature of those processes from rolling to annealing.  PDM at 13–14.  Based on its examination of Lotte and Dong-IL's questionnaire responses, Commerce preliminarily concluded "that the nature of the production process for products such as [the mandatory

respondents'] ultra-thin foil is more substantial and involves more production steps

than some other types of foil, . . . [it] is less significant than the production process

for the aluminum strip input."  PDM at 13–14 (citing to Commerce's "full

explanation": Lotte Preliminary Analysis Memorandum, C.R. 91, P.R. 184 (Mar. 15,

2023)).  In the Final Determination, Commerce directly addressed the physical

changes that the product goes through in Korea:

> With regard to physical properties (and, though barely mentioned here,
> mechanical properties), the operations of the respondents do change the
> properties of the input.  We are not persuaded that the changes in the
> product amount to a "substantial transformation."

IDM at 24.  Thus, contrary to Hanon's assertions, Commerce properly examined the

physical changes to the product that occur during processing in Korea, explained

them in the Preliminary Determination, and then acknowledged those changes

again the Final Determination, noting that the changes were not sufficient for

Commerce to find the nature of the production process to be significant or for this

factor to weigh against finding that the process of completion in Korea is "minor or

insignificant."  Id.; PDM at 13–14.

Hanon mistakenly frames Commerce's determination as including a

requirement that the product go through a chemical change.  See Hanon Reply at 8.

In the Final Determination, Commerce does not state that a chemical change is

*required* to find that the production process in Korea to be significant or substantial

change; rather, it observed the many changes that the product goes through in

Korea.  IDM at 24.  In doing so, Commerce performed its duty by conducting a

highly fact-specific inquiry and weighing all record evidence to conclude that the

overall change to the product during processing in Korea did not justify Commerce finding that this factor weighed against finding the process of completion in Korea is minor or insignificant.

This conclusion is also consistent with Commerce's past practice. Hanon cites <u>Ferrovanadium</u> as an example of a third country being "critical for producing a commercially usable product" and thus having the nature of production value demonstrating a process that is not minor or insignificant. Hanon Br. at 19–20 (citing <u>Ferrovanadium IDM</u> at 9). Because the product in <u>Ferrovanadium</u> became commercially usable due to third-country production, Hanon argues that the aluminum foil here similarly becomes commercially usable through Korean production. <u>Id.</u> In <u>Ferrovanadium</u>, however, Commerce found that the subject merchandise went from powder and flake form into solid ferrovanadium and that there was a complete chemical transformation of vanadium pentoxide into ferrovanadium. <u>Preliminary Negative Determination and Extension of Time Limit for Final Determination of Circumvention of the Antidumping Duty Order on Ferrovanadium and Nitrided Vanadium from the Russian Federation</u>, 77 Fed. Reg. 6537-01 (Feb. 8, 2012), at 6541. Commerce's determination was fact-specific, and it weighed heavily toward finding that there was a complete physical *and* chemical change of the subject merchandise in the third country. <u>See id.</u> Here, Commerce found no such transformation. Accordingly, <u>Ferrovanadium</u> is inapposite.

### III.  Whether Commerce's analysis of the value of processing factor is supported by substantial evidence and otherwise lawful

#### a.  Party Arguments

Hanon argues that Commerce's value-added analysis is flawed because Commerce evaluated this factor on a strictly quantitative basis, ignoring Congress' purported direction to include qualitative factors as well.  Hanon Br. at 22.  Hanon explained that Congress redirected Commerce's focus away from a strict numeric value-added calculation toward one more focused on the qualitative nature of the production process.  Hanon Br. at 23.  Hanon contends that Commerce ignores qualitative factors like the time-consuming nature of the process and unique skills required of its workers.  Id.  Thus, according to Hanon, the processing time, skilled workforce, and substantial physical change that occur in Korea demonstrate that the value of the processing is not minor or insignificant.  See id. at 22–25.

The Government argues that Commerce's determination that the value of the processing performed in Korea represents a small proportion of the value of the merchandise imported into the United States is supported by substantial evidence.  Gov. Br. at 22.  The Government responds to Hanon by explaining that its calculation method, which included taking "into account the relevant production process and the specific product at issue when determining whether the percentage values represented a small proportion," Gov. Br. at 24 (citing IDM at 31), did include qualitative considerations.  Further, the Government notes that the same value-added methodology used in this inquiry was upheld by this court and by the Court of Appeals for the Federal Circuit in Al Ghurair Iron & Steel LLC v. United

States.  Id. at 24–25 (citing 536 F. Supp. 3d 1351, 1374 (CIT 2021) aff'd 65 F.4th

1351 (Fed. Cir. 2023)).  The Government also explains that "the qualitative 'nature

of the production process' is already a facet of Commerce's minor or insignificant

determination, as provided by [the Act]" and it "would be somewhat duplicative for

Commerce to evaluate the nature of the production process" here.  Gov. Br. at 24.

Association Members, meanwhile, highlight that the value-added methodology is

consistent with Commerce's established practice in prior third country

circumvention inquiries.  DI Br. at 22 (citation omitted).

> b.  Legal Framework and Analysis

The circumvention statute requires that Commerce examine "whether the

value of processing performed in [Korea] represents a small proportion of the value

of the merchandise imported into the United States."  19 U.S.C. § 1677j(b)(2).  The

statute does not provide any specific methodology for Commerce to follow in making

this calculation.  The SAA provides legislative context regarding when a

"mechanical, quantitative approach fails to address adequately circumvention

scenarios in which only minor assembly is done [in the third country], but for

various reasons the difference in value is not small."  SAA at 893 (cleaned up).

Further, the SAA clarifies that "these new provisions do not establish rigid

numerical standards for determining the significance of the assembly (or

completion) activities in the United States or for determining the significance of the

value of the imported parts or components."  Id. at 894.  The SAA does not,

however, proscribe any steps for Commerce to take or factors for Commerce to

consider in conducting this inquiry.  See generally id.

    c.  Analysis

In the Preliminary Determination, Commerce separately examined the value of processing in Korea for Dong-IL from Lotte.  <u>PDM</u> at 14–15.  For each, Commerce summed the per-unit costs incurred in Korea for non-Chinese material inputs used during the Korean processing of inquiry merchandise, labor, fixed and variable overhead, selling, general, and administrative items, and interest, and divided the sum by the per-unit weighted-average value of the mandatory respondents' U.S. sales of inquiry merchandise during the inquiry period.  <u>Id.</u>  These calculations led Commerce to preliminarily find that the value of processing performed by Dong-IL and Lotte in Korea represents a small proportion of the value of the merchandise imported into the United States, which weighed in favor of a finding that the process of assembly or completion in Korea is minor or insignificant.  <u>Id.</u>

After considering comments from interested parties in response to its Preliminary Determination, in the Final Determination Commerce emphasized that it "continue[s] to apply a comparative methodology, but one which takes a 'totality of the circumstances' and 'case-specific' approach for [the] final determination." <u>IDM</u> at 32.  Commerce continued to find that the value of processing performed in South Korea "represents a small proportion of the value of the inquiry merchandise imported into the United States and, this weighs in favor of finding that the process of assembly or completion in Korea is minor or insignificant."  <u>IDM</u> at 30. Commerce's approach here was reasonable.  Commerce considered the totality of the circumstances, addressed comments and concerns from the Preliminary

Determination in the Final Determination, and thoroughly explained the

methodology applied.  Further, Commerce reiterated that although the production

and complex manufacturing of ultra-thin aluminum foil is not to be ignored, "ultra-

thin aluminum foil is only a subset of what is produced by the respondents, and this

fact is also an important part of our analysis."  <u>IDM</u> at 31.  Clearly, Commerce did

consider qualitative factors like the complexity of the production of such product.  In

doing so, Commerce acted reasonably by acknowledging these considerations and

thoroughly explaining why such qualitative facts did not alter its conclusion.

IV.    **Whether Commerce's treatment of the five statutory factors was permissible under the statute and otherwise lawful**

a.  Party Arguments

Hanon argues that Commerce placed unreasonable and unlawful weight on

two of the five factors used to determine whether the process of assembly or

completion of aluminum foil in Korea was "minor or insignificant."  Hanon Br. at 26.

Hanon notes that Commerce acknowledged that three of the five factors set forth in

section 781(b)(2) of the Act – the level of investment in Korea, the level of R&D in

Korea, and the extent of production facilities in Korea – weighed against finding

that the process of assembly or completion in Korea was minor or insignificant.

Hanon Br. at 25.  Hanon argues that Commerce impermissibly weighed the five

factors, unlawfully giving more weight to the "nature of the production process" and

the "value added in Korea," to find that the "process of assembly or completion" in

Korea was "minor or insignificant."  <u>Id.</u>  at 25–26.  Commerce's reliance on only two

of the five factors, Hanon contends, has no textual foundation in the statute.  <u>Id.</u> at

26.  Hanon argues that Congress intended that no single factor should be
determinative, making Commerce's reliance on certain factors more than others
unreasonable and contrary to the legislative intent of Congress.  Id.[4]

     The Government, on the other hand, argues that Commerce reasonably
weighed the five factors under section 781(b)(2) of the Act.  Gov. Br. at 25–26.  The
Government asserts that Commerce did not decline to evaluate certain factors, but
instead that Commerce reasonably explained why the factors involving the level of
investment, the level of R&D, and the extent of production facilities in Korea were
weighed less heavily in its determination.  Id.  The Government contends that the
statutory language does not require Commerce to conclude that all or even most of
the factors weigh in favor of finding that the process of assembly or completion in
Korea is minor or insignificant, only that Commerce engages in "reasoned weighing"
of the five factors.  Id. at 26.

     Association Members add that this court previously found that Commerce is
"to evaluate the factors 'depending on the particular circumvention scenario' on a
'case-by-case basis,'" and that this standard allows Commerce to weigh factors
differently depending on the factual background of the case.  Id. at 28 (citing U.K.
Carbon & Graphite Co. v. United States, 931 F. Supp. 2d 1322, 1335 (CIT 2013); Al
Ghurair, 536 F. Supp. at 1365.  Association Members otherwise endorse the
Government's positions.

---

[4] Hanon argues that Commerce's discretion in selecting a methodology to weigh the five factors no
longer enjoys Chevron deference.  Hanon Reply at 12; see Chevron at 2266.  The court reiterates its
earlier discussion, infra at Part I.

b.  Legal Framework and Analysis

In determining whether the process of assembly or completion in a third

country is minor or insignificant, Commerce must consider five statutory factors:

the level of investment in the foreign country, the level of R&D in the foreign

country, the nature of the production process in the foreign country, the extent of

production facilities in the foreign country, and whether the value of processing

performed in the foreign country represents a small proportion of the value of the

merchandise imported into the United States.  19 U.S.C. § 1677j(b)(2).  Commerce

will evaluate each of these factors depending on the particular circumvention

scenario.  See generally SAA.  No single factor under section 781(b)(2) of the Act

controls.  19 C.F.R. § 351.225(h).  Commerce determined that three of the five

statutory factors – the level of investment in Korea, the level of R&D in Korea, and

the extent of production facilities in Korea – weighed against a finding that the

process of assembly or completion in Korea is minor or insignificant, while the

nature of production process and the value added in Korea pointed toward

circumvention.  IDM at 32.  Despite only two of the factors weighing toward

circumvention, Commerce explained that the nature of production process and the

value added in Korea more meaningfully informed in its determination because

they "relate more to the production of the inquiry merchandise itself" whereas the

level of investment in Korea, the level of R&D in Korea, and the extent of

production facilities in Korea "relate more broadly to the [mandatory respondents]

and their facilities."  Id.  Based on the totality of the circumstances, Commerce

found that the process of assembly or completion was minor or insignificant.  Id.

Commerce's consideration of the five statutory factors to conclude that the level production in Korea is not minor or insignificant is reasonable. 19 U.S.C. § 1677j(b)(2). Hanon's suggestion that Commerce should not issue an affirmative circumvention determination when a majority of the five factors weigh against circumvention misinterprets the statute and ignores the past practice of Commerce and prior decisions of this this court. Hanon Br. at 25–26. First, the introductory language in section 781(b)(2)(C) of the Act directs that Commerce "shall take into account" five factors "[i]n determining whether the process of assembly or completion is minor or insignificant." 19 U.S.C. § 1677j(b)(2)(C) (emphasis added). The statute requires simply that Commerce "shall take into account" each of the enumerated factors. Commerce has done so here and has fully and reasonably explained its analysis.

The statute's directive that Commerce "shall take into account" the five factors does not prescribe any method or order that Commerce must follow in conducting its inquiry. Moreover, as the court has previously noted there has been "no instance when Commerce has articulated a 'majority rule' for assessing the § 1677j(b)(2) factors." Canadian Solar Int'l Ltd. v. United States, Slip Op. 25-59 (CIT May 16, 2025) at 11. Rather, this court has repeatedly sustained circumvention analyses by Commerce where two or fewer of the five statutory factors supported a circumvention finding. See id.

In this case, Commerce examined each of the five factors and explained why each factor did or did not weigh in favor of finding the process of completion in

Korea to be "minor or insignificant." IDM at 32; PDM at 15. Commerce considered how the five factors relate to one another and to the ultimate question of whether the Korean processing was "minor or insignificant" based on its fact-intensive inquiry in light of the totality of the circumstances. IDM at 32; PDM at 15. Commerce elaborated on why it weighed two of the five factors more heavily in both the Final Determination and the Preliminary Determination as follows:

> [T]he factors involving the level of investment, the level of R&D, and the extent of the production facilities in Korea weighed less heavily in [its] determination than the factors involving the nature of the production process and the value added in Korea because the former relate more broadly to the mandatory respondents and their facilities, whereas the latter relate more to the production of inquiry merchandise itself.

IDM at 32; PDM at 15. As such, Commerce's decision to weigh the nature of production and value added in Korea more heavily in its determination and its ultimate conclusions based on its assessment of the totality of the circumstances reasonable and is consistent with past practice.

## V. Whether Commerce's analysis of trade and sourcing patterns was supported by substantial evidence and otherwise lawful

### a. Party Arguments

Hanon argues that Commerce's determination that the patterns of trade analysis indicated circumvention is flawed and not supported by substantial evidence. Hanon Br. at 26–27. Hanon acknowledges that the administrative record demonstrates an increase in imports of aluminum foil to the United States from Korea when comparing the pre-initiation period (July 2012 to March 2017) to the post-initiation period (April 2017 to December 2021). Id. However, Hanon contends

that Commerce failed to identify any record evidence that demonstrates that these

increases were related to attempts to circumvent the Orders. Id. at 27. For

example, Hanon notes that Commerce failed to point to any unlawful

transshipments or examples of evasion of the Orders, and that this absence of

evidence suggests that Korean aluminum foil producers ("Korean Producers") had

no intent to circumvent the Orders. Id.

Additionally, Hanon argues that Commerce acted unreasonably in finding

that the trade patterns indicate circumvention, rather than a condition of the

established Korean aluminum foil industry ("Korean Industry") and the "rational

and foreseeable reaction from the global markets" to the Orders. Hanon Reply at

15; see Hanon Br. at 28. Hanon further argues that Commerce failed to address

arguments on the record related to the established Korean Industry. Hanon Br. at

29. Hanon notes that each of the six Korean Producers has been manufacturing

aluminum foil for over 30 years, and that the Korean Producers' sourcing patterns

have not changed post-initiation period. Id. at 27. Hanon contends that the Korean

Industry is a direct competitor of the Chinese aluminum foil industry. Id.

Considering the Korean Industry's longstanding presence in the U.S. market,

Hanon argues that the Korean Industry falls outside of scope of the circumvention

statute and the legislative intent to target the establishment of screwdriver

assembly operations. Id. at 28.

To support its arguments, Hanon analogizes to this court's decision in Inmax

SDN v. United States and argues that U.S. importers' decisions to purchase from

the well-established Korean Industry "reflect good supply chain management and in

no way suggest circumvention." Id. at 29 (citing 277 F. Supp. 3d 1367, 1372−73

(CIT 2017)).  Hanon asserts that the trade data Commerce used to make its

determination indicate that U.S. importers are substituting the Chinese

merchandise subject to the Orders with Korean merchandise, not that Korean

Producers are engaged in circumvention.  Hanon Reply at 14−15.

The Government, on the other hand, contends that Commerce reasonably

concluded its pattern of trade analysis supports a finding of circumvention under

section 781(b)(3) of the Act.  Gov. Br. at 26.  In particular, the Government

highlights the methods Commerce used to calculate the trade data and that these

data alone show that Commerce was reasonable in concluding that patterns of trade

indicate circumvention.  Id.  The Government equates Hanon's position with one

that requires Commerce to affirmatively demonstrate that both Korean companies

and respondents intended to circumvent the Orders before Commerce can

permissibly have trade patterns inform its circumvention analysis.  Id.  The

Government argues that this is not required by the statute.  Id.; see 19 U.S.C.

§ 1677j(b)(3).  Additionally, the Government asserts that Hanon's comparison to

Inmax is incorrect, and highlights that the type of administrative proceeding at

issue is governed by a different statute than the one in Inmax.  Gov. Br. 27−28

Association Members add that both this court and Commerce have previously

rejected the notion of any specific intent requirement in section 781(b) of the Act.

DI Br. at 30−31 (citing Certain Corrosion-Resistant Steel Products from the People's

<u>Republic of China: Affirmative Preliminary Determination of Circumvention
Involving the United Arab Emirates</u>, 85 Fed. Reg. 8,841 (Dep't of Commerce Feb.
18, 2020), <u>accompanying</u> <u>Issues and Decision Memorandum</u> (July 6, 2020) at
13–14).  Association Members also highlight that both this court and Commerce
have rejected the assertion that the circumvention statute only applies to newly
established operations, and that circumvention has been properly found in
instances where the establishment of such operations preceded the issuance of the
underlying order.  <u>Id.</u> at 31–32.

       b.  Legal Framework and Analysis

     Section 781(b)(3) of the Act directs Commerce to consider additional factors in
determining whether to include merchandise assembled or completed in a foreign
country within the scope of an order.  The first such factor is "the pattern of trade,
including sourcing patterns."  19 U.S.C. § 1677(j)(b)(3).

     During its Preliminary Determination, Commerce analyzed patterns of trade
by comparing publicly available U.S. import statistics for aluminum foil imports
from periods before and after 2017 (the year of initiation of the investigations which
resulted in the Orders).  <u>PDM</u> at 16 (referencing the Harmonized Tariff Schedule of
the United States).  The U.S. import data provided that the value of U.S. imports of
aluminum foil from Korea increased substantially from $42.8 million in the pre-
initiation period (July 2012 through March 2017) to $459.1 million in the post-
initiation period (April 2017 through December 2021).  <u>Id.</u>  Commerce notes this
was an increase of 973.7 percent.  <u>Id.</u>  During the same period comparison,

Commerce also notes that U.S. imports of aluminum foil from China decreased by 66.2 percent. Id. at 16–17. The mandatory respondents' sales reflected, to Commerce, a pattern of trade indicating a shift in exports of aluminum foil to the United States from China to Korea, which weighed in favor of finding circumvention. Id. at 17. Based on consideration of these calculations and the other factors set forth in section 781(b)(3) of the Act, Commerce preliminarily determined that action is warranted to prevent evasion of the Orders pursuant to section 781(b)(1)(E) of the Act.

In Commerce's Final Determination, Commerce responded to party arguments regarding whether Commerce's consideration of the Korean Producers' U.S. sales of Korean aluminum foil produced with non-Chinese inputs indicated a shift of exports of aluminum foil to the United States from China to Korea and whether these considerations were appropriate. Id. at 47. After examining Korean producers' own submissions of aluminum foil sales based on the Korean producers' proposed allocation method, which Commerce accepted, Commerce determined the data "still show a marked increase in imports of aluminum foil produced with Chinese aluminum strip," and the "patterns of trade indicate circumvention." Id.

Commerce acted reasonably in determining that the patterns of trade indicate circumvention because Commerce conducted a thorough investigation in its Preliminary Determination, and properly addressed all concerns raised by interested parties in its Final Determination. Initially, Commerce analyzed patterns of trade by comparing publicly available U.S. aluminum foil import data

from periods before and after 2017 (the year of initiation of the investigations which resulted in the Orders). PDM at 16. As noted above, the record showed that U.S. imports of aluminum foil from Korea increased from 42.8 million dollars in the pre-initiation period to 459.1 million dollars in the post initiation period – an increase of 973.7 percent. Id. at 16. Then, Commerce compared the pre-initiation period to the post-initiation period of U.S. imports of aluminum foil from China and found a decrease from $1,573,352,069 to $531,559,728 – a decrease of 66.2 percent. Id. at 16–17. Commerce concluded that "[t]his pattern of trade indicates a shift in exports of aluminum foil to the United States from China to Korea, and, thus, weighs in favor of finding circumvention." Id. at 17.

Commerce also analyzed patterns of trade with respect to Dong-IL and Lotte individually and found a shift in exports of aluminum foil from China to Korea, which weighed in favor of finding circumvention. Id. Ultimately, Commerce confirmed its findings in the Preliminary Determination, and appropriately and reasonably addressed concerns from comments Commerce received that after publishing the Preliminary Determination. IDM at 46–47. Commerce emphasized, "growth in demand has occurred, but it cannot account for the levels of increase of imports observed." IDM at 47. That Commerce noted the increased growth in demand and considered whether this undermined other indications in the record that circumvention was occurring underscores the careful consideration Commerce afforded to record evidence both supporting and detracting from its conclusions.

Hanon argues that the Korean Producers' comment during the investigation period that "each of the six Korean Producers has been manufacturing aluminum foil for more than 30 years and, in the case of Lotte for, for 55 years," means that "Korean Producers' sourcing patters have not changed."  Hanon Reply at 14 (citing Korean Producers' Pre-Preliminary Comments, C.R. 87, P.R. 172 (Feb. 13, 2023) at 6).  Hanon ignores that Commerce's analysis demonstrates that the patterns have changed as indicated by an over 900 percent increase in U.S. imports of aluminum foil from Korea.  See PDM at 16−17.  The mere fact that an industry or a producer within an industry is well-established with a long-standing presence does not by itself negate the possibility that circumvention is taking place.  Particularly where, as here, other evidence such as data reflecting the patterns of trade and sourcing indicate that circumvention may be occurring.

Finally, Hanon refers again to this court's decision in Inmax.  Hanon Br. at 28−29 (discussing 277 F. Supp. 3d 1367).  That case is inapposite.  There, the decision involved a question of whether there was "good cause" for a changed circumstances review, and here, Commerce is inquiring whether circumvention occurred.  Inmax applies different statutory provisions to different facts.  See Inmax, 277 F. Supp. 3d at 1371−73 (analyzing 19 U.S.C. §§ 1675, 1517, not section 1677).  Accordingly, Inmax does not bear on the court's analysis here.

## CONCLUSION

For the foregoing reasons, Commerce's Final Determination was reasonable, supported by substantial evidence, and in accordance with law.  Accordingly, the

Court No. 24-00013                                                    Page 36

court denies plaintiff's motion for judgment on the agency record and sustains

Commerce's Final Determination.  Judgment will be entered accordingly.

                                        /s/      Joseph A. Laroski, Jr.
                                                  Judge

Dated: July 21, 2025
        New York, New York